**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: | ) |
| **BFW LIQUIDATION, LLC,** | ) **Chapter 11** |
| | ) |
| Debtor. | ) **Case No. 09-00634** |
| | ) |

---

### NOTICE OF FILING OF BLACKLINE OF DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S THIRD AMENDED PLAN OF LIQUIDATION, THE EXHIBITS THERETO AND DEBTOR'S THIRD AMENDED PLAN OF LIQUIDATION

---

**COMES NOW,** BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC ("Debtor") as debtor and debtor-in-possession, by and through its undersigned counsel, and submits the attached blacklines[1] of the *Debtor's Third Amended Disclosure Statement for Debtor's Third Amended Plan of Liquidation* (the "Disclosure Statement"), the Exhibits thereto and the *Debtor's Third Amended Plan of Liquidation* (the "Plan")[2], which represent the modifications that have been made to the Plan and the Disclosure Statement since their filing with the Court on August 6, 2009. These modifications have been made following discussions with parties-in-interest in advance of and at the hearing held on the Disclosure Statement on August 6, 2009.

---

[1] Contemporaneously herewith the Debtor is filing non-blacklined versions of the Plan and Disclosure Statement as well.

[2] The Plan is attached as Exhibit A to the Disclosure Statement.

1767812 v1

/s/ Derek F. Meek
Robert B. Rubin
Derek F. Meek
Marc P. Solomon

Attorneys for Debtor
*Bruno's Supermarkets, LLC*

**OF COUNSEL:**
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been served on the attached Master Service List and the following parties listed below who had previously requested a copy of the Disclosure Statement and Plan on this the 7th day of August, 2009.

<u>/s/ Derek F. Meek</u>
OF COUNSEL

Case 09-00634-TOM11    Doc 1352    Filed 08/07/09    Entered 08/07/09 16:05:05    Desc
Main Document      Page 3 of 105

### MASTER SERVICE LIST

### Receiving Electronic Service:

**Bruno's Supermarkets, LLC**
Charles L. Denaburg
Najjar Denaburg PC
2125 Morris Avenue
Birmingham, AL 35203
cdenaburg@najjar.com

Derek F Meek
Mark P Solomon
Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203
dmeek@burr.com
msolomon@burr.com

Rita H Dixon
Rita H. Dixon, LLC
217 Country Club Park
PMB 515
Birmingham, AL 35213
ritadixon@mindspring.com

**Regions Bank**
c/o Jayna Partain Lamar
Maynard Cooper & Gale, PC
2400 Regions/Harbert Plaza
Birmingham, AL 35203
jlamar@maynardcooper.com

**Regions Bank**
c/o Rufus T. Dorsey, IV
C. Edward Dobbs
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center, NE
Atlanta, GA 30303
rdorsey@phrd.com
edobbs@phrd.com

**Buffalo Rock/Birmingham**
c/o Eric J. Breithaupt
Christian & Small LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL
ejb@csattorneys.com

**BTC Wholesale Distribution, Inc.**
**Collins Ct./Rosewood Apts., LLC**
**Roebuck Bansal, L.L.C.**
c/o Stephen B. Porterfield
Sirote & Permutt, P.C.
2311 Highland Avenue South
Birmingham, AL 35205
sporterfield@sirote.com

**City of Montgomery**
c/o Von G. Memory
James L. Day
Memory & Day
P.O. Box 4054
Montgomery, AL 36103
vgm@memorylegal.com
jlday@memorylegal.com

**Aronov Realty**
**Letson Farms Improvements, LLC**
**Gulfdale Improvements, LLC**
c/o David L. Pollack, Esq.
Jeffrey Meyers, Esq.
Dean Waldt, Esq.
Ballard Spahr Andrews & Ingersoll, LLP
51st Floor - Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
pollack@ballardspahr.com
meyers@ballardspahr.com
waldtd@ballardspahr.com

1727504 v13

**Cardinal Health**
c/o Robert Shields III, Esq.
The Shields Law Firm
418 Lorna Square
Birmingham, AL 35216
rls@bhamlawfirm.com

**Cardinal Health**
Scott A. Zuber, Esq.
Day Pitney LLP
200 Campus Drive
Florham Park, NJ 07962-1945
szuber@daypitney.com

**J. Scott Douglass as party in interest**
J. Scott Douglass, Esq.
909 Fannin, Suite 1800
Houston, TX 77010
jsdlaw@msn.com

**Baldwin EMC**
W. Alexander Gray, Jr., Esq.
Silver, Voit & Thompson
4317-A Midmost Drive
Mobile, AL 36609-5589
agray@silvervoit.com

**Community Coffee Company, L.L.C.**
David S. Rubin, Esq.
Kantrow, Spaht, Weaver & Blitzer
P. O. Box 2997
Baton Rouge, LA 70821-2997
drubin@kswb.com

**Mississippi State Tax Commission**
Heather S. Deaton, Esq.
Mississippi State Tax Commission
P. O. Box 22828
Jackson, MS 39225
hdeaton@mstc.state.ms.us

**Bi-Lo, LLC**
c/o Josiah M Daniel, III
Michael L. Raiff
Angela B. Degeyter
Vinson & Elkins, L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, TX 75021-2975
jdaniel@velaw.com
mraiff@velaw.com
adegeyter@velaw.com

**Ad-Hoc Committee of Lenders under
Credit Agreement among Bi-Lo
Holding, LLC, and Merrill Lynch
Capital Corporation**
c/o Paul D. Leake, Esq
Erica M. Ryland, Esq.
Jones Day
222 East 41st Street
New York, New York 10017
pdleake@jonesday.com
emryland@jonesday.com

**Kellogg Company,
Kellogg Sales Company,
and all affiliates, divisions, and
subsidiaries**
c/o David T. Cohen
Warner Stevens, L.L.P.
301 Commerce Street, Suite 1700
Forth Worth, TX 76102
dcohen@warnerstevens.com

**C&S Wholesale Grocers, Inc.
Southern Family Markets Acquisition
II LLC**
c/o Richard P. Carmody
David K. Bowsher
Adams and Reese LLP
2100 3rd Avenue North
Suite 1100
Birmingham, AL 35203
richard.carmody@arlaw.com
david.bowsher@arlaw.com

**C&S Wholesale Grocers, Inc.**
**Southern Family Markets Acquisition**
**II, LLC**
Richard S. Cobb
Kerri K. Mumford
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
P.O. Box 2087
Wilmington, DE  19899
cobb@larclaw.com
mumford@larclaw.com

**Monterey Mushrooms, Inc.**
**Frieda's, Inc.**
c/o Frederick M. Garfield, Jr.
Sexton & Associates, P.C.
1330 21st Way S, Ste G10
Birmingham, AL  35205-3915
fmgarfield@sextonattorneys.com

**Monterey Mushrooms, Inc.**
**Frieda's, Inc.**
c/o Lawrence H. Meuers
Meuers Law Firm, P.L.
5395 Park Central Court
Naples, FL  34109
lmeuers@meuerslawfirm.com

**Rochester-Mobile, LLC**
**Fairhope Group, LLC**
c/o Robert H. Adams
R. Scott Williams
Haskell Slaughter Young & Rediker,
LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL  35203
rha@hsy.com
rsw@hsy.com

**United Food and Commercial**
**Workers Union Local 1657**
c/o Glen M. Connor
Whatley Drake & Kallas, LLC
P.O. Box 10647
Birmingham, AL  35202-0647
ecf@wdklaw.com

**Alabama Power Company**
c/o Eric T. Ray
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL  35203
eray@balch.com

**Gulf Distributing Company of Mobile,**
**L.L.C.; Allstate Beverage Company,**
**Inc.; Goldring Gulf Distributing**
**Company, Inc.; Alabama Wholesale**
**Beer Association; Estate of Herman**
**M. Maisel**
c/o Joel Conally, Esq.
Sasser, Sefton, Conally, Tipton & Davis
100 Colonial Bank Blvd., Suite B-201
Post Office Box  242127
Montgomery, AL  36124
jconnally@sasserlawfirm.com

**State of Alabama**
**Department of Revenue**
Attention: Mark Griffin
Assistant Counsel
P.O. Box 320001
Montgomery, AL 36132-0001
mark.griffin@revenue.alabama.gov

1727504 v13

**Gulf Breeze SC, LLC; East End Company, LLC; Jenkins GBSC, LLC; Engel Realty Company; Village in Trussville, LLC; Village on Lorna, LLC; RSNB/Lorna Properties; Koninklijke Ahold N.V.**
c/o Donald M. Wright
Sirote & Permutt, PC
2311 Highland Avenue South
Birmingham, AL 35205
dwright@sirote.com

**Bayer Properties, LLC; BR Demopolis Portfolio, LP; BR Gardendale Portfolio, LP; BR East Gadsden Portfolio, LP; Dora Supermarket Owners, LLC; Wakefield's, Inc.; LaSalle Investment Management; Fort Williams Associates, LP**
Timothy M. Lupinacci
James H. White, IV
Matthew M. Cahill
Baker Donelson Bearman Caldwell & Berkowitz, PC
420 20th Street North
1600 Wachovia Tower
Birmingham, AL 35203
tlupinacci@bakerdonelson.com
jwhite@bakerdonelson.com
mcahill@bakerdonelson.com

**Atlanta Foods International**
c/o Mark P. Williams
Norman, Wood, Kendrick and Turner
Financial Center, Suite 1600
505 Twentieth Street North
Birmingham, AL 35203
mpwilliams@nwkt.com
and
Garrett Nail
Troutman Saunders, LLP
5200 Bank of America Plaza
600 Peachtree Street NE
Atlanta, GA 30308-2216
garrett.nail@troutmansanders.com

**Gulf Market Development, LLC; A.I. Corte, Jr., Family Limited Partnership; Romar (SC), LLC; Tuttle Papock Springhill, LLC; John White-Spunner; The John White Spunner Children's Trust; The Extended Trust Agreement f/b/o Jay White-Spunner's Children Dated 10/31/02; Jay E., LLC; John Rudolph Turner; Marl M. Cummings, III; Northside, Ltd.; Multiple Properties, LLC; H&C Development Company, Inc.; Saraland Loop Road, LLC**
c/o David A. Boyett, III
One Maison Suite 203
3800 Airport Boulevard
Mobile, AL 36608
dboyett@abblawfirm.com

**HP St. Francis, LLC**
c/o Robert P. Reynolds
Jackson E. Duncan, III
Reynolds, Reynolds & Duncan, LLC
Post Office Box 18605
Huntsville, AL 35804-8605
rreynolds@rrdlaw.com
jduncan@rrdlaw.com

**Valparaiso Realty Company**
c/o Victoria J. Franklin-Sisson
Jones, Walker, Waechter, Potevent, Carrere & Denegre, LLP
505 20th Street N, Suite 600
Birmingham, AL 35203
vsisson@joneswalker.com

**Knonklijke Ahold, N.V.**
c/o Frank L. Eaton
Thomas E. Lauria
Ileana A. Cruz
Kevin M. McGill
White & Case LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131-2352
featon@whitecase.com
tlauria@whitecase.com
icruz@whitecase.com
kmcgill@whitecase.com

**Donna Bedgood**
c/o Jonna M. Denson
Honza J.F. Prchal
Heninger Garrison Davis, LLC
P.O. Box 11310
Birmingham, AL 35202
jonna@hgdlawfirm.com
honza@hgdlawfirm.com

**IKON Financial Services**
c/o Christine R. Etheridge
Bankruptcy Administration
IKON Financial Services
1738 Bass Road
P.O. Box 13708
Macon, GA 31208-3708
christine.etheridge@ikonfin.com

**Pensacola Supermarket Owners, LLC**
c/o R. Garth Ferrell
Anthony K. Mallgren
Mallgren & Ferrell, P.C.
200 Spruce Street, Suite 201
Denver, CO 80230
gferrell@mallgrenferrell.com
tmallgren@mallgrenferrell.com

**Riverchase Village Ltd.**
c/o Catherine Harrison King
Miller & Martin PLLC
1170 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309-7649
cking@millermartin.com

**Unsecured Creditors Committee**
c/o James R. Sacca, Esq.
John D. Elrod, Esq.
Greenberg Traurig, LLP
3290 Northside Parkway, N.W.
Suite 400
Atlanta, GA 30327
saccaj@gtlaw.com
elrodj@gtlaw.com

**Chantilly Properties, LLC, as successor-in-interest to Chantilly Corners, LLC, landlord for premises leased by the Debtor described as Bruno's Store No. 595 at 9168 East Chase, Montgomery, AL**
c/o C.H. Espy, Jr.
Espy, Metcalf & Espy, P.C.
326 North Oates Street
P.O. Drawer 6504
Dothan, AL 36302-6504
cindi@espymetcalf.com

**Flowers Foods, Inc.**
c/o Todd C. Meyers
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street, NE
Atlanta, GA 30309-6482
tmeyers@kilpatrickstockton.com

**Quintard Mall, Ltd.**
c/o Benjamin S. Goldman
Hand Arendall LLC
2001 Park Place North
1200 Park Place Tower
Birmingham, AL 35203
bgoldman@handarendall.com

**Sara Lee Bakery Group**
c/o Raymond J. Urbanik
Lee Pannier
Munsch Hardt Kopf & Harr, PC
3800 Lincoln Plaza
500 N. Akard Street
Dallas, TX 75201-6659
rurbanik@munsch.com
lpannier@munsch.com

1727504 v13

**Harry's Foodmax, LLC**
c/o Timothy L. Lupinacci
James H. White
Matthew M. Cahill
Baker Donelson Bearman Caldwell &
Berkowitz, P.C.
420 20th Street North
1600 Wachovia Tower
Birmingham, AL  35203
tlupinacci@bakerdonelson.com
jwhite@bakerdonelson.com
mcahill@bakerdonelson.com

**Dreyer's Grand Ice Cream**
**Edy's Grand Ice Cream**
c/o David J. Cook
Cook Collection Attorneys, P.LC.
cook@squeezebloodfromturnip.com

**Destin-Poinciana, LLC**
c/o Sally Bussell Fox
Emmanuel, Sheppard, and Condon PA
30 South Spring Street
Pensacola, FL  32502
sfox@esclaw.com

**Waterstone Retail Development, LLC**
c/o A. Todd Darwin
Holcombe Bomar, P.A.
Post Office Drawer 1897
Spartanburg, SC  29304
tdarwin@holcombebomar.com

**Glenwood, Inc.**
c/o E.B. Harrison Willis
Cloud & Tidwell, LLC
1625 Richard Arrington Jr. Blvd. South
Birmingham, AL  35205
hwillis@cloudtidwell.com

**Coca-Cola Bottling Co. Consolidated**
c/o Amy Pritchard Williams
K&L Gates, LLP
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, North Carolina  28202
amy.williams@klgates.com

**Kimberly Godwin**
Attn: Heather F. Lindsay
Lindsay & Andrews, P.A.
5218 Willing Street
Milton, FL  32570
hfl@lal-law.com

**City of Center Point**
Attn: Robert C. Keller
Russo, White & Keller, P.C.
315 Gadsden Highway, Suite D
Birmingham, AL  35235
rjlawoff@bellsouth.net

**Workers Union Local 1657**
Attn: Thomas N. Cinatra
Richard M. Seltzer
Oriana A. Vigliotti
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, NY  10036
tciantra@cwsny.com

**Green Springs, Ltd.**
c/o Benjamin S. Goldman
Hand Arendall, LLC
2001 Park Place North
1200 Park Place Tower
Birmingham, AL 35203
bgoldman@handarendall.com

**JEMCO, LLC**
c/o I. David Cherniak
Rick A. La Trace
Post Office Box 1988
Mobile, AL 36633
idc@johnstoneadams.com
ral@johnstoneadams.com

1727504 v13

**DWC Investment Partnership**
c/o  I. David Cherniak
Rick A. La Trace
Post Office Box 1988
Mobile, AL 36633
idc@johnstoneadams.com
ral@johnstoneadams.com

**Fairhope Group, LLC**
c/o Kimberly B. Glass
Haskell Slaughter Young & Rediker,
LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
kbg@hsy.com

**Baldwin County, Alabama**
c/o  J. Marshall Gardner
Vickers Riis Murray and Curran, LLC
Post Office Drawer 2568
Mobile, AL 36652-2568
mgardner@vickersriis.com

**Destin-Poinciana, LLC; Southern
Farm Bureau Life Insurance
Company; and Cress Realty Group,
Inc.**
c/o Kathryn I. Kasper
Emmanuel, Sheppard & Condon, PA
30 S. Spring Street
Pensacola, FL 32502
kkasper@esclaw.com

**City of Hoover**
c/o April B. Danielson
Boardman, Carr, Hutcheson
& Bennett, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211
adanielson@boardmancarr.com

**Lone Star Funds
and Hudson Advisors LLC**
c/o Eric English
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002 -5213
eenglish@kslaw.com

**Lone Star Funds
and Hudson Advisors LLC**
c/o Edward L. Ripley
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002-5213
ERipley@kslaw.com

**Mobile County License Commissioner**
c/o Missty C. Gray
Ross, Jordan, & Gray, P.C.
Post Office Box 210
Mobile, Alabama 36601
missty@rossandjordan.com

**Liquid Asset Partners**
c/o Charles R. Johanson, III
Engel, Hairston & Johanson, P.C.
4th Floor, 109 North Twentieth Street
P.O. Box 11405
Birmingham, Alabama 35202
rjohanson@ehjlaw.com

**Teresa Hilsman, Tracey Honea, Mike
McCollum, and John C. Weathers**
c/o C. Peter Bolvig and Carleton P.
Ketcham, III
Hall, Conerly & Bolvig, P.C.
Suite 1400 Financial Center
505 20th Street North
Birmingham, AL  35203
bolviglaw@aol.com
c.ketcham@hallconerly.com

1727504 v13

**Riverchase Village Ltd.**
c/o M. Craig Smith
Miller & Martin PLLC
Suite 1000, Volunteer Building
832 Georgia Avenue
Chattanooga, Tennessee  37402-2289
mcsmith@millermartin.com

**Southern Foods Group, LLC,
Mayfield Dairy Farms, LLC, Barber
Milk, LLC and Purity Dairies, LLC**
c/o Mark H. Ralston, Esq.
2603 Oak Lawn Avenue
Suite 200, LB 2
Dallas, Texas  75219
ralstonlaw@gmail.com

**Chantilly Properties, LLC**
c/o C. H. Espy, Jr., Esq.
P. O. Drawer 6504
Dothan, Alabama  36302-6504
cindi@emppc.com

**Florida Self-Insurers Guaranty
Association**
James E. Sorenson
Williams, Gautier, Gwynn, DeLoach &
Sorenson, P.A.
Post Office Box 4128
Tallahassee, Florida  32315-4128
jsorenson@wggdlaw.com

**Buchalter/Grant, L.L.C.**
Randolph M. Fowler
Phelps, Jenkins, Gibson & Fowler,
L.L.P.
P. O. Box 020848
Tuscaloosa, Alabama  35402-0848
rfowler@pjgf.com

**McCormick & Company, Inc.**
Daniel J. Carrigan
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006
dcarrigan@mckennalong.com

**McCormick & Company, Inc.**
Mr. Austin Nooney
211 Schilling Circle
Hunt Valley, Maryland  21031
Austin_nooney@mccormick.com

1727504 v13

**Receiving Service via US Mail:**

**Flowers Foods Inc.**
Attn: Carter Wood
1919 Flowers Circle
Thomasville, GA 31792

**Coca-Cola Enterprises Inc.**
Attn: Richard Stiteler
521 Lake Kathy Drive
Brandon, FL 33510-3945

**C&S Wholesale Grocers Inc.**
Attn: Tim D. Ludlow
7 Corporate Drive
Keene, NH 03431

**Vertis Inc.**
Attn: Luke Brandonisio
250 W. Pratt St.
Baltimore, MD 21201

**Buffalo Rock Company**
Attn: Roger D. Barker
111 Oxmoor Road
Birmingham, AL 35209

**Palladeo**
Attn: Robert Bautista
900 Western Ave.
Glendale, CA 91201

**Cardinal Health 110 Inc.**
Attn: Matt McPeek
7000 Cardinal Place
Dublin, OH 43017

**IBM Corporation**
Attn: Beverly H. Shideler
Two Lincoln Centre
Oakbrook Terrace, Illinois  60181

**Mobile County Revenue Commissioner**
c/o Christopher Kern
P. O. Box 210
Mobile, Alabama  36601

**Quality Properties, LLC**
David Lee Jones
P. O. Box 940
Guntersville, AL  35976

1727504 v13

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

IN RE:                              )
                                   )
**BFW LIQUIDATION, LLC F/K/A BRUNO'S** )
**SUPERMARKETS, LLC**            )   **Chapter 11**
                               )   **Case No. 09-00634**
                 **Debtor.**      )

**~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S ~~SECOND~~THIRD AMENDED PLAN OF LIQUIDATION DATED AUGUST ~~5,~~7, 2009 PURSUANT TO 11 U.S.C. § 1125**

**DATED: August ~~5,~~7, 2009**

Robert B. Rubin
Derek F. Meek
Marc P. Solomon

BURR & FORMAN LLP
420 North 20th Street, Suite 3400

Birmingham, Alabama 35203
Phone: (205) 251-3000
Facsimile:    (205) 458-5100

*Attorneys for Debtor*

**THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL FROM, BUT HAS NOT BEEN APPROVED BY, THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE**

**SOLICITED UNTIL A ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

# TABLE OF CONTENTS

**Page**

ARTICLE I. INTRODUCTION .................................................................................................1

ARTICLE II. NATURE OF REPRESENTATIONS ...................................................................2

ARTICLE III. BACKGROUND ................................................................................................3

    A.    Narrative Description of the Debtor ...............................................................3

    B.    Summary of Events that Occurred During the Course of the Bankruptcy ..............5

        1.    DIP Financing ...............................................................................5

        2.    Professionals ................................................................................5

        3.    Post-Petition Workers Compensation and Other Insurance........................5

        4.    Closing of Stores...........................................................................6

        5.    Asset Sales ..................................................................................6

    C.    Description of Debtor's Liabilities.................................................................7

    D.    Description of Debtor's Unencumbered Assets ...............................................7

ARTICLE IV. EVENTS LEADING TO BANKRUPTCY.............................................................7

ARTICLE V. SUMMARY OF THE PLAN ...............................................................................7

    A.    Overview of Plan .......................................................................................8

    B.    Classification of Claims...............................................................................8

    C.    Unclassified Claims ....................................................................................9

        1.    Administrative Expense Claims.......................................................9

2.      PACA Claims...........................................................................9

3.      PASA Claims. ........................................................................9

D.     Classes of Claims. ..........................................................................9

1.      Priority Tax Claims...............................................................9

2.      Priority Non-Tax Claims.......................................................9

3.      Class 1 – Secured Claims. ....................................................9

4.      Class 2 – Convenience Class of Unsecured Claims Against Debtor. .........10

5.      Class 3 – General Unsecured Claims Against Debtor. ............10

6.      Class 4 – Interests. ...............................................................10

7.      Class 5 – Punitive Damage Claims.......................................10

ARTICLE VI. Treatment of Claims and Interests ...............................................10

A.     Treatment of Unclassified Claims. ...............................................10

1.      Administrative Expense Claims............................................10

B.     Treatment of Unimpaired Classes. ...............................................12

1.      Priority Non-Tax Claims.......................................................12

2.      Priority Tax Claims...............................................................12

3.      Class 1 — Allowed Secured Claims......................................12

C.     Treatment of Impaired Classes ....................................................12

1.      Class 2: Convenience Class of Unsecured Claims Against Debtor..........12

2.      Class 3 – Allowed General Unsecured Claims. .....................12

3.      Class 4 – Interest in Debtor...................................................13

4.      Class 5 – Allowed Punitive Damages Claims.......................13

D.     Special Provisions Regarding the Allowance and Treatment of Workers Compensation Claims, Personal Injury Claims and Reservation of Rights Related to Insurance.............................................................................13

1.      Treatment and Allowance of Workers Compensation Claims .................13

2.        Treatment and Allowance of Personal Injury Claims...............................13

3.        Treatment of Personal Injury Claims.......................................................15

4.        Reservation of Rights.............................................................................16

E.      Effect of Confirmation ........................................................................................16

1.        Full and Final Satisfaction of Claims.....................................................16

2.        Injunction ..............................................................................................16

3.        Released Claims; Mutual Releases .........................................................17

F.      Implementation of Plan.......................................................................................18

1.        Appointment. .........................................................................................18

2.        Duration. ................................................................................................18

3.        Exclusive Powers and Duties..................................................................19

4.        Fees and Expenses .................................................................................20

5.        Compromising Disputed Claims, Liens, and Causes of Action.................21

6.        Post Confirmation Committee. ...............................................................21

7.        Liquidation of Assets. ............................................................................21

8.        Distributions..........................................................................................21

9.        Retention and Enforcement of Claims and Causes of Action of the
Estate.....................................................................................................21

ARTICLE VII. Claims Resolutions and Distributions ...............................................................23

A.      Procedure for Determination of Claims...............................................................23

1.        Objections to Claims..............................................................................23

2.        Disputed Claims.....................................................................................23

B.      Distributions.......................................................................................................23

1.        Distributions on Allowed Claims. ..........................................................23

2.        Undeliverable Distributions. ..................................................................23

3.        Manner of Payment................................................................................24

4. Interest.................................................................................24

5. *De Minimis* Distributions..................................................24

6. Distributions on Claims Allowed Pursuant to Section 502(h) of the Bankruptcy Code...................................................24

7. Compliance with Tax Requirements....................................25

8. Reserve for Disputed Claims...............................................25

9. Setoffs..................................................................................25

10. Reliance on Claims Register..............................................25

ARTICLE VIII. Other Provisions of the Plan ...............................................26

A. Treatment of Executory Contracts and Unexpired Leases ................26

B. Effective Date ...................................................................................26

C. Consequences Of Non-Occurrence Of Effective Date .....................27

D. Retention of Jurisdiction ..................................................................27

E. Modifications and Amendments .......................................................29

ARTICLE IX. PLAN CONFIRMATION PROCESS ....................................29

A. Acceptance Of Plan By Voting.........................................................29

1. Approval of ~~Second~~Third Amended Disclosure Statement................29

2. Voting on the Plan ...........................................................30

3. Deadline for Voting .........................................................30

B. Confirmation ....................................................................................31

1. Unfair Discrimination ......................................................32

2. Fair And Equitable Test ...................................................32

C. Best Interest Test..............................................................................32

D. Acceptance .......................................................................................33

E. Consummation ..................................................................................33

ARTICLE X. ALTERNATIVES TO CONFIRMATION OF THE PLAN .................33

Case 09-00634-TOM11    Doc 1352    Filed 08/07/09    Entered 08/07/09 16:05:05    Desc
Main Document    Page 17 of 105

      A.     Liquidation Under Chapter 7 ...................................................................33

      B.     Alternative Plan of Reorganization.........................................................34

ARTICLE XI. RECOMMENDATION .........................................................................34

# ARTICLE I.
## INTRODUCTION

On February 5, 2009, the Debtor Bruno's Supermarkets, LLC, now known as BFW Liquidation, LLC, Filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued to manage its businesses as Debtor in possession and no trustee has been appointed.

On June 19, 2009, the Debtor (also referred to as the "Proponent") submitted its Disclosure Statement pursuant to Bankruptcy Code § 1125, to disclose information to enable creditors and other parties in interest entitled to vote (if any) (the "Claimants") to make an informed decision in exercising their rights to accept or reject the Debtor's *Plan of Liquidation* (the "Plan"), and on July 29, 2009, Debtor filed its First Amended Disclosure Statement and First Amended Plan. On August 6, 2009, Debtor filed its Second Amended Disclosure Statement and Second Amended Plan. Debtor hereby amends and restates in its entirety the Second Amended Disclosure Statement with this ~~Second~~Third Amended Disclosure Statement.

Upon approval of this ~~Second~~Third Amended Disclosure Statement by the Bankruptcy Court, this ~~Second~~Third Amended Disclosure Statement may be considered in connection with (i) the solicitation of votes to accept the Plan, and (ii) the Confirmation Hearing scheduled for ~~_____,~~September 24, 2009 at ~~__:__ __~~10:00 a.m., prevailing Central Time, to be held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code §§ 1128 and 1129 and Bankruptcy Rule 3017, as such hearing may be adjourned or continued from time to time.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and Filed so that they are received on or before ~~_____,~~September 11, 2009, 4:30 p.m., prevailing Central Time. The Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment or continuance date made at the Confirmation Hearing or at any subsequent adjourned or continued Confirmation Hearing.

Annexed as Exhibits to this ~~Second~~Third Amended Disclosure Statement are copies of the following documents:

Debtor's Plan Under Chapter 11 of the Bankruptcy Code (Exhibit A);

Chart of Closing Stores (Exhibit B);

Chart of Going Concern Stores and GOB Stores (Exhibit C);

Chart of Pharmacy Asset Sales (Exhibit D);

Chart of Debtor's Liabilities (Exhibit E); and

1

Chart of Debtor's Unencumbered Assets (Exhibit F).

All capitalized terms employed in this ~~Second~~Third Amended Disclosure Statement and not otherwise defined herein shall have the meanings given such terms in the Plan, which is attached hereto as Exhibit "A".

## ARTICLE II.
## NATURE OF REPRESENTATIONS

THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR SOLELY FOR THE BENEFIT OF CREDITORS AND HOLDERS OF INTERESTS IN THE DEBTOR. THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT AND THE RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING OR REJECTING THE PLAN.

THE INFORMATION CONTAINED IN THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT IS INCLUDED TO SOLICIT ACCEPTANCES OF THE PLAN. THE INFORMATION IN THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ANY PARTY WHO DOES NOT OBJECT TO THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT IS NOT DEEMED TO WAIVE ANY RIGHTS TO OBJECT TO THE CONFIRMATION OF THE PLAN ON ANY BASIS OTHER THAN LACK OF ADEQUATE DISCLOSURE UNDER BANKRUPTCY CODE SECTION 1125.

ALL CREDITORS SHOULD READ THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT AND THE PLAN BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. STATEMENTS MADE IN THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN.

THE STATEMENTS CONTAINED IN THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT ARE MADE BY THE DEBTOR AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE DELIVERY OF THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT DOES NOT IMPLY THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE SUCH DATE. THE DEBTOR PREPARED THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT, BUT DOES NOT WARRANT OR REPRESENT THAT THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT IS WITHOUT ERROR. HOLDERS OF CLAIMS ENTITLED

2

TO VOTE ON THE PLAN SHOULD READ THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT AND PLAN AND CONSULT WITH COUNSEL OR OTHER ADVISORS PRIOR TO VOTING ON THE PLAN.

THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW.

NOTHING IN THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT IS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, NOR DOES THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT PROVIDE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS. YOU SHOULD CONSULT YOUR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES OR OTHER LEGAL CONSEQUENCES OF THE PLAN.

IF ANY INCONSISTENCY EXISTS BETWEEN THE TERMS AND PROVISIONS OF THE PLAN AND THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT, THE TERMS AND PROVISIONS OF THE PLAN CONTROL. CERTAIN OF THE STATEMENTS CONTAINED IN THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT ARE FORWARD LOOKING FORECASTS AND ARE BASED UPON CERTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES.

**IRS CIRCULAR 230 NOTICE**

TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN AND OTHER MATTERS ADDRESSED HEREIN; AND (C) CLAIMANTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

**ARTICLE III.**
**BACKGROUND**

**A.      Narrative Description of the Debtor**

Joseph Bruno opened a single grocery market in Birmingham, Alabama in 1932. In 1971, Bruno's became a publicly traded company. In 1972, Bruno's opened a discount grocery store, Food World and Consumer Foods. As Food World and Consumer Foods became more profitable, the old Bruno's stores began to be phased out. Consumer Foods was replaced by Food Fair in 1983, and in 1984 Bruno's opened its first Foodmax stores.

The 1990s saw the reintroduction of the Bruno's banner on stores, this time as Bruno's Supercenters and Bruno's Food and Pharmacy, both of which were upper-class stores. Another concept, the upscale Vincent's Market, was tried in a one-location experiment in Homewood, Alabama. The experimental store featured a wide variety of prepared foods such as seafood, bakery goods and take-out meals as well as regular grocery sales. Around 2000, Vincent's Market was converted to the Bruno's nameplate (though it was largely unchanged otherwise), and the Vincent's Market name was applied to the deli/bakery departments in all existing Bruno's stores.

In 1995, the company was acquired by Kohlberg Kravis Roberts (KKR), a leveraged buyout firm. Several years following this acquisition, the company was forced into Chapter 11 bankruptcy. The company emerged from bankruptcy in 2000 after closing a number of unprofitable stores, but acquired three new stores from the Gregerson's chain in and around Gadsden, Alabama. The company was sold in December 2001 to Ahold, a Dutch corporation, who then combined it with BI-LO, LLC. Pursuant to ~~a~~ the Master Store Purchase Agreement dated April 22, 2005, 40 BI-LO ~~sold approximately seven (7)~~ stores and 69 Bruno's stores were sold to ~~Southern Family Markets, a C&S Wholesale Grocers' affiliate~~ C&S; and. seven Bruno's stores were closed independently of that transaction. C&S was also the primary supplier for Bruno's; this relationship arose out of an agreement between Bruno's, BI-LO and C&S. C&S owned and operated the logistics and warehouses, and Bruno's and BI-LO owned and operated the stores.

In 2005, Ahold sold Bruno's and BI-LO (and their parent company) to Lone Star Funds, a private investment company. After undergoing a corporate reorganization to simplify its ownership structure, it emerged as Bruno's Supermarkets, LLC, with BI-LO as its sole member in 2007. On March 25, 2007, BI-LO sold its membership interest in Bruno's to LSF5 Bruno's Investments, LLC, an affiliate of Lone Star, thus effecting a bifurcation of BI-LO and Bruno's. Following this transaction, the above-described C&S supply agreements were divided such that Bruno's and BI-LO contracted separately with C&S. BI-LO also transferred to Bruno's its interest in leases for twelve (12) stores, which such leases BI-LO contends related to Bruno's stores.

Prior to the Petition Date, Debtor operated twenty-three (23) Bruno's stores, forty-one (41) Food World stores, and two (2) Foodmax stores in Northport and Oxford, Alabama. The Foodmax stores are operated the same way as Food World stores, with their name being the only discernible difference. The two Foodmax stores are tied to labor agreements with the UFCW union which has prevented any name change to the stores. The employees in these stores wear "Food World" uniforms, and the signage in the stores uses the Food World banner.

In October 2008, Debtor announced plans to close twenty-two (22) of its forty (40) in-store pharmacies. This left Debtor with eighteen (18) in-store pharmacies within the sixty-six (66) stores operating at the time. All inventories and records in the twenty-two pharmacies were sold to CVS/pharmacy, and all employees were either offered severance packages or employment with CVS.

In December 2008, the corporate offices were moved to International Park office park located in Hoover, Alabama. This move left the former Bruno's headquarters located on

Lakeshore Parkway in Birmingham in the hands of C&S Wholesale Grocers, who acquired the building in 2005 as part of purchasing the former logistics operations and warehouse previously owned by Debtor.

The majority of the Debtor's sixty-six (66) stores were, as of the Petition Date, located on real property leased from third parties. Only five (5) of Debtor's stores were located on real property owned by Debtor.

Prior to the Petition Date, Regions Bank ("Regions) was Debtor's primary lender. The total amount of the Debtor's pre-petition debt approximated $10.1 million. Regions also served as Debtor's post-petition lender.

## B. Summary of Events that Occurred During the Course of the Bankruptcy[1]

### 1. DIP Financing

After filing for bankruptcy, the Debtor entered into DIP financing agreements with Regions Bank (the "DIP Financing"). Since July 28, 2008, Regions was also Debtor's primary lender prior to the filing of the bankruptcy. The DIP Financing provided by Regions was utilized by the Debtor to fund the Debtor's bankruptcy Case. This DIP Financing was replaced and/or renewed at least once during the course of the Debtor's bankruptcy Case. As a result of the asset sale (described below in Section IV.B.4), Regions' pre-petition and post-petition financing accommodations to Debtor have been paid in full with the proceeds of such sale.

### 2. Professionals

At the beginning of the Case, the Debtor's applications to employ Burr & Forman LLP as the Debtor's primary legal counsel and Najjar Denaburg as the Debtor's conflicts counsel were approved by the Bankruptcy Court. The Debtor also employed the Special Situations Group of National City Investments as its investment banker, Jim Grady, as its Chief Restructuring Officer, and the firm of Alvarez and Marsal as its Management Advisors.

The Official Committee of Unsecured Creditors was appointed on February 18, 2009 and is made up of Flowers Foods Inc., Coca Cola Enterprises, Inc., C&S Wholesale Grocers, Inc., Vertis, Inc., Buffalo Rock Company, Palladeo, and Cardinal Health 110, Inc. C&S Wholesale Grocers, Inc. resigned on April 24, 2009. The Bankruptcy Court authorized the Committee to retain Greenburg Traurig, LLP as their legal counsel and Mesirow Financial Consulting LLC as their financial advisor. The Committee has also retained the law firm of Bracewell Giuliani, LLP to investigate potential claims which the Estate may have against Lone Star and Debtor's officers and directors.

---

[1] This section includes a brief description of the events that occurred during the Debtor's Case; for a more detailed description of the events taking place during the Case, please see the Bankruptcy Court's docket for this case or http://www.kccllc.net/brunos.

1763886 v67

### 3. Post-Petition Workers Compensation and Other Insurance

In mid-March 2009, the workers compensation, automobile liability and general liability insurance policies providing coverage for the Debtor and issued by members of the ACE group of companies ("ACE") were expiring. Accordingly, the Debtors filed an Emergency Motion authorizing the Debtor to purchase new insurance from ACE ("ACE Insurance Motion"). The ACE Insurance Motion was granted by Order entered March 17, 2009 (Docket No. 471), and the Debtor purchased the insurance programs offered by ACE. Because the ACE workers compensation and automobile liability insurance programs were high deductible programs, the Debtor secured its deductible and other payment obligations with cash collateral. Accordingly, the Order further provided, *inter alia*, that all consideration provided for the new insurance, including but not limited to, any cash collateral or other funds or consideration, would be deemed collateral security for the benefit of ACE with respect to the insureds' obligations, and that such collateral security was not property of the estate of the Debtor except to the extent the Debtor might have a future claim for the unused portion of the collateral. The Order also provided that ACE is deemed to possess a perfected super-priority security interest and lien upon the collateral security and any and all proceeds thereof, and that the collateral security was and shall be free and clear of all encumbrances except those granted in favor of ACE. The Order further provided that ACE could pay covered insurance claims in the ordinary course of the Debtor's business, and if necessary draw upon the collateral security, and that the automatic stay, to the extent applicable, would be lifted in order for this to be accomplished. The Order further provided, *inter alia*, that all amounts owed or paid, or to be owed or paid, with respect to the policies purchased shall be deemed an administrative expense and further that any plan of reorganization or other order of the Court shall not alter the Order approving the ACE Insurance Motion, or the ACE policies and related agreements which were purchased. The post-petition insurance provided by ACE was then authorized to be extended in an Order entered April 15, 2009 (Docket No. 667), and this second Order contained the same provisions as the first. The March 17, 2009 and the April 15, 2009 (collectively, the "ACE Insurance Orders") related to post-petition insurance were not appealed and are now final.

### 4. Closing of Stores

During the course of the Bankruptcy Case and as part of its reorganization efforts, Debtor analyzed the performance of all sixty-six of its grocery stores. During that evaluation, Debtor identified ten (10) stores located in various Alabama cities as underperforming stores (the "Closing Stores"). After evaluating many options to potentially rehabilitate the Closing Stores, Debtor determined, in its business judgment, to close the Closing Stores and to conduct going out of business sales at each such store location. On March 2, 2009, the Bankruptcy Court entered an order approving the closing of these stores. The Bankruptcy Court further authorized Debtor's retention of Hilco Merchant Resources, LLC as Debtor's liquidation agent to conduct going-out-of business sales at each Closing Store. A list of the Closing Stores is attached hereto as Exhibit B.

### 5. Asset Sales

On April 14, 2009, the Bankruptcy Court authorized Debtor to conduct an auction for all or substantially all of its assets (the "Auction"). On May 1, 2009, Debtor submitted an Asset

Purchase Agreement to the Bankruptcy Court for final approval in Debtor's Notice Of Asset Purchase Agreement Between Debtor And Southern Family Markets Acquisitions II LLC ("SFM"). Under the APA, SFM purchased certain of Debtor's grocery stores which SFM will operate as a going concern (the "Going Concern Stores"). Debtor was determined to liquidate its remaining stores (the "GOB Stores") Under the APA, SFM was to be compensated for liquidating these stores on behalf of Debtor. On May 4, 2009, the Bankruptcy Court entered an order approving the sale of certain of Debtor's assets to SFM and authorizing SFM to conduct going-out-of-business sales at the GOB Stores. A list of the Going Concern Stores and the GOB Stores is attached hereto as Exhibit C.

Also in conjunction with the Auction, Debtor sold other assets, specifically, certain pharmacy merchandise inventory and pharmacy prescription data, to the highest bidder for such assets (the "Pharmacy Asset Sales"). The Bankruptcy Court entered an order approving the sale of such pharmacy assets to the respective highest bidder, including Fred's Stores of Tennessee, Inc., Walgreen Company, and CVS of Alabama, LLC, and Target Corporation. A list of the Pharmacy Asset Sales is attached hereto as Exhibit D.

### C.  **Description of Debtor's Liabilities**

A summary of the various liabilities of Debtor is set forth on Exhibit E, attached hereto.

### D.  **Description of Debtor's Unencumbered Assets**

A summary of the various unencumbered assets of Debtor is set forth on Exhibit F, attached hereto.

## ARTICLE IV.
## EVENTS LEADING TO BANKRUPTCY

Debtor's bankruptcy filing was precipitated by a variety of factors that have led to a deterioration of its business and a lack of liquidity. Over the past twenty-four (24) months, the country has seen a significant decline in the economy as a whole. The economic decline has resulted in a significant decrease in consumer spending, including food and grocery items. This decreased demand led to a decline in Debtor's sales.

Furthermore, Debtor has also seen an increased amount of competition in its core market from other grocers. With an abundance of older locations, Debtor had difficulty competing with the newer grocery stores that have moved into its markets. This increased competition from newer grocery stores reduced Debtor's market share.

Additionally, the frozen credit markets have limited the availability of capital for improvements to Debtor's stores to allow Debtor to compete with the newer stores of its competitors. Furthermore, the lack of available capital resulted in Debtor being unable to locate sufficient working capital with which to operate its stores.

1763886 v67

# ARTICLE V.
## SUMMARY OF THE PLAN

The Debtor believes that its creditors, as a group, will obtain a greater recovery from the Estate of the Debtor through the Plan, than the recovery that would be available if the assets of the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. Accordingly, the Plan will maximize the value of the Debtor's assets. The Debtor believes, therefore, that the Plan is in the best interests of the creditors.

***The following summary is offered for convenience only; it is not a complete description of the terms of the Plan. Creditors must review the Plan itself for a complete understanding of the Plan and disclosure of its terms. In the event of a discrepancy between the terms of the Plan and anything contained in this ~~Second~~Third Amended Disclosure Statement, the terms of the Plan shall control.***

### A. Overview of Plan

The Plan places the creditors and equity holders of the Debtor in separate classes and provides for the treatment of each such class. For purposes of voting and all matters related to confirmation, except as otherwise provided in the Plan, all Claims and Interests shall be classified as set forth in Section II of the Plan. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies under the description of that class, and is classified in other classes to the extent that any remainder of the Claim or Interest qualifies under the description of such other classes. A Claim or Interest also is classified within a particular class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that class and has not been paid, released or otherwise satisfied prior to the Effective Date.

The Plan is a liquidating plan. Upon the Effective Date, substantially all of the Debtor's Assets have been sold to Southern Family Markets, LLC. The Plan provides for the liquidation and conversion to Cash of the Debtor's remaining Assets and the Distribution of the Net Proceeds realized therefrom by a Liquidating Trustee, as chosen by the Committee pursuant to Section VI.A.1 of the Plan, to the Debtor's Creditors holding Allowed Claims in accordance with the priorities established by the Bankruptcy Code. The Plan further provides for the termination of all Interests in the Debtor and the dissolution and wind up of the affairs of the Debtor.

The Liquidating Trustee shall liquidate the Assets of the Estate in accordance with the Plan and shall distribute the Net Proceeds thereof as follows: (a) <u>first</u> to pay the reasonable costs and expenses of the Liquidating Trustee and his professionals (including professional fees) incurred in administering, maintaining, and preserving the Available Funds and making the Distributions, and the liquidation of the Assets of the Estate (to the extent not otherwise paid pursuant to the Plan); and (b) <u>second</u> Pro Rata to the holders of Allowed Claims on the terms and conditions, and in the priority, set forth in the Plan.

### B. Classification of Claims

All Claims and Interests except Administrative Expense Claims, PACA Claims, PASA Claims, and Priority Tax Claims shall be classified as set forth in Section II of the Plan.

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled before the Effective Date.

The Plan Proponent has set forth the Classes below:

**C.     Unclassified Claims**

1.      **Administrative Expense Claims.**  There are several categories of Claims that make up the Administrative Expense Claims.  These categories include Goods Claims, Fee Claims, certain Workers Compensation and Personal Injury Claims, and other Claims owed pursuant to § 503(b) of the Bankruptcy Code.  There are several categories of Claims that make up the Administrative Expense Claims  The Debtor estimates that the total amount of Goods Claims will not exceed $6,602,057.00.[2]

2.      **PACA Claims.**

The Debtor estimates that the total amount of PACA Claims will not exceed $399,733.00.

3.      **PASA Claims.**

The Debtor estimates that the total amount of PASA Claims will not exceed $155,998.00.

**D.     Classes of Claims.**

1.      **Priority Tax Claims.**

Priority Tax Claims shall collectively consist of any Claims against the Debtor of a Governmental Unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code. The Debtor estimates that the total amount of Priority Tax Claims will not exceed $7,971,116.00.

---

[2] The amount of Claims for each Class, based upon Debtor's Schedules of Assets and Liabilities, are estimates for informational purposes only and have not been the subject of a final review or reconciliation and all defenses may not have been considered.  All Claims that have not previously been allowed remain subject to objection pursuant to the terms of the Plan and the forgoing is not an admission by the Debtor nor shall it be binding on the Liquidating Trustee. The actual amount of Allowed Claims in certain Classes, particularly Allowed General Unsecured Claims, could differ substantially from the estimated amount depending on the resolution of Disputed Claims.  Any such differences could have a material impact on the recoveries of the affected Classes.

1763886 v67

2.      **Priority Non-Tax Claims.**

Priority Non-Tax Claims shall collectively consist of any Claims against the Debtor that is entitled to priority under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims. The Debtor estimates that the total amount of Priority Non-Tax Claims will not exceed $1,394,783.00.

3.      **Class 1 – Secured Claims.**

Class 1 shall consist of all Allowed Secured Claims. Class 1 Claims include, without limitation, Claims secured by equipment in connection with equipment financings and Claims secured by mechanic's, materialmen's and artisan's liens on miscellaneous personal and/or real property. Each Class 1 Claim is treated for all purposes under the Bankruptcy Code and the Plan as a separate Class.

4.      **Class 2 – Convenience Class of Unsecured Claims Against Debtor.**

Class 2 shall consist of all Allowed Unsecured Claims against Debtor (other than Class 3 Claims and Class 5 Claims) that are: (i) in an amount of $500.00 or less; or (ii) that the holder has voted to accept the Plan and elects to be treated as being in an amount of $500.00 on the Ballot submitted by such Holder with respect to the Plan. The Debtor estimates that the total amount of Convenience Class Claims will not exceed $40,940.00

5.      **Class 3 – General Unsecured Claims Against Debtor.**

Class 3 shall consist of all Allowed Unsecured Claims against Debtor (other than Class 2 Claims and Class 5 Claims). The Debtor estimates that the total amount of General Unsecured Claims will not exceed $20,204,091.00

6.      **Class 4 – Interests.**

Class 4 shall consist of all Interests in the Debtor. (This Class is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.)

7.      **Class 5 – Punitive Damage Claims.**

Class 5 shall consist of all Allowed Punitive Damages Claims against the Debtor.

## ARTICLE VI.
## Treatment of Claims and Interests

No Claim or Interest shall entitle the Holder thereof to a Distribution of Cash or to other consideration pursuant to the Plan unless, and only to the extent that, such Claim or Interest is an Allowed Claim or an Allowed Interest. Except as otherwise provided in the Plan or an order of the Bankruptcy Court, all Distributions of Cash on account of Allowed Claims and Allowed Interests shall be made on Distribution Date.

1763886 v6z

A. **Treatment of Unclassified Claims.**

     1. **Administrative Expense Claims**

        a. **Allowance and Payment of Fee Claims**. Except as provided by prior order of the Bankruptcy Court, professionals or other entities asserting a Fee Claim must File and serve on the Debtor, the Liquidating Trustee, the Bankruptcy Administrator, and such other entities as are designated by the Bankruptcy Rules, the Confirmation Order or other Final Order of the Bankruptcy Court, an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date. Such application may include fees and expenses of the applicant incurred after the Confirmation Date but prior to the Effective Date. Failure to timely and properly File an application for Allowance of a Fee Claim as set forth herein shall result in such Fee Claim being forever barred and discharged. Objections to an application for allowance of a Fee Claim must be Filed and served on the Debtor, the Liquidating Trustee, the Bankruptcy Administrator, and the applicant no later than twenty (20) days after the Filing of the application for allowance of such Fee Claim. Any Allowed Fee Claim unpaid as of the Effective Date shall be paid on the Effective Date or, if later, not later than the fifteenth (15th) Business Day after such Fee Claim becomes Allowed, in Cash equal to such Allowed Fee Claim from the Available Funds.

        b. **General Allowance Provisions for Administrative Expense Claims Other than Fee Claims and Goods Claims.** Pursuant to section 502 of the Bankruptcy Code, requests for payment of an Administrative Expense Claim, other than statutory fees, Fee Claims, or Goods Claims, arising before the Effective Date, must be Filed and served on the Liquidating Trustee and the Bankruptcy Administrator, pursuant to procedures set forth in the Confirmation Order, no later than thirty (30) days after the Effective Date; provided, however, all requests for payment of Goods Claims that were not filed before the June 5, 2009 Bar Date established by the Bankruptcy Court's Order of May 8, 2009, shall be denied, barred and discharged as untimely. Each such request for payment of an Administrative Expense Claim must include, at a minimum, (i) the name of the Holder of the Claim, (ii) the amount of the Claim, (iii) the basis for the Claim, and (iv) documents evidencing or supporting the Claim. Failure to timely and properly file a request for payment of an Administrative Expense Claim as set forth herein shall result in the Administrative Expense Claim being forever barred and discharged. Objections to any such request may be made by the Debtor or any party in interest and such objections, if any, must be filed and served on the Bankruptcy Administrator, the Liquidating Trustee and the requesting party by the later of twenty (20) days after the Effective Date or twenty (20) days after the filing of the applicable request for payment. To the extent not paid prior to the Effective Date, these claims shall be paid on the Effective Date or, if later, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed, Cash equal to such Allowed Claim from the Available Funds.

        c. **Payment of Goods Claims and Administrative Expense Claims allowed under Section III.A.1(b) of the Plan.** Subject to the allowance procedures set forth herein, unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of a Goods Claim or an Allowed Administrative Expense Claim Allowed pursuant to Section III.A.1(b) of the Plan, shall, to the extent not already paid, be paid on the

11

Effective Date or, if later, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed, Cash equal to such Allowed Claim from the Available Funds.

      d.    **Allowance and Payment of PACA/PASA Claims**. All requests for payment of PACA Claims and/or PASA Claims that were not filed before the respective statutory deadline provided in either PACA or PASA, shall be denied, barred and discharged as untimely, as established by the PACA/PASA Order. Subject to the allowance procedures set forth in the PACA/PASA Order, unless the Holder of an Allowed PACA Claim or an Allowed PASA Claim agrees to other treatment (in which event, such other agreement shall govern), each such Holder of an Allowed PACA Claim or an Allowed PASA Claim Allowed pursuant to the terms of the PACA/PASA Order, shall, to the extent not already paid, be paid on the Effective Date Cash equal to such Allowed PACA Claim and/or Allowed PASA Claim from the Available Funds.

      **B.**    **Treatment of Unimpaired Classes.**

      1.    **Priority Non-Tax Claims.** Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Priority Non-Tax Claim shall, to the extent not already paid, shall be paid in full in Cash from the Available Funds, to the extent funds are available, within the later of (a) thirty (30) days after all Allowed Administrative Expense Claims, Allowed PACA Claims and Allowed PASA Claims that exist against the Debtor have been paid in full or, (b) if an objection is pending at such time, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed, in Cash from the Available Funds.

      2.    **Priority Tax Claims.** Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Priority Tax Claim shall be paid in full in Cash from the Available Funds, to the extent funds are available, within the later of(a) thirty (30) days after all Allowed Administrative Expense Claims, Allowed PACA Claims, Allowed PASA Claims and Allowed Priority Non-Tax Claims that exist against the Debtor have been paid in full or, (b) if an objection is pending at such time, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed, in Cash from the Available Funds.

      3.    **Class 1 — Allowed Secured Claims.** Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 1 Claim shall receive the Collateral securing their Liens on, or as soon as reasonably practicable after, the Effective Date.

      **C.**    **Treatment of Impaired Classes**

      1.    **Class 2: Convenience Class of Unsecured Claims Against Debtor.**

      a.    Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of a Class 2 Claim shall receive twenty-five percent (25%) of its Allowed Claim amount from the Available Funds, to the extent funds are available, within thirty (30) days after all Allowed Administrative Expense Claims, Allowed Priority Tax

1763886 v67

Claims, Allowed PACA Claims, Allowed PASA Claims, Allowed Priority Non-Tax Claims and Allowed Class 1 Claims that exist against the Debtor have been paid in full.

b.        Claims in Class 2 are impaired under the Plan.  Therefore, pursuant to section 1126(a) of the Bankruptcy Code, the Holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

2.      **Class 3 – Allowed General Unsecured Claims.**

a.        Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 3 Claim shall be paid pro rata from the Available Funds, to the extent funds are available and until such Claims are paid in full, after the later of (a) thirty (30) days after payment of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed PACA Claims, Allowed PASA Claims, Allowed Priority Non-Tax Claims, Allowed Class 1 Claims, and Allowed Class 2 Claims that exist against the Debtor have been paid in full; or (b) if an objection is pending at such time, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed.  The Initial Distribution Date shall be in the discretion of the Liquidating Trustee, who shall make it as soon as reasonably practical after taking into the account the status of objections to claims and amount of Disputed Claims, the amount of Available Funds, and the cost of making the Distribution.

b.        Claims in Class 3 are impaired under the Plan.  Therefore, pursuant to section 1126(a) of the Bankruptcy Code, the Holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

3.      **Class 4 – Interest in Debtor.**  The Interest of the sole Member of Debtor, and any instruments and other documents evidencing such Interest, shall be cancelled.  The Holder of Interest in Class 4 shall not receive or retain any Distribution or other property on account of such Interest.

b.        Pursuant to section 1126(g) of the Bankruptcy Code, the Holder of Interest in Class 4 is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

4.      **Class 5 – Allowed Punitive Damages Claims.**  All Allowed Punitive Damages Claims shall be subordinated to the payment, in full, of all other Allowed Claims under the Plan.

b.        Claims in Class 5 are impaired under the Plan.  Therefore, pursuant to section 1126(a) of the Bankruptcy Code, Holders of the Class 5 Claims are entitled to vote to accept or reject the Plan.

1763886 v67

**D.** **Special Provisions Regarding the Allowance and Treatment of Workers Compensation Claims, Personal Injury Claims and Reservation of Rights Related to Insurance.**

        1.      **Treatment and Allowance of Workers Compensation Claims**

Subject to applicable Bar Dates to file claims established in the Case, Workers' Compensation Claims will continue to be determined by the administrative procedures established in each state. A final, non-appealable administrative determination will result in an Allowed Workers Compensation Claim. Subject to the Reservation of Rights provision below, Holders of Allowed Workers Compensation Claims will be paid by the applicable Insurer or state entity outside of the Plan in accordance with the applicable insurance contracts and/or applicable non-bankruptcy law.

        2.      **Treatment and Allowance of Personal Injury Claims**

The Plan contains a special provision for the allowance and treatment of Personal Injury Claims. Notwithstanding any other term or provision of the Plan, and subject to the Reservation of Rights provision below, each Personal Injury Claim shall be liquidated and Allowed against the Estate according to the following terms and conditions:

        a.      **Automatic Stay Lifted to Allow Liquidation of Claims Against Debtor in Order to Recover Available Insurance Proceeds or Other Source of Possible Payment.** The automatic stay shall be terminated as of the Effective Date to allow any holder of a Personal Injury Claim (a "Personal Injury Claimholder" or "Personal Injury Claimholders" in the plural) to liquidate such Personal Injury Claim against the Debtor as a nominal defendant in order to collect any judgment obtained from any insurance proceeds available to the Debtor or other non-debtor source of payment ; (ii) the liquidation of any Personal Injury Claim and/or collection of any judgment by a Personal Injury Claimholder from insurance proceeds available to the Debtor or other third party source of recovery is subject to the Reservation of Rights set forth below, and shall be without prejudice to the rights, claims or defenses of the Debtor or the Estate; and (iii) any such recovery by any Personal Injury Claimholder shall constitute a credit with respect to any Allowed Personal Injury Claim against the Debtor or the Estate.

        b.      **Automatic Stay Remains in Place for Allowance of Claims Against Estate.** Notwithstanding the occurrence of the Effective Date, and except as set forth above with respect to insurance proceeds available to the Debtor or other third party sources of recovery, the automatic stay shall remain in effect with respect to all Personal Injury Claims against the Debtor and the Estate and all litigation arising out of or related to such Personal Injury Claims, pending the completion of the resolution procedures set forth in this section of the Plan; provided, however, that any limitations or repose period applicable to any such Personal Injury Claim shall be tolled as to the Debtor and the Estate until the first Business Day that is thirty (30) days after such termination of the stay. The Debtor's insurers may participate in the resolution procedures set forth in this section, but are not obligated to do so.

1763886 v6/7

c.  **Settlement.**  Subject to the Reservation of Rights provision set forth below, the Liquidating Trustee may at any time settle and pay Allowed Personal Injury Claims in accordance with the Plan.

d.  **Mandatory Pre-Mediation Resolution Procedures.** Within thirty (30) days after January 1, 2010, each Personal Injury Claimholder shall serve on the Liquidating Trustee a written settlement offer containing such holder's good faith demand; provided, however, such settlement offer may not exceed the amount of the Personal Injury Claim indicated in any proof of claim filed by the Personal Injury Claimholder with respect to the Personal Injury Claim or, if the Personal Injury Claimholder has not filed a proof of claim, the amount of such Personal Injury Claim indicated in the Schedules.  Not later than fifteen (15) days after receipt of such written settlement offer, the Liquidating Trustee shall respond to such written settlement offer with a written counter-offer.  Thereafter, each party shall respond in writing to subsequent written counter-offers within ten (10) days of receipt.  If a Personal Injury Claimholder fails to respond to a counter-offer from the Liquidating Trustee in a timely fashion, the Personal Injury Claimholder shall be deemed to have stipulated to Allowance of such Personal Injury Claim in the amount of the Liquidating Trustee's last counter-offer and such Personal Injury Claim shall be Allowed in such amount.  If the Liquidating Trustee fails to respond to an offer or counter-offer from a Personal Injury Claimholder in a timely fashion, the Personal Injury Claimholder may terminate negotiations, shall be under no obligation to mediate and may request the Bankruptcy Court to terminate the stay to litigate the Personal Injury Claim pursuant to this section.

e.  **Mandatory Mediation.**  At any time by mutual consent, and upon the request of either party on or after April 1, 2010, the parties may mediate a Personal Injury Claim.  If the parties cannot agree on a mediator, either may petition the Bankruptcy Court, which shall appoint a mediator.  The parties shall share the costs of such mediation equally.  The Liquidating Trustee shall schedule mediations as promptly as reasonably possible taking into account the schedules of the parties, their counsel and the mediator.  The mediator shall establish procedures for the mediation.  The mediation shall occur in Birmingham, Alabama or such other location mutually agreeable to the parties.  Either party may notify and invite to the mediation any co-defendant or other party to a Personal Injury Claim.  If mediation does not result in settlement on or before July 31, 2010, either party may request the Bankruptcy Court to terminate the stay to proceed with litigation; provided, however, no party shall be entitled to stay relief hereunder unless the Bankruptcy Court finds such party has participated in the mandatory pre-mediation resolution procedures and any mandatory mediation in good faith.

f.  **Exchange of Information.**  At any time prior to mediation (i) a Personal Injury Claimholder shall provide to the Liquidating Trustee, within thirty (30) days of receipt of a written request for production, documents and other information supporting the Personal Injury Claim, including liability and damages; (ii) the Liquidating Trustee shall provide to a Personal Injury Claimholder, within thirty (30) days of receipt of a written request for production, to the extent available to the Liquidating Trustee, information regarding the Personal Injury Claim in the Liquidating Trustee's possession and control; and (iii) a Personal Injury Claimholder may subpoena from any third party pursuant to Bankruptcy Rule 9016 any records regarding the Personal Injury Claim.  The Bankruptcy Court shall retain exclusive jurisdiction

15

pursuant to the Bankruptcy Rules over any objection, motion to compel or motion to quash with respect to any request for production or information or subpoena under this section of the Plan**.**

        g.    **Confidentiality**.  All information, communications, offers, counter-offers, records and documents exchanged by the parties hereunder, all settlement discussions and negotiations and mediations shall remain confidential and shall not be admissible in any subsequent proceedings pursuant to Rule 408 of the Federal Rules of Evidence.

        h.    **Litigation**.  The Bankruptcy Court shall hear any request for stay relief under this section of the Plan after notice and a hearing.  Upon termination of the stay hereunder, the parties may proceed to liquidate and reduce the Personal Injury Claim to judgment before any court of competent jurisdiction, subject to all applicable rights regarding venue, forum selection, choice of law, removal, remand, abstention and all similar or related rights.  All parties reserve all substantive and procedural rights, claims and defenses, including, without limitation, with respect to any claim for punitive damages; provided, however, the payment of any punitive damages shall be subordinated to payment of all other Allowed Claims pursuant to the Plan.

### 3. Treatment of Personal Injury Claims.

Any Personal Injury Claim Allowed under this Section of the Plan shall be paid on the next Distribution Date after the order or judgment Allowing such Personal Injury Claim becomes a Final Order, on the terms and conditions set forth in the Plan.  Except to the extent a Final Order Allows a Personal Injury Claim as an Administrative Expense Claim, all Allowed Personal Injury Claims shall be treated as Allowed Class 3 Claims, subject to the provisions of Section III.C of the Plan, to the extent such Personal Injury Claim is not a Punitive Damages Claim, but shall be treated as a Class 5 Claim to the extent such Personal Injury Claim is a Punitive Damages Claim.

### 4. Reservation of Rights.

Nothing contained in this ~~Second~~Third Amended Disclosure Statement, the proposed Plan, the Confirmation Order, any exhibit to the Plan, the Plan Supplement, or any other Plan document (including any provision that purports to be peremptory or supervening), shall in any way operate to, or have the effect of, waiving or impairing or expanding in any respect the legal, equitable or contractual rights and defenses of the insureds and insurers under the insurance policies issued by members of the ACE group of companies ("ACE") and any related agreements ("ACE Policies and Agreements") and applicable non-bankruptcy law.  In addition, the ACE Insurance Orders related to the post-petition ACE Policies and Agreements remain in full force and effect. The rights and obligations of the parties to the ACE Policies and Agreements shall be determined by the terms of such policies and agreements, including the terms, conditions, limitations, exclusions and endorsements thereof, which shall remain in full force and effect, and by any applicable non-bankruptcy law. Any discharge or injunction or claims resolution provisions in the Plan shall not prejudice, waive or modify ACE's rights, and where applicable, its obligations, to investigate, defend, settle and/or litigate any claim against the Debtor which may be covered under any of the ACE Policies and Agreements.  To the extent the Debtor or any of the non-debtor insureds under the ACE Policies have a duty to administer and defend claims,

16

that duty will be performed by the Liquidation Trustee or the applicable non-debtor insured, subject to ACE's right, if any, to associate in and/or assume the defense. ACE reserves all of its rights and defenses under the ACE Policies and Agreements and applicable non-bankruptcy law, including any and all defenses to coverage.

### E. Effect of Confirmation

#### 1. Full and Final Satisfaction of Claims

The treatment of Claims and Interests provided in the Plan shall be in full and final satisfaction and settlement of all liabilities of Claims against the Estate, or Interests in the Debtor. Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims and liabilities against the Estate and termination of all Interests arising on or before the Effective Date, including any interest accrued after the Filing Date.

#### 2. Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date, all Persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined from taking any of the following actions against the Estate or any of its property on account of any such Claims or Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan, provided, however, that nothing contained in the Plan shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order.

**THE CONFIRMATION ORDER SHALL FURTHER PROVIDE THAT, UPON THE EFFECTIVE DATE, WITH THE EXCEPTION OF THE LIQUIDATING TRUSTEE AND HIS PROFESSIONALS AND THE PENSION FUND, ALL PERSONS ARE PERMANENTLY ENJOINED FROM OBTAINING ANY DOCUMENTS OR OTHER MATERIALS FROM BURR & FORMAN LLP, CURRENT COUNSEL FOR THE DEBTOR THAT IS IN THE POSSESSION OF SUCH COUNSEL AS A RESULT OF OR ARISING IN ANY WAY OUT OF THEIR REPRESENTATION OF THE DEBTOR.**

#### 3. Released Claims; Mutual Releases

1. Section VI.C.4 of the Plan provides that any Person or entity, including the Liquidating Trustee and the Pension Fund, retains the right to pursue any and all Causes of Action against any Persons who served as directors, officers or management employees of the Debtor on or after the Petition Date and each of their respective agents, employees, representatives, and professionals, including Alvarez & Marsal, James Grady, SSG Capital Advisors, LLC, and their employees, and the Committee and its members and professionals

17

1763886 v67

(collectively, with each of their predecessors and successors in interest and their respective general and limited partners, officers, directors, employees, agents, professionals and other representatives, the "Bankruptcy Parties" or singularly, a "Bankruptcy Party") based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, relating in any way to the Debtor, the Case, the Plan, the Disclosure Statement (the foregoing referred to as the "Bankruptcy Case Actions" or singularly, a "Bankruptcy Case Action"); provided however, if ~~the Committee or the Liquidating Trustee~~any Person or entity fails to commence a Bankruptcy Case Action against a Bankruptcy Party in a court of competent jurisdiction on or before November 30, 2009 (the "Initial Release Date"), the Bankruptcy Parties (collectively, with each of their predecessors and successors in interest and their respective general and limited partners, officers, directors, employees, agents, professionals and other representatives, the "Released Parties"), for good and valuable consideration, including, but not limited to, the commitment, obligation and service of each of the aforementioned to facilitate the expeditious implementation of the liquidation contemplated by the Plan, shall automatically be deemed to be released unconditionally and forever from any and all ~~Causes~~Claims or causes of ~~Action~~action that any Person or entity would have been legally entitled to assert (in their own right, whether individually or collectively, or on behalf of the Holder of any Claim or Interest or other Person or entity), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the earlier of the Effective Date or October 15, 2009, relating in any way to the Debtor, the Case, the Plan, the Disclosure Statement (the foregoing referred to as the "Released Actions"). ~~"").~~ In the interest of clarity, the following entities are not included among the Released Parties: Lone Star Fund V (U.S.) L.P.; BI-LO, LLC ARP Chickamauga, LLC; ARP Moonville, LLC; LSF5 BI-LO Investments, LLC; BI-LO Holding, LLC; BG Cards, LLC, ARP Ballentine, LLC; ARP Island, LLC; ARP Morganton, LLC; ARP Hartsville, LLC; and ARP Winston Salem, LLC.

In the event that the Effective Date has not occurred by October 15, 2009, if the Committee or the Liquidating Trustee fails to commence a Bankruptcy Case Action against a Bankruptcy Party in a court of competent jurisdiction on or before 45 days after the Effective Date (the "Secondary Release Date"), the Released Parties shall be released unconditionally and forever from any and all ~~Causes~~Claims or causes of ~~Action~~action that any Person or entity would have been legally entitled to assert (in their own right, whether individually or collectively, or on behalf of the Holder of any Claim or Interest or other Person or entity), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place between October 15, 2009 and the Effective Date, relating in any way to the Debtor, the Case, the Plan, and this ~~Second~~Third Amended Disclosure Statement.

If the Committee or the Liquidating Trustee commences a Bankruptcy Case Action against a Bankruptcy Party in a court of competent jurisdiction on or before the Initial Release Date or Secondary Release Date as applicable, while that particular Bankruptcy Party shall not be deemed to be released, the foregoing release shall still be deemed applicable to the other Bankruptcy Parties for all other claims and causes of actions contemplated by Section VI.C.4 of the Plan, and not otherwise timely prosecuted by the Committee or the Liquidating Trustee. With respect to the Liquidating Trustee and the professionals he retains, they shall not have any liability to any Person, including but not limited to Holders of Claims, except for gross negligence or intentional misconduct arising out of the discharge of their duties under the Plan.

18

The Plan further provides that as of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the Holders of Claims or Interests, and each of their respective agents, employees, professionals, and representatives, will be deemed to completely and forever release, waive, void, extinguish, and discharge the Released Parties from all Released Actions (other than the rights to enforce obligations created under the Plan, and any right or obligation of such holder under the Plan, and the securities, contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder or contemplated thereby, including, without limitation, the Plan and the ~~Second~~Third Amended Disclosure Statement).

## F.    **Implementation of Plan**

### 1.    **Appointment.**

The Liquidating Trustee shall be appointed as of the Effective Date and shall serve without a bond.  In the event of the death, resignation, incapacity, disqualification, or misconduct of the Liquidating Trustee, the Post Confirmation Committee shall appoint a successor.  The Liquidating Trustee shall retain and have all of the rights, powers and duties necessary to carry out his responsibilities under the Plan, and those rights, powers and duties shall be exercisable solely by the Liquidating Trustee.  Commencing on the Confirmation Date, the Debtor shall work with the Committee and the Liquidating Trustee to facilitate a smooth transition of the responsibility of the wind down of the Estate to the Liquidating Trustee, including being able to make the payments on the Effective Date that are required by the Plan.

### 2.    **Duration.**

The Liquidating Trustee shall continue to serve until entry of a Final Order of the Bankruptcy Court closing the Case pursuant to section 350(a) of the Bankruptcy Code.

### 3.    **Exclusive Powers and Duties**

The Liquidating Trustee shall serve under the Plan and shall discharge all of the rights, powers and duties set forth in the Plan.  Without limiting the generality of the foregoing, the Liquidating Trustee, his successors and assigns, shall have the following exclusive rights, powers and duties:

a.    All of the rights, powers, and duties of a trustee in bankruptcy, including but not limited to, those under sections 704(a)(1), (2), (4), (5), (7) and (9) and 1106(a)(3),(6) and (7) of the Bankruptcy Code;

b.    to administer the Available Funds, pursuant to the terms of the Plan;

c.    to use, acquire and dispose of property free of any restrictions imposed under the Bankruptcy Code;

d.    to sell, devise or otherwise dispose of any Assets without further notice or order of the Bankruptcy Court, except as otherwise provided in the Plan;

19

e.     to employ, retain, and replace such persons, including actuaries, attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants and advisors as necessary to discharge the duties of the Liquidating Trustee under the Plan and to pay the reasonable fees and costs of such employment without the need to seek approval from the Bankruptcy Court or review by any other party in interest.

f.     Except as provided for in the C&S Claim Objection Order with respect to the C&S Claim, to object to the Allowance of Claims or seek equitable subordination of Claims, pursuant to the terms of the Plan, and to settle any such objection to Claims without further Order of the Bankruptcy Court or notice to creditors or the Post Confirmation Committee, other than any settlement of any claim filed by BI-LO or C&S (if the latter is prosecuted by the Liquidating Trustee instead of Lone Star), which shall be subject to the approval of the Post Confirmation Committee;

g.     to establish reserves and open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under the Plan;

h.     to investigate, analyze, commence, prosecute, litigate, collect and otherwise administer the Causes of Action in the Bankruptcy Court or other court of competent jurisdiction and settle same without further order of the Bankruptcy Court or notice to creditors or the Post Confirmation Committee, other than any settlement of any Cause of Action in excess of $1,000,000, which shall be subject to the approval of the Post Confirmation Committee;

i.     to voluntarily engage in arbitration or mediation with respect to any Disputed Claims or Causes of Action;

j.     to represent the Estate before the Bankruptcy Court and other courts of competent jurisdiction with respect to all matters;

k.     to seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

l.     to pay any fees due and owing under 28 U.S.C. § 1930;

m.     to comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

n.     to comply with all applicable laws and regulations concerning the matters set forth herein;

o.     to invest the Available Funds in (a) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, (b) in money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof, or (c) or any other investments that may be permissible under section 345 of the Bankruptcy Code or order of the Bankruptcy Court;

20

p. to exercise such other powers as may be vested in the Liquidating Trustee pursuant to the Plan, the Confirmation Order or other Final Orders of the Bankruptcy Court;

q. to execute any documents, instruments, contracts and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trustee; and

r. to provide periodic reports to the Post Confirmation Committee at a frequency to be agreed upon by the Liquidating Trustee and the Post Confirmation Committee.

### 4. **Fees and Expenses**

The Liquidating Trustee shall be reimbursed for all out of pocket fees, costs, and expenses in acting under the Plan. The compensation of the Liquidating Trustee shall be a fixed monthly fee to be agreed upon by the Committee and the Liquidating Trustee on or before ten (10) days prior to the Confirmation Hearing and disclosed to the Bankruptcy Court on or before the Confirmation Hearing. Compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee (including, without limitation, professional fees and expenses) shall be paid from the Available Funds. Without limitation of the foregoing, the Liquidating Trustee shall pay, without further order, notice or application to the Bankruptcy Court, the reasonable fees and expenses of the Liquidating Trustee and the Liquidating Trustee's professionals as necessary to discharge the Liquidating Trustee's duties under the Plan. The payment of fees and expenses of the Liquidating Trustee shall be from Available Funds and be made in the ordinary course of business and shall not be subject to the prior approval of the Bankruptcy Court or the Post Confirmation Committee.

### 5. **Compromising Disputed Claims, Liens, and Causes of Action.**

The Liquidating Trustee is authorized to: (i) compromise and settle any Causes of Action, Liens, and Disputed Claims; and (ii) execute necessary documents, including a stipulations of settlement or release, without notice or further order of the Bankruptcy Court or notice to any party in interest, except that the approval of the Post Confirmation Committee shall be required for any settlement of the Claims of BI-LO or C&S (if the Claim objected is prosecuted by the Liquidating Trustee) or any Cause of Action in excess of $1,000,000 or against BI-LO.

### 6. **Post Confirmation Committee.**

The Post Confirmation Committee will become effective on the Effective Date. It will establish bylaws for its operation and meet at such times as it deems necessary. It consult with the Liquidating Trustee and its approval will be necessary as provided for in the Plan. If it deems it necessary to retain professionals, including counsel, the bills for those professionals will be submitted to the Liquidating Trustee will pay the reasonable and necessary fees and expenses of those professionals from the Available Funds. If there is a dispute with respect to payment of those fees and expenses, the Post Confirmation Committee can file an application with the Bankruptcy Court to determine the matter.

1763886 v67

7. **Liquidation of Assets.**

Notwithstanding any other provision of the Plan, on the Effective Date or as soon as practicable thereafter, the Liquidating Trustee (without further motion, notice or order of the Bankruptcy Court, subject to the terms of the Plan), shall liquidate the Available Funds and convert such Available Funds to Cash, on the terms and conditions set forth in the Plan and distribute the Net Proceeds thereof in accordance with the Plan.

8. **Distributions.**

The Liquidating Trustee shall liquidate the Assets of the Debtor in accordance with the Plan and shall distribute the Net Proceeds thereof as follows: (a) first to pay the reasonable costs and expenses of the Liquidating Trustee and his professionals (including professional fees) incurred in administering, maintaining, and preserving the Available Funds and the liquidation of the Assets of the Debtor (to the extent not otherwise paid pursuant to the Plan); and (b) second Pro Rata to the Holders of Allowed Claims on the terms and conditions, and in the priority, set forth in the Plan.

9. **Retention and Enforcement of Claims and Causes of Action of the Estate.**

Unless expressly and unequivocally released in the Plan, nothing contained in the Plan shall be deemed to be a waiver or relinquishment or release of any Causes of Action that the Liquidating Trustee may choose to assert on behalf of the Estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. All Causes of Action, cross-claims, setoffs, defenses and counterclaims of the Debtor or the Estate of any kind or nature whatsoever including, without limitation, those against third parties arising before the Effective Date that have not been disposed of prior to the Effective Date shall be preserved and retained for enforcement by the Liquidating Trustee for the benefit of the Estate as set forth in the Plan, except to the extent expressly and unequivocally released or enjoined by the Plan or pursuant to a Final Order. Without limitation of the foregoing, pursuant to section 1123(b) of the Bankruptcy Code, the Liquidating Trustee, and his successors and assigns, shall retain and is solely empowered and authorized to enforce, for the benefit of the Estate: (a) the Causes of Action, including, but not limited to, those against any former or current officer, director, member, manager or agent of the Debtor or any insider or affiliate of the Debtor, as those terms as defined in the Bankruptcy Code, arising under applicable non-bankruptcy law under either federal or state law, including but not limited to breaches of fiduciary duty; and against any professional retained by the Debtor prior to the Filing Date for malpractice or negligence or other torts, including any lawyer, law firm, accountant, accounting firm, consultant or consulting firm or investment banker or investment banking firm for services performed prior to the Filing Date and (b) all other Causes of Action and related recoveries of any nature or type whatsoever, at law or in equity, against any Person or entity. The following is a non-exhaustive list of former and current officers, directors, members managers, agents, insiders and affiliates of the Debtor against whom the Estate is reserving and retaining Causes of Action, which Causes of Action shall be enforceable by the Liquidating Trustee for the benefit of the Estate: LSF5 Bruno's Investments, LLC, Lone Star Funds V (U.S.), L.P., Hudson Advisors, LLC, Lone Star, InLine Investments, LLC, BI-LO, LLC, and all insiders and affiliates of the foregoing, as those terms

22

1763886 v6

are defined in the Bankruptcy Code and Brian Carney, Brian Hotarek, Brian P. Carney, Charles Lowrey, Chris Williamson, Layne LeBaron, David M. West, David Mills, Dennis Wade, John Symons, Kenneth Jones, Kent Moore, Kevin McDougall, Kyle Gayler, Marc L. Lipshy, Michael Yakovsky, Mike Crandall, Paul Floyd, Phil Barker, Ray England, Robert Zielinski, Scott Jackson, Scott North, Steve Black, Len W. Allen, Jr. and Mike Prushan. Regardless of whether a name of a Person or entity is listed among the forgoing, the Liquidating Trustee is retaining for enforcement for the benefit of the Estate any and all Causes of Action against any and all former officers, directors, members, mangers and agents of the Debtor.

Furthermore, except as specifically released or enjoined by the Plan or pursuant to a Final Order, the Liquidating Trustee is retaining for enforcement for the benefit of the Estate all Avoidance Actions, including, but not limited to, against the following Persons or entities: (a) any Person or entity who received a payment or property from the Debtor to or for their benefit on account of an antecedent debt owed by the Debtor within ninety (90) days of the Filing Date, including, but not limited to, those persons or entities identified in response to Question 3(a) on Debtor's Statement of Financial Affairs Filed with the Bankruptcy Court, (b) any insider of the Debtor, as that term is defined by the Bankruptcy Code, who received a payment or transfer of property from the Debtor to or for their benefit on account of an antecedent debt owed by the Debtor within one year of the Filing Date and (c) any Person or entity who received a transfer of property from the Debtor or from whom the Debtor assumed an obligation within two years of the Filing Date. Regardless of whether or not a Person or entity is identified as a recipient of a payment or other transfer of property from the Debtor or the transferor of obligation to the Debtor in the Debtor's Statement of Financial Affairs Filed with the Bankruptcy Court, all Avoidance Actions against any Persons or entities shall be reserved and retained for enforcement by the Liquidating Trustee, for the benefit of the Estate.

Upon the Effective Date, the Liquidating Trustee shall automatically be substituted in as the Plaintiff in any action in which the Debtor or the Committee was the Plaintiff.

The Committee believes that the Causes of Action being reserved for enforcement by the Liquidating Trustee have substantial value and, if pursued by the Liquidating Trustee, will result in a significant recovery and a meaningful distribution to unsecured creditors. The Committee has sent a notice to certain of Debtor's former and current officers and directors that it believes certain Causes of Action exist against them, which Causes of Action, if meritorious, the Committee believes would be covered by an officer and director liability insurance policy which provides coverage in an amount not to exceed $15,000,000. Those Causes of Action are disputed by the potential defendants and will be vigorously contested if pursued by the Liquidating Trustee. The Committee also believes that the Estate has claims against other insiders, including, but not limited to, Lone Star and BI-LO, in an amount of not less than $33,500,000 for preferential and fraudulent transfers and other theories of recovery. The insiders, including, but not limited to, Lone Star and BI-LO, dispute those Causes of Action and will vigorously contest them if they are pursued by the Liquidating Trustee. BI-LO is also a debtor in its own Chapter 11 case (Case No. 09-2140, U.S. Bankr. Ct. D.S.C.) and has asserted claims against the Estate in the amount of at least $15,000,000, which claims the Committee believes either have no merit or are subject to defenses, offsets or counterclaims such that there should be no liability and, therefore, should be vigorously contested. Neither the Debtor nor the Committee have undertaken an analysis of preferential and fraudulent transfers against non-

23

insiders so no estimated value can be attributed to those claims at this time, but they are also being reserved for enforcement by the Liquidating Trustee. Nothing in the Plan prejudices any party's positions with respect to jurisdictional, substantive, and procedural issues pertaining to the Causes of Action and other claims described in this paragraph.

## ARTICLE VII.
### Claims Resolutions and Distributions

A.    **Procedure for Determination of Claims.**

      1.    **Objections to Claims.**  Subject to the C&S Claim Objection Order, after the Effective Date, the Liquidating Trustee shall have exclusive authority and responsibility to prosecute objections to all Claims.

      2.    **Disputed Claims.** Payments or Distributions under the Plan on Account of Disputed Claims shall be held in reserve pending the Allowance or disallowance of the Claim. To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall promptly be returned to the Liquidating Trustee.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions on account of such Allowed Claim shall be made in accordance with the provisions of the Plan.  On the Distribution Date next following the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any Cash held in reserve pursuant to the Plan that would have been distributed prior to the date on which a Disputed Claim becomes an Allowed Claim shall be distributed to the Holder of such Allowed Claim, together with any other Distributions that would be due on account of such Claim being an Allowed Claim.  The Liquidating Trustee shall reserve from any Distribution on account of Allowed Claims any amount otherwise allocable to a Claim that is a Disputed Claim pursuant to Section VII.B.8 of the Plan.

B.    **Distributions.**

      1.    **Distributions on Allowed Claims.**

      Except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made:  (a) at the addresses set forth on the respective proofs of Claim Filed by such Holders; (b) at the addresses set forth in any written notice of address change delivered to the Debtor or the Liquidating Trustee, as applicable, after the date of the Filing of any related proof of claim; or (c) at the address reflected in the Schedules or the Debtor's books and records if no proof of claim has been Filed and if the Debtor or the Liquidating Trustee, as applicable, has not received written notice of a change of address, as set forth herein.  The distributions to Holders of Allowed Claims shall be on the Initial Distribution Date and the subsequent Distribution Dates on the terms and conditions of the Plan.  Notwithstanding any other provision of the paragraph, all Distributions to Holders of Claims shall be subject to the provisions of the Plan concerning reserves for Disputed Claims.

1763886 v6_7

2.     **Undeliverable Distributions.**

If a Distribution is returned as undeliverable, the Liquidating Trustee shall hold such Distribution and shall not be required to take any further action with respect to the delivery of the Distribution unless and until the earlier of (a) the date on which the Liquidating Trustee, as applicable, is notified in writing of the then current address of the holder entitled to receive the Distribution and (b) three (3) months after said Distribution, except as the Bankruptcy Court may otherwise order.  If the Liquidating Trustee is notified in writing of the then current address of the holder before three (3) months after said Distribution, the Liquidating Trustee shall make the Distribution required by the Plan to the Holder at such address.  If the Liquidating Trustee is not so notified by three (3) months after said Distribution, and the Holder of the Claim does not assert a right to the undeliverable Distribution within three (3) months after the Distribution, the Holder shall be forever barred from asserting a Claim to such undeliverable Distribution and future Distributions, and the undeliverable Distribution shall become available for Distribution to Holders of other Allowed Claims as provided in the Plan.

3.     **Manner of Payment.**

Distributions under the Plan may be made, at the option of the Liquidating Trustee, in Cash, by wire transfer or by check drawn on such accounts established by the Liquidating Trustee as necessary to effectuate the Plan.

4.     **Interest.**

Unless otherwise required by Final Order of the Bankruptcy Court, interest shall not accrue or be paid after the Filing Date on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Filing Date on any Claim.

5.     *De Minimis* **Distributions.**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

a.     Except with respect to the Convenience Class of Unsecured Creditors, no interim Distribution will be made on account of any Allowed Claim if the amount of such Distribution is less than $25.00.

b.     On the Final Distribution Date, the Liquidating Trustee shall (i) aggregate the amount of all Distributions that would have been made on account of an Allowed Claim in Class Three but for this *de minimis* provision and (ii) make a Distribution on account of such Allowed Claim in accordance with the Plan.

6.     **Distributions on Claims Allowed Pursuant to Section 502(h) of the Bankruptcy Code.**

Except as otherwise provided in the Plan, no Distributions shall be made on account of a Claim arising as a result of a Final Order entered in an Avoidance Action until such Claim becomes an Allowed Claim.  Any Claim that is Allowed pursuant to § 502(h) of the Bankruptcy

Code prior to the Initial Distribution Date as a result of the entry of a Final Order in any Avoidance Action will be treated in accordance with the provisions of the Plan. All Holders of such Claims that become Allowed Claims after the Initial Distribution Date will receive an initial distribution on the Distribution Date next following the date on which their Claim becomes an Allowed Claim and shall receive subsequent Distributions, if any, in accordance with the provisions of the Plan. Distributions under the Plan on account of anticipated Claims that may arise or become allowable as a result of the entry of a Final Order in any Avoidance Action that are not Allowed Claims as of the Initial Distribution Date may be held in reserve, at the discretion of the Liquidating Trustee, pending the allowance or disallowance of such Claims.

### 7. Compliance with Tax Requirements.

In compliance with section 346 of the Bankruptcy Code, to the extent applicable, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making Distributions pursuant to the Plan and shall be authorized to take any and all action necessary and appropriate to comply with such requirements. As a condition to making any Distribution under the Plan, the Liquidating Trustee may require the Holder of an Allowed Claim to provide such Holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws. Notwithstanding any other provision of the Plan, each entity receiving a Distribution of Cash pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.

### 8. Reserve for Disputed Claims.

Except as otherwise provided in the Plan, no Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim. In making any Distribution on Allowed Class 2, Class 3 or Class 5 Claims, the Liquidating Trustee shall calculate the amount of such Distribution (for purposes of making a Pro Rata calculation) as if each Disputed Claim were an Allowed Claim, unless the Bankruptcy Court enters an order specifying that the Disputed Claim should be treated as being a different amount for purposes of such calculation. The Liquidating Trustee shall reserve from Distributions a sufficient amount to make a Distribution on a Disputed Claim in the event it becomes an Allowed Claim (unless the Bankruptcy Court orders otherwise); and to the extent a Disputed Claim is disallowed pursuant to a Final Order, any reserves attributable to the disallowed portion of the Disputed Claim shall be distributed on account of Allowed Claims pursuant to the terms of the Plan.

### 9. Setoffs.

Subject to section 553 of the Bankruptcy Code, in the event the Debtor has a Claim or Cause of Action of any nature whatsoever against a Holder of a Claim, the Liquidating Trustee may, but is not required to, set off or recoup the Debtor's Claim against such Claim (and any Distributions or other rights to receive property arising out of such Claim under the Plan) unless any such Claim or Cause of Action of the Debtor is or will be released under the Plan. Neither

1763886 v6,7

the failure to set off nor the allowance of any Claim or Cause of Action under the Plan shall constitute a waiver or release of any Claim or Cause of Action of the Debtor.

10. **Reliance on Claims Register.**

In making Distributions under the Plan, the Liquidating Trustee may rely upon the accuracy of the claims register maintained by the Bankruptcy Court or its designee as claims agent in the Case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

## ARTICLE VIII.
## Other Provisions of the Plan

### A. Treatment of Executory Contracts and Unexpired Leases

Pursuant to section 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases to which the Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the Bankruptcy Court, are deemed rejected pursuant to section 365(a) of the Bankruptcy Code as of the Confirmation Date.

Each party to an executory contract or unexpired lease rejected pursuant to the Plan (and only such entities) asserting a Claim for damages arising from such rejection shall File, not later than thirty (30) days following the Confirmation Date, a proof of such Claim; *provided, however,* that (1) the Bar Date established for rejection damages claims in this Section IV of the Plan shall not apply to Persons that may assert a Claim on account of an executory contract or unexpired lease that was rejected by the Debtor before the Confirmation Date for which a prior Bar Date was established; and (2) any Person asserting a claim for rejection damages that does not timely File a proof of claim in accordance with the Plan shall be forever enjoined and barred from asserting such Claim against the Debtor, the Estate or any property of the Estate.

### B. Effective Date

The Plan will not become effective and operative unless and until the Effective Date occurs. The Effective Date will occur on the first Business Day after, and only after (a) the Confirmation Order has been entered and becomes a Final Order, and provides that the Liquidating Trustee is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Plan or effectuate, advance or further the purposes thereof; (b) all Plan Exhibits shall be, in form and substance, reasonably acceptable to the Debtor and shall have been executed and delivered by all parties' signatory thereto; (c) the Liquidating Trustee shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures and the agreements or documents created in connection with the Plan; (d) all other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and (e) Available Funds shall be sufficient to make all required payments on the Effective Date and fund a reserve for such payments if not Allowed as of the Effective Date.

27

Each of the conditions precedent to the Effective Date as set forth in Section V of the Plan may be waived in whole or in part by the Debtor. The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## C.     **Consequences Of Non-Occurrence Of Effective Date**

In the event that the Effective Date does not timely occur, the Debtor and the Committee reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void. In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions

## D.     **Retention of Jurisdiction**

Under the Plan, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction as is set forth in the Plan. Without limitation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

1.     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim, the resolution of any objections to the Allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation of any reimbursement of expenses of parties entitled thereto;

2.     Hear and determine all applications for compensation and reimbursement of expenses of professionals under the Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

3.     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.     Effectuate performance of and payments under the provisions of the Plan;

5.     Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case or the Plan;

6.     Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the ~~Second~~Third Amended Disclosure Statement or the Confirmation Order;

28

7.      Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

8.      Consider any modifications of the Plan and any implementing documents, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

11.     Hear and determine any matters arising in connection with or relating to the Plan, the ~~Second~~Third Amended Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the ~~Second~~Third Amended Disclosure Statement or the Confirmation Order;

12.     Enforce all orders, judgments, injunctions , releases, exculpations, rulings and indemnifications entered in connection with the Case;

13.     Except as otherwise limited by the Plan, recover all assets of the Debtor and property of the Estate, wherever located;

14.     Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

15.     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

16.     Hear and determine the Causes of Action, unless the Liquidating Trustee determines, in his sole discretion, to commence an action or proceeding in another court of competent jurisdiction;

17.     Hear and determine all disputes involving the existence, nature or scope of the injunctions indemnification, exculpation and releases granted pursuant to the Plan;

18.     Hear and determine all disputes or other matters arising in connection with the interpretation, implementation or enforcement of the Asset Sales;

19.     Hear and determine all matters related to (i) the property of the Estate from and after the Confirmation Date, (ii) the winding up of the Estate and (iii) the activities of the Liquidating Trustee, including (A) challenges to or approvals of his activities, where required under the Plan (B) resignation, incapacity or removal of the Liquidating Trustee, (C) reporting by, termination of and accounting by Liquidating Trustee and (D) release of the Liquidating Trustee from his duties;

29

1763886 v67

20.     Hear and determine disputes with respect to compensation of professionals;

21.     Hear and determine all disputes involving the existence, nature and/or scope of the injunctions and releases provided by the Plan including any dispute relating to any liability arising out of any termination of employment or the termination of any employee or retiree benefit provision, regardless of whether such termination occurred prior to or after the Effective Date;

22.     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provision of the Bankruptcy Code;

23.     Enforce all orders previously entered by the Bankruptcy Court; and

24.     Enter a final decree closing the Case.

### E.     **Modifications and Amendments**

The Plan Proponent may alter, amend or modify the Plan pursuant to section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After Confirmation Date and prior to the substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Plan Proponent may, pursuant to section 1127(b) of the Bankruptcy Code, institute proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the ~~Second~~Third Amended Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan; so long as such proceedings do not adversely affect the treatment of Holders of Claims or provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002 or order of the Bankruptcy Court.

### ARTICLE IX.
### PLAN CONFIRMATION PROCESS

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

### A.     **Acceptance Of Plan By Voting**

1.     **Approval of ~~Second~~Third Amended Disclosure Statement**

After notice and a hearing held on ~~,~~ August 6, 2009 by order dated ~~,~~August 7, 2009 pursuant to Bankruptcy Code § 1125, the Bankruptcy Court approved this ~~Second~~Third Amended Disclosure Statement as containing information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of holders of Claims to make an informed judgment whether to accept or reject the Plan. The Bankruptcy Court's approval of this ~~Second~~Third Amended Disclosure Statement, however, does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

Each holder of a Class 2 Claim, Class 3 Claim or Class 5 Claim is entitled to vote on the Plan and should carefully read this ~~Second~~Third Amended Disclosure Statement and the Plan in their entirety before voting on the Plan.

30

2. **Voting on the Plan**

Pursuant to Bankruptcy Code § 1126, holders of Allowed Claims may vote to accept or reject the Plan, provided, however, that (i) the holders of Claims in classes that are not impaired under the Plan conclusively are presumed to have accepted the Plan and solicitation of acceptances with respect to such classes is not required, and (ii) a class is deemed not to have accepted the Plan if the Plan provides that the Claims or Interests in such class do not entitle the holders of such Claims or Interests to receive or retain any property under the Plan on account of such Claims or Interests. Accordingly, the Debtor is soliciting acceptance of the Plan only from holders of Claims in Classes 2, 3 and 5 which are "impaired" under the Plan and are entitled to accept or reject the Plan.

Because holders of Interests in Class 4 shall not receive or retain any Distribution or other property on account of such Interests, they are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

3. **Deadline for Voting**

After reviewing the Plan and the Exhibits hereto, please indicate your vote on the enclosed Ballot and return it either by overnight courier or regular mail to the Voting Agent at the address specified in the Ballot and below. Holders of Claims in Classes entitled to vote should read the Ballot carefully and follow the instructions contained therein. BALLOTS SUBMITTED TO THE VOTING AGENT BY FAX OR OTHER ELECTRONIC TRANSMISSION WILL NOT BE ACCEPTED AND WILL BE VOID.

**Holders of Claims in Classes 2 and 3 should complete and sign the enclosed Ballot and deliver it to the Voting Agent at the following address:**

**BFW Liquidation, LLC (f/k/a Bruno's Supermarkets, LLC)**
**c/o Kurtzman Carson Consultants, LLC**
**2335 Alaska Avenue, El Segundo, California 90245**
~~**Attn: James Le**~~

~~**With a copy to:**~~
~~**Burr & Forman LLP**~~
~~**420 North 20th Street, Suite 3400**~~
~~**Birmingham, Alabama 35203**~~
~~**Attn: Derek Meek**~~

~~**And:**~~


**FOR YOUR VOTE TO COUNT, YOUR BALLOT MUST BE RECEIVED BY THE VOTING AGENT DESIGNATED ABOVE AT THE SPECIFIED ADDRESS NO LATER THAN 5:00 P.M. PREVAILING CENTRAL TIME ON ~~[_____]~~SEPTEMBER 11, 2009 (THE "VOTING DEADLINE").**

31

1763886 v6<u>7</u>

**IF YOU MUST RETURN YOUR BALLOT TO A TRUSTEE, BANK, BROKER, AGENT OR SIMILAR ENTITY, YOU MUST RETURN YOUR BALLOT TO IT IN SUFFICIENT TIME FOR IT TO PROCESS THE BALLOT AND RETURN IT TO THE VOTING AGENT BY THE VOTING DEADLINE.**

To obtain additional Ballots, you may contact the Voting Agent at the addresses specified above. You may also obtain copies of the Plan, ~~Second~~Third Amended Disclosure Statement and other related documents at http://www.kccllc.net/brunos.

The Plan Proponent has concluded that confirmation of the Plan is in the best interest of the Debtor, all Holders of Claims and the Debtor's Estate.

### B. <u>Confirmation</u>

At the Confirmation Hearing, the Bankruptcy Court shall confirm the Plan if the Plan satisfies all requirements of Bankruptcy Code § 1129(a). The requirements for confirmation of the Plan under Bankruptcy Code § 1129(a) include the following: (1) the Plan must be accepted by all impaired classes, (2) the Plan must be feasible, and (3) with respect to each holder of a Claim or Interest that does not vote to accept the Plan (even if such holder is a member of a Class that as a whole votes to accept the Plan), the Plan must be in the "best interest" of such holder in that the Plan provides for a Distribution to the holder that is not less than the amount such holder would receive in a hypothetical Chapter 7 liquidation of the Debtor.

With respect to the requirement that each impaired class votes to accept the Plan, Bankruptcy Code § 1129(b) provides that if all other requirements of Bankruptcy Code § 1129(a) are satisfied, the Plan still may be confirmed if the Plan, with respect to each impaired class that does not accept the Plan, "does not discriminate unfairly" and is "fair and equitable" with respect to such Class. The acceptance, feasibility, unfair discrimination and fair and equitable concepts are discussed in more detail below.

For the Plan to be accepted by an impaired class of Claims or Interest, it must be accepted by holders of Claims or Interest in such Class that hold at least two-thirds in dollar amount and one-half in number of the Claims or Interest in such Class held by creditors that actually vote. A Class or Interest is impaired if the legal, equitable, or contractual rights of the members of such Class or Interest are modified or altered by the Plan (with an exception, not applicable to the Plan, for curing defaults, reinstating maturity and compensating certain damages). Holders of Claims in Class 2, Class 3 and Class 5 are impaired. Unimpaired Classes are conclusively presumed to have accepted the Plan and are not part of the vote solicitation process. Class 4 is unimpaired under the Plan and is not entitled to vote.

If all Classes of Claims are unimpaired but a Class of Interests is impaired and does not accept the Plan, the Debtor may seek confirmation of the Plan under the "cramdown" provisions of Bankruptcy Code § 1129(b). To obtain confirmation despite non-acceptance by one or more impaired classes, the Debtor must show to the Bankruptcy Court that the Plan does not discriminate unfairly and is fair and equitable with respect to each such Class. Each of these requirements is discussed further, as follows:

1763886 v6

1. **Unfair Discrimination**

A Plan does not discriminate unfairly with respect to a non-accepting Class if it protects the rights of such Class in a manner consistent with the treatment of other Classes with similar rights. The unfair discrimination test does not require that similarly situated Classes be treated in exactly the same way. The test requires that such Classes be treated substantially similarly <u>or</u>, if not treated substantially similarly, that differences in treatment be fair.

2. **Fair And Equitable Test**

In the event any impaired class of Claimants does not accept the Plan, the Debtor must demonstrate to the Bankruptcy Court, as to each nonaccepting Class that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A Plan does not discriminate unfairly if no Class receives more than it is entitled to for its Claims. The Bankruptcy Code establishes "fair and equitable" tests for unsecured creditors as follows:

> Unsecured Creditors: Either (i) each impaired unsecured creditor receives or retains under the Plan property of a value equal to the amount of its Allowed Claim, or (ii) the holders of Claims that are junior to the Claims of the dissenting Class will not receive any property under the Plan.

## C. <u>Best Interest Test</u>

Before the Bankruptcy Court will confirm the Plan, the Plan must meet the best interest test. The best interest test requires that with respect to each impaired class of creditors under the Plan, each Claimant either (a) has accepted the Plan; or (b) will receive or retain under the Plan on account of its Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount such Claimant would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. In other words, if one or more Claimants that are members of an impaired class vote to reject the Plan, the Bankruptcy Court will confirm the Plan only if the Distribution to such Claimants under the Plan is not less than the Distribution that the Claimants would receive under a Chapter 7 liquidation of the Debtor.

Based upon several factors present in the Debtor's Bankruptcy Case, the Debtor believes that the Plan meets the best interest test. Considering the liquidation value of the Debtor's assets, the Liens and security interests of secured creditors, the cost of liquidation under Chapter 7, and the adverse impact that a liquidation under Chapter 7 would have on the going concern value of the Debtor's assets, the Debtor believes that the Plan provides for a larger Distribution to individual unsecured creditors than under a Chapter 7 liquidation of the Debtor.

To determine if the Plan is in the best interest of each impaired class, the Bankruptcy Court will compare the present value of the Distributions from the proceeds of the liquidation of the Debtor's assets and properties (after subtracting the amounts attributable to the Secured Claims discussed above) with the present value offered to each of the Classes of Unsecured Claims under the Plan. The Distributions from the liquidation proceeds would be calculated Pro Rata according to the amount of the Claim held by each creditor.

33

After considering the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for Distribution to creditors in the present case, including the costs and expenses of liquidation under Chapter 7, the uncertainties inherent in a Chapter 7, and the adverse affect that a Chapter 7 would have on the value of certain of the Debtor's assets, the Debtor has determined that a Chapter 7 liquidation would not pay creditors in full. Debtor believes the value of any Distribution from the liquidation proceeds in a Chapter 7 would be less than the value of the Distribution under the Plan due to efficiencies provided by having a Liquidating Trustee.

Based on the foregoing analysis and given the elimination of uncertainties inherent under Chapter 7, the Debtor believes the confirmation of the Chapter 11 Plan will provide each Claimant with greater recovery than such Claimant would receive pursuant to a liquidation of the Debtor under Chapter 7 of the Bankruptcy Code. Accordingly, the Debtor submits that the Plan meets the best interest test.

### D. Acceptance

Each impaired class of Claimants must accept the Plan or the "Fair and Equitable Test" described above must be met with respect to each impaired class that does not accept the Plan by the requisite vote.

### E. Consummation

The Plan provides that the Plan shall be deemed to be substantially consummated when the Liquidating Trustee makes the Final Distribution.

The Plan is to be implemented pursuant to the provisions of the Bankruptcy Code. Implementation requires an order of the Bankruptcy Court confirming the Plan.

## ARTICLE X.
## ALTERNATIVES TO CONFIRMATION OF THE PLAN

If the Plan is not confirmed and consummated, the theoretical alternatives include: (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; or (b) an alternative plan of reorganization.

### A. Liquidation Under Chapter 7

If the Bankruptcy Court does not confirm a plan of reorganization, the Bankruptcy Court may convert the Debtor's case to a case under Chapter 7 of the Bankruptcy Code. Under Chapter 7, a trustee would be elected or appointed to liquidate the assets of the Debtor for Distribution to creditors in accordance with the priorities established by the Bankruptcy Code. Without limitation, secured and priority Claims would be paid in full before any Distribution to general unsecured creditors. As virtually all of the Debtor's assets are encumbered, the Debtor believes that liquidation of the Debtor's assets under Chapter 7 would result in fewer Distributions to unsecured creditors than under the Plan. Having one Liquidating Trustee oversee the liquidating of the Debtor's assets through the structure provided by the Plan will provide efficiency to the process.

34

## B. Alternative Plan of Reorganization

If the Plan is not confirmed, creditors may elect to vote for other plans which may be proposed later. However, given the liquidating of the Debtor's stores and the status of the economy, Debtor does not believe that it can effectively reorganize under any plan not involving the complete liquidation of the Debtor's assets.

## ARTICLE XI.
## RECOMMENDATION

The Debtor believes that the confirmation and implementation of the Plan is preferable to the alternative described above because the Plan will provide greater recoveries to all claimants than those available in a Chapter 7 liquidation. In addition, any other alternative plan would probably not be feasible and would involve significant delay, uncertainty, and substantial additional administration. Accordingly, the Debtor recommends that all parties entitled to vote on the Plan accept the Plan and that the Bankruptcy Court confirm the Plan.

Dated: August 5,7, 2009

Respectfully submitted,

/s/ Derek F. Meek

Robert B. Rubin
Derek F. Meek
Marc P. Solomon

**BURR & FORMAN LLP**
420 North 20th Street, Suite 3400
Birmingham, Alabama 35283-0719
Phone:          (205) 251-3000
Facsimile:      (205) 458-5100

*Attorneys for Debtor*

35

1763886 v67

Document comparison done by DeltaView on Friday, August 07, 2009 2:53:19 PM

| Input: | |
|---|---|
| Document 1 | PowerDocs://DOCS/1763886/6 |
| Document 2 | PowerDocs://DOCS/1763886/7 |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |

| Inserted cell | |
|---|---|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 73 |
| Deletions | 73 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 146 |

# Exhibit A

## DEBTOR'S PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

1763886 v67

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **IN RE BFW LIQUIDATION, LLC F/K/A** | ) | **Case No. 09-00634** |
| **BRUNO'S SUPERMARKETS, LLC,** | ) | |
| | ) | |
| **Debtor.** | ) | |

### DEBTOR'S ~~SECOND~~THIRD AMENDED PLAN OF LIQUIDATION

Robert B. Rubin
Derek F. Meek
Marc P. Solomon
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone:    (205) 251-3000
Facsimile:    (205) 458-5100

Counsel for Debtor and Debtor-in-Possession

August ~~5,~~7, 2009

# INTRODUCTION

BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC ("Bruno's" or "Debtor") hereby proposes this Second Amended Plan of Liquidation (the "Plan") to resolve claims against, and interests in Debtor. Debtor is the proponent of this Plan within the meaning of section 1129 of the United States Bankruptcy Code, as amended ("Bankruptcy Code").

This is a liquidating plan. Substantially all of Debtor's assets have been sold. This Plan provides liquidation and conversion to Cash of Debtor's remaining Assets and the Distribution of the net proceeds realized therefrom by a Liquidating Trustee to Debtor's Creditors holding Allowed Claims in accordance with the provisions established by the Bankruptcy Code. This Plan further provides for the dissolution and wind up of the affairs of Debtor.

For a discussion of Debtor's history, businesses, operations, assets and financial information, and for a summary and analysis of this Plan, all parties entitled to vote on this Plan should consult the Disclosure Statement accompanying this Plan, including the Exhibits thereto (the "Disclosure Statement").

No solicitation materials other than the Disclosure Statement and related materials transmitted therewith have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in this Plan should be construed as constituting a solicitation of acceptances of this Plan unless and until the Disclosure Statement has been approved and distributed to all holders of Claims and Interests to the extent required by 11 U.S.C. § 1125.

> NO CREDITOR OR OTHER PARTY IN INTEREST SHOULD CONSIDER THIS PLAN BINDING ON ANY PARTY IN THE ABOVE-CAPTIONED CASES UNTIL CONFIRMED, AS THIS PLAN IS SUBJECT TO AMENDMENT AND MAY BE REVISED. NO ASSURANCE CAN BE GIVEN THAT ANY DISTRIBUTION WILL BE MADE ON THE TERMS SET FORTH IN THIS PLAN.

All holders of Claims entitled to vote on this Plan are encouraged to read carefully the Disclosure Statement and this Plan, each in its entirety, before voting to accept or reject this Plan.

## SECTION I.
## DEFINITIONS AND RULES OF INTERPRETATION

**A.    DEFINITIONS.**

FOR PURPOSES OF THIS PLAN, EXCEPT AS EXPRESSLY PROVIDED HEREIN OR UNLESS THE CONTEXT OTHERWISE REQUIRES, ALL CAPITALIZED TERMS NOT OTHERWISE DEFINED SHALL HAVE THE MEANINGS ASCRIBED TO THEM IN SECTION 1 OF THIS PLAN OR ANY EXHIBIT HERETO. ANY TERM USED IN THIS PLAN AND NOT HEREIN DEFINED BUT DEFINED IN THE BANKRUPTCY CODE OR IN THE BANKRUPTCY RULES SHALL HAVE THE MEANING ASSIGNED TO SUCH TERM IN THE BANKRUPTCY CODE OR IN THE BANKRUPTCY RULES, AS APPLICABLE. AS USED IN THIS PLAN, THE FOLLOWING TERMS HAVE THE RESPECTIVE MEANINGS SPECIFIED BELOW:

Case 09-00634-TOM11    Doc 1352    Filed 08/07/09    Entered 08/07/09 16:05:05    Desc
Main Document      Page 57 of 105

1.      **ACE** has the meaning set forth in Section III.4 of this Plan.

2.      **ACE Policies and Agreements** has the meaning set forth in Section III.4 of this Plan.

3.      **ACE Insurance Orders** means collectively (a) the Order entered by the Bankruptcy Court on March 17, 2009, docket #431, entitled "*Order Granting Emergency Motion for an Order (i) Authorizing Debtor to Purchase High Deductible Workers' Compensation and Automobile Liability Insurance and General Liability Insurance and (ii) Approving Debtor's Payment of Premium and Cash Collateral Requirement Nunc Pro Tunc to March 11, 2009;*" and (b) the Order entered by the Bankruptcy Court on April 15, 2009, docket # 667, entitled "*Order Granting Debtor's Second Emergency Motion for an Order (i) Authorizing Debtor to Extend its High Deductible Workers' Compensation and Automobile Liability Insurance and General Liability Insurance and (ii) Approving Debtor's Payment of Premium and Cash Collateral Requirement;*" both of which relate to the post-petition ACE Policies and Agreements.

4.      **Administrative Expense Claim** means an Allowed Claim against the Debtor for costs and expenses of administration in connection with the Case under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Filing Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) all Bankruptcy Administrator fees and charges assessed against the Debtor's Estate, but excluding Claims relating to tax periods; or portions thereof, ending on or before the Filing Date; (c) Allowed Goods Claims; (d) Fee Claims; and (e) all other Claims entitled to administrative claim status pursuant to a Final Order.

5.      **Allowed** means, with reference to any Claim or Interest and with respect to the Debtor, (a) any Claim against or Interest in the Debtor that (i) has been listed by the Debtor in the Schedules, as may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest has been Filed, or (ii) has been allowed under this Plan, or (iii) has been allowed by Final Order of the Bankruptcy Court, or (iv) as to which a proof of claim has been timely Filed in a liquidated amount with the Bankruptcy Court pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or Filed late with leave of the Bankruptcy Court after notice and a hearing, and (b) in respect of which no objection to the allowance of such Claim or Interest has been interposed within any applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, a Final Order or other applicable law.

6.      **Assets** means all property of the Estate that is not Collateral and includes any future right that the Debtor may have to any property, including any deposits and the unused portion of the cash collateral provided to any insurer including ACE.

7.      **Asset Sale** means any sale of the assets of the Debtor which was approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code.

8.      **Available Funds** means the amount of Cash held by the Liquidating Trustee available to be distributed to Holders of Allowed Claims, Administrative Claims and the fees and

expenses of the Liquidating Trustee and his professionals, including, but not limited to, the proceeds of the liquidation of the Assets, which also includes the recoveries and proceeds of Causes of Action.

9.    **Avoidance Action** means any claim, action or cause of action of the Debtor or the Estate, or either of them, that is or may be the subject of an adversary proceeding or contested matter under sections 510, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, or pursuant to any similar or related state or federal statutes or common law (including fraudulent transfer laws) whether or not litigation has been commenced as of the Confirmation Date to prosecute such claim, action or cause of action.

10.    **Ballot** means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

11.    **Bankruptcy Administrator** means the Bankruptcy Administrator for the Northern District of Alabama.

12.    **Bankruptcy Case Action** has the meaning set forth in Section VI.C.4 of this Plan.

13.    **Bankruptcy Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. as applicable to this Case.

14.    **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division or, in the event that such court ceases to exercise jurisdiction over the Case, the court that exercises jurisdiction over the Case in lieu of the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

15.    **Bankruptcy Party** has the meaning set forth in Section VI.C.4 of this Plan.

16.    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, and the local rules of the Bankruptcy Court as applicable to this Case.

17.    **Bar Date** means the date(s) established by this Plan or by a Final Order of the Bankruptcy Court as the final date(s) to file proofs of claim, requests for allowance of an Administrative Expense Claim, or any other notice, objection or other document to evidence, support or seek Allowance of any Claim.

18.    **BI-LO** means BI-LO, LLC and its affiliates in their jointly administered Chapter 11 bankruptcy cases under Case No. 09-02140, pending in the U.S. Bankruptcy Court, District of South Carolina.

19.    **Business Day** means any day other than a Saturday, Sunday or Legal Holiday.

20.    **C&S** means C&S Wholesale Grocers, Inc. and its affiliates.

21.    **C&S Claim Objection Order** means the Order entered by the Bankruptcy Court on May 5, 2009, docket #823, entitled "*Agreed Order Approving Agreement Between Official*

*Committee of Unsecured Creditors, Lone Star Fund V (U.S.), LP and BI-LO, LLC Relating to Sale of Debtor's Assets.*"

22. **Case** means the above styled case of the Debtor under Chapter 11 of the Bankruptcy Code.

23. **Cash** means cash and cash equivalents in United States dollars.

24. **Causes of Action** means all Claims and causes of action held by the Estate immediately prior to the Effective Date, including, but not limited to, any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities, whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, whether arising under any contract or under the Bankruptcy Code or other federal, state or other non-bankruptcy law, including, without limitation, any causes of action set forth in this Plan or Disclosure Statement and any Exhibit thereto and Avoidance Actions, but excluding (a) Claims and causes of action and related recoveries sold to a buyer pursuant to any Asset Sale; and (b) Claims and causes of action and related recoveries expressly released, exculpated or waived pursuant to this Plan.

25. **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

26. **Class** means a category of Holders of Claims or Interests as set forth in Section II of this Plan.

27. **Collateral** means property subject to a Lien, to the extent of the interest of the holder of such Lien in the interest of the Estate in such property.

28. **Committee** means the Official Committee of Unsecured Creditors appointed by the Bankruptcy Administrator in the Case pursuant to section 1102(a) of the Bankruptcy Code.

29. **Confirmation** means entry of the Confirmation Order on the Bankruptcy Court's docket in the Case.

30. **Confirmation Date** means the date of entry of the Confirmation Order on the Bankruptcy Court's docket in the Case.

31. **Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

32. **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

33. **Creditor** means any Person who holds a Claim against the Debtor.

34. **Debtor** means BFW Liquidation, LLC, f/k/a Bruno's Supermarket, LLC.

Case 09-00634-TOM11    Doc 1352    Filed 08/07/09    Entered 08/07/09 16:05:05    Desc
Main Document    Page 60 of 105

35.    **Disclosure Statement** means the disclosure statement that relates to this Plan, approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

36.    **Disputed Claim** means a Claim against the Debtor that is not Allowed, including:

(a)    if no proof of claim has been filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Schedules as disputed, contingent or unliquidated; or (ii) a Claim that is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Debtor or Liquidating Trustee, as applicable, or any other party in interest with standing to object to Claims under this Plan or applicable law, has Filed an objection by the Claims Objection Deadline, unless such objection has been withdrawn or denied by a Final Order; or

(b)    if a proof of claim or request for payment of an Administrative Expense Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim for which a corresponding Claim is listed on the Schedules as disputed, contingent or unliquidated; or (ii) a Claim for which an objection has been Filed by the Debtor or Liquidating Trustee, as applicable, to which the claim relates, or any other party in interest with standing to object to Claims under this Plan or applicable law, by the Claims Objections Deadline, unless such objection has been withdrawn or denied by a Final Order. For purposes of this provision, an application, motion, complaint or other pleadings or papers filed with the Bankruptcy Court seeking to subordinate or dismiss a Claim or Administrative Expense Claim shall be deemed an objection thereto; or

(c)    any Claim filed after the Bar Date applicable to such Claim.

37.    **Distribution** means any distribution pursuant to this Plan to the Holders of Allowed Claims.

38.    **Distribution Date** means any date on which a Distribution is made by the Liquidating Trustee to Holders of Allowed Claims entitled to receive Distributions under this Plan and such term includes the Initial Distribution Date.

39.    **Effective Date** means the first Business Day following the date on which the Confirmation Order becomes a Final Order.

40.    **Estate** means the Estate created by the commencement of the Case pursuant to section 541 of the Bankruptcy Code, including, without limitation, any and all rights, Claims and interests of the Debtor and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, Avoidance Actions, avoidance powers or extensions of time that the Debtor or its Estate shall have had effective as of the commencement of the Case, or which such Estate acquired after the commencement of the Case, whether by virtue of sections 544, 545, 546, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or otherwise; but excluding any and all rights, claims, and interests of the Debtor and any and all interests in property, whether real, personal or mixed, which are otherwise governed by the Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181

*et. seq.* ("PASA") and/or the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. §§ 499(a) *et. seq.* ("PACA").

41.  **Exhibit** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

42.  **Exhibit Filing Date** means the date on which Exhibits to this Plan shall be filed with the Bankruptcy Court, which date shall be at least three (3) Business Days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice to any parties-in-interest.

43.  **Fee Claim** means a Claim for compensation or reimbursement of expenses under sections 327, 328, 330, 331 503(b) or 1103 of the Bankruptcy Code.

44.  **File, Filed or Filing** means file, filed or filing with the Bankruptcy Court or its designee in the Case.

45.  **Filing Date** means February 5, 2009, the date of the Filing of the Debtor's petition commencing the Case under chapter 11 of the Bankruptcy Code.

46.  **Final Distribution Date** means the date of the last Distribution under this Plan.

47.  **Final Order** means an order or judgment of a court (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) as to rehearing shall have been waived in writing in form and substance satisfactory to the Debtor and the Committee or, (c) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been denied by the highest court to which such order was appealed, no further certiorari, reargument or rehearing shall have been taken, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rules 9023 or 9024 may be filed with respect to such order shall not cause such order not to be a final order.

48.  **Goods Claim** means a Claim Allowed as an administrative expense under section 503(b)(9) of the Bankruptcy Code.

49.  **Governmental Unit** means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

50.  **Holder** means an entity holding a Claim or Interest.

51.  **Initial Distribution Date** means a Business Day, as determined by the Liquidating Trustee after the funding of this Plan, on which the initial distribution to Class 3 will be made.

52.  **Insured Parties** has the meaning set forth in Section IX.A of this Plan.

53.  **Interest** means any ownership interest in the Debtor.

54.     **Legal Holiday** has the meaning set forth in Bankruptcy Rule 9006(a)

55.     **Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code and shall include, without limitation, all liens, security interests, replacement liens, adequate protection, carve out rights and all charges and interests created or imposed on property by any order of the Bankruptcy Court.

56.     **Liquidating Trustee** means William S. Kaye, the individual selected by the Committee to serve as Liquidating Trustee, or any successor, appointed pursuant to Section VI.A.1 of this Plan.

57.     **Lone Star** means Lone Star Funds V (US), LP and its affiliates.

58.     **Member** means LSF5 Bruno's Investments, LLC, the sole member of Debtor.

59.     **Net Proceeds** means such amounts collected from the sale or liquidation of Assets after payment of all costs and expenses of such sale or liquidation, including, without limitation, attorneys' fees, and satisfaction of any Liens on or Allowed Claims for set off or recoupment against such Assets.

60.     **PACA** means the Perishable Agricultural Commodities Act of 1930, codified at 7 U.S.C. §§ 499(a) *et. seq.*

61.     **PACA Claim(s)** means Claims against Debtor asserted under, and qualified for treatment under PACA.

62.     **PACA/PASA Order** means the Final Order entered by the Bankruptcy Court dated March 26, 2009 setting forth the procedures governing the Allowance and payment of PACA Claims and PASA Claims against the Debtor, if any.

63.     **PASA** means the Packers and Stockyards Act of 1921, codified at 7 U.S.C. §§ 181 *et. seq.*

64.     **PASA Claim(s)** means Claims against Debtor asserted under, and qualified for treatment under PASA.

65.     **Pension Fund** means The United Food and Commercial Workers Union and Employers Pension Fund.

66.     ~~65.~~ **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

67.     ~~66.~~ **Personal Injury Claim(s)** means any Claim(s) against Debtor, excluding Workers Compensation Claims (but for the purposes of clarity, includes employer liability claims), whether in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty whatsoever, for, attributable to, or arising under the laws of any jurisdiction, by reason of physical, emotional or other personal injuries or other damages (including, without limitation, death) arising or allegedly arising from acts, omissions, business or operations of Debtor, including, but not limited to, all claims, debts, obligations or liabilities for compensatory damages

(such as, without limitation, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, and/or survivorship).

68. ~~67.~~ **Personal Injury Claimholder(s)** has the meaning set forth in Section III.D.1(a) of the Plan.

69. ~~68.~~ **Plan** means this chapter 11 plan of the Debtor, including, without limitation, all documents referenced herein and all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

70. ~~69.~~ **Plan Proponent** means the Debtor.

71. ~~70.~~ **Plan Supplement** means the compilation(s) of documents specified in this Plan that this Plan Proponent will File on or before the Exhibit Filing Date.

72. ~~71.~~ **Post Confirmation Committee** means the committee, comprised of three members of the Committee, including Buffalo Rock, Flowers Foods and Vertis, organized to, without limitation, consult with the Liquidating Trustee with respect to his duties in this Plan.

73. ~~72.~~ **Priority Non-Tax Claims** means, collectively, any Claim against Debtor that is entitled to priority under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims, Fee Claims, Goods Claims, or Priority Tax Claims.

74. ~~73.~~ **Priority Tax Claim** means any Claim against the Debtor of a Governmental Unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

75. ~~74.~~ **Pro Rata** means proportionally, so that with respect to an Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of the Allowed Claim is equal to the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Claims in that Class (including Disputed Claims until disallowed).

76. ~~75.~~ **Punitive Damages Claim** means any Claim for damages other than compensatory damages, including without limitation a Claim for damages under Ala. Code § 6-5-410 or Ala. Code § 6-11-20.

77. ~~76.~~ **Release Date** has the meaning set forth in Section VI.C.4 of this Plan.

78. ~~77.~~ **Released Action** has the meaning set forth in Section VI.C.4 of this Plan.

79. ~~78.~~ **Released Party** has the meaning set forth in Section VI.C.4 of this Plan.

80. ~~79.~~ **Schedules** means the schedules of assets and liabilities, the lists of Holders of Interests and the statements of financial affairs Filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

Case 09-00634-TOM11    Doc 1352    Filed 08/07/09    Entered 08/07/09 16:05:05    Desc
Main Document    Page 64 of 105

81.   ~~80.~~  **Secured Claim** means the portion of any Claim against the Debtor, (a) determined in accordance with section 506(a) of the Bankruptcy Code, as of the Confirmation Date, secured by a valid, perfected and unavoidable Lien, to the extent of the value of the Holder's interest in the Debtor's interest in the subject Collateral; or (b) subject to offset under section 553 of the Bankruptcy Code, to the extent of the amount subject to offset.

82.   ~~81.~~  **Unsecured Claim** means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a PACA Claim, a PASA Claim, or a Secured Claim.

83.   ~~82.~~  **Voting Deadline** means the date and time, as fixed by an order of the Bankruptcy Court and as set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received in order to be counted.

84.   ~~83.~~  **Workers Compensation Claim** means any Claim against the Debtor covered by Ala. Code § 25-5-1 *et seq.* or Fla. Stat. § 440.01 *et. seq.*

## B.   RULES OF INTERPRETATION.

1.   **Computation of Time.**  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.   **Rules of Construction.**  Unless otherwise provided herein, for purposes of this Plan:  (a) whenever appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified or supplemented from time to time and shall include all addenda, exhibits and schedules attached thereto or referenced therein; (d) unless otherwise specified, any reference to an entity as a Holder of a Claim or an Interest includes that entity's successors, assigns and affiliates; (e) unless otherwise specified, all references to sections and articles are references to sections of or to this Plan; (f) unless otherwise specified, all references in this Plan to exhibits are references to exhibits of or to this Plan or the Disclosure Statement; (g) the words "herein," "hereunder" or "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) "including" and "include" shall be understood to mean "including, without limitation" (and, for purposes hereof, the rule of *ejusdem generis* shall not be applicable to limit a general statement, which is followed by or reference to an enumeration of specific matters to matters similar to the matters specifically mentioned); (i) captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of this Plan; and (j) unless modified herein, the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply.

3.   **Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the

laws of the State in which the Bankruptcy Court resides, without giving effect to the principles of conflicts of laws thereof.

## SECTION II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

**A.     INTRODUCTION.**

All Claims and Interests except Administrative Expense Claims, PACA Claims, PASA Claims, and Priority Tax Claims shall be classified as set forth in this Section II of this Plan.

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled before the Effective Date.

This Plan Proponent has set forth the Classes below:

**B.     UNCLASSIFIED CLAIMS.**

1.     Administrative Expense Claims.

2.     PACA Claims.

3.     PASA Claims.

**C.     CLASSES OF CLAIMS.**

1.     **Priority Tax Claims**.  Priority Tax Claims shall collectively consist of any Claims against the Debtor of a Governmental Unit of the kind specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

2.     **Priority Non-Tax Claims**.  Priority Non-Tax Claims shall collectively consist of any Claims against the Debtor that is entitled to priority under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

3.     **Class 1 – Secured Claims**.  Class 1 shall consist of all Allowed Secured Claims. Class 1 Claims include, without limitation, Claims secured by equipment in connection with equipment financings and Claims secured by mechanic's, materialmen's and artisan's liens on miscellaneous personal and/or real property.  Each Class 1 Claim is treated for all purposes under the Bankruptcy Code and this Plan as a separate Class.

4.     **Class 2 – Convenience Class of Unsecured Claims Against Debtor**.  Class 2 shall consist of all Allowed Unsecured Claims against Debtor (other than Class 3 Claims and Class 5 Claims) that are: (i) in an amount of $500.00 or less; or (ii) that the holder has voted to accept this

Plan and elects to be treated as being in an amount of $500.00 on the Ballot submitted by such Holder with respect to this Plan.

    5.    **Class 3 – General Unsecured Claims Against Debtor**.  Class 3 shall consist of all Allowed Unsecured Claims against Debtor (other than Class 2 Claims and Class 5 Claims).

    6.    **Class 4 – Interests**.  Class 4 shall consist of all Interests in the Debtor.  (This Class is conclusively presumed to have rejected this Plan and is not entitled to vote to accept or reject this Plan.)

    7.    **Class 5 – Punitive Damages Claims**.  Class 5 shall consist of all Allowed Punitive Damages Claims against the Debtor.

### SECTION III.
### TREATMENT OF CLAIMS AND INTERESTS

    No Claim or Interest shall entitle the Holder thereof to a Distribution of Cash or to other consideration pursuant to this Plan unless, and only to the extent that, such Claim or Interest is an Allowed Claim or an Allowed Interest.  Except as otherwise provided in this Plan or an order of the Bankruptcy Court, all Distributions of Cash on account of Allowed Claims and Allowed Interests shall be made on Distribution Date.

**A.    TREATMENT OF UNCLASSIFIED CLAIMS.**

    1.    **Administrative Expense Claims.**

    (a)    **Allowance and Payment of Fee Claims**.  Except as provided by prior order of the Bankruptcy Court, professionals or other entities asserting a Fee Claim must File and serve on the Debtor, the Liquidating Trustee, the Bankruptcy Administrator, and such other entities as are designated by the Bankruptcy Rules, the Confirmation Order or other Final Order of the Bankruptcy Court, an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date.  Such application may include fees and expenses of the applicant incurred after the Confirmation Date but prior to the Effective Date. Failure to timely and properly File an application for Allowance of a Fee Claim as set forth herein shall result in such Fee Claim being forever barred and discharged.  Objections to an application for allowance of a Fee Claim must be Filed and served on the Liquidating Trustee, the Bankruptcy Administrator, and the applicant no later than twenty (20) days after the Filing of the application for allowance of such Fee Claim.  Any Allowed Fee Claim unpaid as of the Effective Date shall be paid on the Effective Date or, if later, not later than the fifteenth (15th) Business Day after such Fee Claim becomes Allowed, in Cash equal to such Allowed Fee Claim from the Available Funds.

    (b)    **General Allowance Procedures for Administrative Expense Claims Other than Fee Claims and Goods Claims**.  Pursuant to section 502 of the Bankruptcy Code, requests for payment of an Administrative Expense Claim, other than statutory fees, Fee Claims, or Goods Claims, arising before the Effective Date, must be Filed and served on the Liquidating Trustee and the Bankruptcy Administrator, pursuant to procedures set forth in the Confirmation Order, no later than thirty (30) days after the Effective Date; provided, however, all requests for payment of Goods Claims that were not filed before the June 5, 2009 Bar Date established by the Bankruptcy Court's

Order of May 8, 2009, shall be denied, barred and discharged as untimely. Each such request for payment of an Administrative Expense Claim must include, at a minimum, (i) the name of the Holder of the Claim, (ii) the amount of the Claim, (iii) the basis for the Claim, and (iv) documents evidencing or supporting the Claim. Failure to timely and properly file a request for payment of an Administrative Expense Claim as set forth herein shall result in the Administrative Expense Claim being forever barred and discharged. Objections to any such request may be made by the Debtor or any party in interest and such objections, if any, must be filed and served on the Debtor, the Bankruptcy Administrator, the Liquidating Trustee and the requesting party by the later of twenty (20) days after the Effective Date or twenty (20) days after the filing of the applicable request for payment. To the extent not paid prior to the Effective Date, these claims shall be paid on the Effective Date or, if later, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed, in Cash equal to such Allowed Claim from the Available Funds.

(c)     **Payment of Goods Claims and Administrative Expense Claims Allowed Under Section III.A.1(b) of this Plan**. Subject to the allowance procedures set forth herein, unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of a Goods Claim or an Allowed Administrative Expense Claim Allowed pursuant to Section III.A.1(b) of this Plan, shall, to the extent not already paid, be paid on the Effective Date or, if later, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed, Cash equal to such Allowed Claim from the Available Funds.

(d)     **Allowance and Payment of PACA Claims/PASA Claims.** All requests for payment of PACA Claims and/or PASA Claims that were not filed before the respective statutory deadline provided in either PACA or PASA, shall be denied, barred and discharged as untimely, as established by the PACA/PASA Order. Subject to the allowance procedures set forth in the PACA/PASA Order, unless the Holder of an Allowed PACA Claim or an Allowed PASA Claim agrees to other treatment (in which event, such other agreement shall govern), each such Holder of an Allowed PACA Claim or an Allowed PASA Claim Allowed pursuant to the terms of the PACA/PASA Order, shall, to the extent not already paid, be paid on the Effective Date Cash equal to such Allowed PACA Claim and/or Allowed PASA Claim from the Available Funds.

**B.     TREATMENT OF UNIMPAIRED CLASSES.**

1.     **Priority Non-Tax Claims**. Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Priority Non-Tax Claim shall, to the extent not already paid, be paid in full in Cash from the Available Funds, to the extent funds are available, within the later of (a) thirty (30) days after all Allowed Administrative Expense Claims, Allowed PACA Claims, and Allowed PASA Claims that exist against the Debtor have been paid in full; or (b) if an objection is pending at such time, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed, in Cash from the Available Funds.

**2.     Priority Tax Claims**. Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Priority Tax Claim shall be paid in full in Cash from the Available Funds, to the extent funds are available, within the later of (a) thirty (30) days after all Allowed Administrative Expense Claims, Allowed PACA Claims, Allowed PASA Claims and Allowed Priority Non-Tax Claims that exist against the Debtor have

Case 09-00634-TOM11     Doc 1352     Filed 08/07/09     Entered 08/07/09 16:05:05     Desc
Main Document     Page 68 of 105

been paid in full; or (b) if an objection is pending at such time, no later than the fifteenth (15th) Business Day after such Claim becomes Allowed, in Cash from the Available Funds.

**3.  Class 1 — Allowed Secured Claims.**  Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 1 Claim shall receive the Collateral securing their Liens on, or as soon as reasonably practicable after, the Effective Date.

## C.  TREATMENT OF IMPAIRED CLASSES.

**1.  Class 2 —Convenience Class of Unsecured Claims Against Debtor**.

(a)  Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of a Class 2 Claim shall receive twenty-five percent (25%) of its Allowed Claim amount from the Available Funds, to the extent funds are available, within thirty (30) days after all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed PACA Claims, Allowed PASA Claims, Allowed Priority Non-Tax Claims and Allowed Class 1 Claims that exist against the Debtor have been paid in full.

(b)  Claims in Class 2 are impaired under this Plan.  Therefore, pursuant to section 1126(a) of the Bankruptcy Code, the Holders of the Class 2 Claims are entitled to vote to accept or reject this Plan.

**2.  Class 3 – Allowed General Unsecured Claims.**

(a)  Unless such Holder agrees to other treatment (in which event, such other agreement shall govern), each Holder of an Allowed Class 3 Claim shall be paid pro rata from the Available Funds, to the extent funds are available and until such Claims are paid in full, after the later of (a) thirty (30) days after the payment of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed PACA Claims, Allowed PASA Claims, Allowed Priority Non-Tax Claims, Allowed Class 1 Claims, and Allowed Class 2 Claims that exist against the Debtor have been paid in full; or (b) if an objection is pending at such time, no later than the fifteenth (15) Business Day after such Claim becomes Allowed.  The Initial Distribution Date shall be in the discretion of the Liquidating Trustee, who shall make it as soon as reasonably practical after taking into the account the status of objections to claims and amount of Disputed Claims, the amount of Available Funds, and the cost of making the Distribution.

(b)  Claims in Class 3 are impaired under this Plan.  Therefore, pursuant to section 1126(a) of the Bankruptcy Code, the Holders of the Class 3 Claims are entitled to vote to accept or reject this Plan.

**3.  Class 4 – Interest in Debtor.**

(a)  The Interest of the sole Member of Debtor, and any instruments and other documents evidencing such Interest, shall be cancelled as of the Effective Date.  The Holder of Interest in Class 4 shall not receive or retain any Distribution or other property on account of such Interest.

(b)     Pursuant to section 1126(g) of the Bankruptcy Code, the Holder of Interest in Class 4 is deemed to have rejected this Plan and is not entitled to vote to accept or reject this Plan.

**4.     Class 5 – Allowed Punitive Damages Claims.**

(a)     All Allowed Punitive Damages Claims shall be subordinated to the payment, in full, of all other Allowed Claims under the Plan.

(b)     Claims in Class 5 are impaired under this Plan.  Therefore, pursuant to section 1126(a) of the Bankruptcy Code, the Holders of the Class 5 Claims are entitled to vote to accept or reject this Plan.

**D.     SPECIAL PROVISIONS REGARDING ALLOWANCE AND TREATMENT OF PERSONAL INJURY CLAIMS.**

**1.     Treatment and Allowance of Workers Compensation Claims**

Subject to applicable Bar Dates to file claims established in the Case, Workers' Compensation Claims will continue to be determined by the administrative procedures established in each state.  A final, non-appealable administrative determination will result in an Allowed Workers Compensation Claim.  Subject to the Reservation of Rights provision below, Holders of Allowed Workers Compensation Claims will be paid by the applicable Insurer or state entity outside of the Plan in accordance with the applicable insurance contracts and/or applicable non-bankruptcy law.

**2.     Treatment and Allowance of Personal Injury Claims**

Notwithstanding any other term or provision of the Plan, and subject to the Reservation of Rights provision below, each Personal Injury Claim shall be liquidated and Allowed against the Estate according to the following terms and conditions:

(a)     **Automatic Stay Lifted to Allow Liquidation of Claims Against Debtor in Order to Recover Available Insurance Proceeds or Other Source of Possible Payment.**  The automatic stay shall be terminated as of the Effective Date to allow any holder of a Personal Injury Claim (a "Personal Injury Claimholder" or "Personal Injury Claimholders" in the plural) to liquidate such Personal Injury Claim against the Debtor as a nominal defendant in order to collect any judgment obtained from any insurance proceeds available to the Debtor or other non-debtor source of payment ; (ii) the liquidation of any Personal Injury Claim and/or collection of any judgment by a Personal Injury Claimholder from insurance proceeds available to the Debtor or other third party source of recovery is subject to the Reservation of Rights set forth below, and shall be without prejudice to the rights, claims or defenses of the Debtor or the Estate; and (iii) any such recovery by any Personal Injury Claimholder shall constitute a credit with respect to any Allowed Personal Injury Claim against the Debtor or the Estate.

(b)     **Automatic Stay Remains in Place for Allowance of Claims Against Estate**.  Notwithstanding the occurrence of the Effective Date, and except as set forth above with respect to insurance proceeds available to the Debtor or other third party sources of recovery, the automatic stay shall remain in effect with respect to all Personal Injury Claims against the Debtor

and the Estate and all litigation arising out of or related to such Personal Injury Claims, pending the completion of the resolution procedures set forth in this section of the Plan; provided, however, that any limitations or repose period applicable to any such Personal Injury Claim shall be tolled as to the Debtor and the Estate until the first Business Day that is thirty (30) days after such termination of the stay. The Debtor's insurers may participate in the resolution procedures set forth in this section, but are not obligated to do so.

(c)     **Settlement**.  Subject to the Reservation of Rights provision set forth below, the Liquidating Trustee may at any time settle and pay Allowed Personal Injury Claims in accordance with the Plan.

(d)     **Mandatory Pre-Mediation Resolution Procedures**. Within thirty (30) days after January 1, 2010, each Personal Injury Claimholder shall serve on the Liquidating Trustee a written settlement offer containing such holder's good faith demand; provided, however, such settlement offer may not exceed the amount of the Personal Injury Claim indicated in any proof of claim filed by the Personal Injury Claimholder with respect to the Personal Injury Claim or, if the Personal Injury Claimholder has not filed a proof of claim, the amount of such Personal Injury Claim indicated in the Schedules.  Not later than fifteen (15) days after receipt of such written settlement offer, the Liquidating Trustee shall respond to such written settlement offer with a written counter-offer.  Thereafter, each party shall respond in writing to subsequent written counter-offers within ten (10) days of receipt. If a Personal Injury Claimholder fails to respond to a counter-offer from the Liquidating Trustee in a timely fashion, the Personal Injury Claimholder shall be deemed to have stipulated to Allowance of such Personal Injury Claim in the amount of the Liquidating Trustee's last counter-offer and such Personal Injury Claim shall be Allowed in such amount.  If the Liquidating Trustee fails to respond to an offer or counter-offer from a Personal Injury Claimholder in a timely fashion, the Personal Injury Claimholder may terminate negotiations, shall be under no obligation to mediate and may request the Bankruptcy Court to terminate the stay to litigate the Personal Injury Claim pursuant to this section.

(e)     **Mandatory Mediation**.  At any time by mutual consent, and upon the request of either party on or after April 1, 2010, the parties may mediate a Personal Injury Claim. If the parties cannot agree on a mediator, either may petition the Bankruptcy Court, which shall appoint a mediator.  The parties shall share the costs of such mediation equally.  The Liquidating Trustee shall schedule mediations as promptly as reasonably possible taking into account the schedules of the parties, their counsel and the mediator.  The mediator shall establish procedures for the mediation.  The mediation shall occur in Birmingham, Alabama or such other location mutually agreeable to the parties.  Either party may notify and invite to the mediation any co-defendant or other party to a Personal Injury Claim.  If mediation does not result in settlement on or before July 31, 2010, either party may request the Bankruptcy Court to terminate the stay to proceed with litigation; provided, however, no party shall be entitled to stay relief hereunder unless the Bankruptcy Court finds such party has participated in the mandatory pre-mediation resolution procedures and any mandatory mediation in good faith.

(f)     **Exchange of Information**.  At any time prior to mediation (i) a Personal Injury Claimholder shall provide to the Liquidating Trustee, within thirty (30) days of receipt of a written request for production, documents and other information supporting the Personal Injury Claim, including liability and damages; (ii) the Liquidating Trustee shall provide to a Personal

Injury Claimholder, within thirty (30) days of receipt of a written request for production, to the extent available to the Liquidating Trustee, information regarding the Personal Injury Claim in the Liquidating Trustee's possession and control; and (iii) a Personal Injury Claimholder may subpoena from any third party pursuant to Bankruptcy Rule 9016 any records regarding the Personal Injury Claim. The Bankruptcy Court shall retain exclusive jurisdiction pursuant to the Bankruptcy Rules over any objection, motion to compel or motion to quash with respect to any request for production or information or subpoena under this section of the Plan.

(g)     **Confidentiality.**   All information, communications, offers, counter-offers, records and documents exchanged by the parties hereunder, all settlement discussions and negotiations and mediations shall remain confidential and shall not be admissible in any subsequent proceedings pursuant to Rule 408 of the Federal Rules of Evidence.

(h)     **Litigation.**   The Bankruptcy Court shall hear any request for stay relief under this section of the Plan after notice and a hearing. Upon termination of the stay hereunder, the parties may proceed to liquidate and reduce the Personal Injury Claim to judgment before any court of competent jurisdiction, subject to all applicable rights regarding venue, forum selection, choice of law, removal, remand, abstention and all similar or related rights. All parties reserve all substantive and procedural rights, claims and defenses, including, without limitation, with respect to any claim for punitive damages; provided, however, the payment of any punitive damages shall be subordinated to payment of all other Allowed Claims pursuant to the Plan.

### 3.     Treatment of Personal Injury Claims.

Any Personal Injury Claim Allowed under this Section of the Plan shall be paid on the next Distribution Date after the order or judgment Allowing such Personal Injury Claim becomes a Final Order, on the terms and conditions set forth in the Plan. Except to the extent a Final Order Allows a Personal Injury Claim as an Administrative Expense Claim, all Allowed Personal Injury Claims shall be treated as Allowed Class 3 Claims, subject to the provisions of Section III.C of the Plan, to the extent such Personal Injury Claim is not a Punitive Damages Claim, but shall be treated as a Class 5 Claim to the extent such Personal Injury Claim is a Punitive Damages Claim.

### 4.     Reservation of Rights.

Nothing contained in this Plan, the Disclosure Statement, the Confirmation Order, any exhibit to the Plan, the Plan Supplement, or any other Plan document (including any provision that purports to be peremptory or supervening), shall in any way operate to, or have the effect of, waiving or impairing or expanding in any respect the legal, equitable or contractual rights and defenses of the insureds and insurers under the insurance policies issued by members of the ACE group of companies ("ACE") and any related agreements ("ACE Policies and Agreements") and applicable non-bankruptcy law. In addition, the ACE Insurance Orders related to the post-petition ACE Policies and Agreements remain in full force and effect. The rights and obligations of the parties to the ACE Policies and Agreements shall be determined by the terms of such policies and agreements, including the terms, conditions, limitations, exclusions and endorsements thereof, which shall remain in full force and effect, and by any applicable non-bankruptcy law. Any discharge or injunction or claims resolution provisions in the Plan shall not prejudice, waive or modify ACE's rights, and where applicable, its obligations, to investigate, defend, settle and/or

Case 09-00634-TOM11    Doc 1352    Filed 08/07/09    Entered 08/07/09 16:05:05    Desc
Main Document    Page 72 of 105

litigate any claim against the Debtor which may be covered under any of the ACE Policies and Agreements.  To the extent the Debtor or any of the non-debtor insureds under the ACE Policies have a duty to administer and defend claims, that duty will be performed by the Liquidation Trustee or the applicable non-debtor insured, subject to ACE's right, if any, to associate in and/or assume the defense.  ACE reserves all of its rights and defenses under the ACE Policies and Agreements and applicable non-bankruptcy law, including any and all defenses to coverage.

## SECTION IV.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Pursuant to section 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases to which the Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the Bankruptcy Court, are deemed rejected pursuant to section 365(a) of the Bankruptcy Code as of the Confirmation Date.

Each party to an executory contract or unexpired lease rejected pursuant to this Plan (and only such entities) asserting a Claim for damages arising from such rejection shall File, not later than thirty (30) days following the Confirmation Date, a proof of such Claim; *provided, however,* that (1) the Bar Date established for rejection damages claims in this Section IV of this Plan shall not apply to Persons that may assert a Claim on account of an executory contract or unexpired lease that was rejected by the Debtor before the Confirmation Date for which a prior Bar Date was established; and (2) any Person asserting a claim for rejection damages that does not timely File a proof of claim in accordance with this Plan shall be forever enjoined and barred from asserting such Claim against the Debtor, the Estate or any property of the Estate.

## SECTION V.
## CONFIRMATION AND CONSUMMATION OF THIS PLAN

**A.      CONDITIONS PRECEDENT – Confirmation Date.**

The following are conditions precedent to the occurrence of the Confirmation Date:

1.      The entry of a Final Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code which order shall be in form and substance reasonably satisfactory to the Debtor and the Committee;

2.      The proposed Confirmation Order shall be, in form and substance, reasonably acceptable to the Debtor and the Committee; and

3.      All provisions, terms and conditions of this Plan are approved in the Confirmation Order.

**B.      CONDITIONS PRECEDENT – Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

Case 09-00634-TOM11    Doc 1352    Filed 08/07/09    Entered 08/07/09 16:05:05    Desc
Main Document    Page 73 of 105

1.      The Confirmation Order shall have been entered and become a Final Order and shall provide that the Liquidating Trustee is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate this Plan or effectuate, advance or further the purposes thereof;

2.      All Plan Exhibits shall be, in form and substance, reasonably acceptable to the Debtor and the Committee, and if applicable, shall have been executed and delivered by all parties' signatory thereto;

3.      All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed; and

4.      Available Funds shall be sufficient to make all required payments on the Effective Date and fund a reserve for such payments if not Allowed as of the Effective Date.

## C.      WAIVER OF CONDITIONS.

Each of the conditions set forth in Section V of this Plan may be waived in whole or in part by the Debtor and the Committee.  The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## D.      CONSEQUENCES OF NON-OCCURRENCE OF EFFECTIVE DATE.

In the event that the Effective Date does not timely occur, the Debtor and the Committee reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement of Claims provided for in this Plan be null and void.  In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## SECTION VI.
## IMPLEMENTATION OF PLAN

## A.      LIQUIDATING TRUSTEE.

1.      **Appointment.**  The Liquidating Trustee shall be appointed as of the Effective Date and shall serve without a bond.  In the event of the death, resignation, incapacity, disqualification, or misconduct of the Liquidating Trustee, the Post Confirmation Committee shall appoint a successor.  The Liquidating Trustee shall retain and have all of the rights, powers and duties necessary to carry out its responsibilities under this Plan and those rights, powers and duties shall be exercisable solely by the Liquidating Trustee. Commencing on the Confirmation Date, the Debtor shall work with the Committee and the Liquidating Trustee to facilitate a smooth transition of the responsibility of the wind down of the Estate to the Liquidating Trustee, including being able to make the payments on the Effective Date that are required by the Plan.

2.    **Duration.**   The Liquidating Trustee shall continue to exist until entry of a Final Order by the Bankruptcy Court closing the Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code.

3.    **Exclusive Powers and Duties.**   The Liquidating Trustee shall serve under this Plan and shall discharge all of the rights, powers and duties set forth in this Plan.  Without limiting the generality of the foregoing, the Liquidating Trustee, his successors and assigns, shall have the following exclusive rights, powers and duties:

(a)      All of the rights, powers, and duties of a trustee in bankruptcy, including but not limited to, those under sections 704(a)(1), (2), (4), (5) and (7) and 1106(a)(6) and (7) of the Bankruptcy Code;

(b)      to administer the Available Funds, pursuant to the terms of this Plan;

(c)      to use, acquire and dispose of property free of any restrictions imposed under the Bankruptcy Code;

(d)      to sell, devise or otherwise dispose of any Assets without further notice or order of the Court, except as otherwise provided in the Plan;

(e)      to employ, retain, and replace such persons, including actuaries, attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants and advisors as necessary to discharge the duties of the Liquidating Trustee under this Plan and to pay the reasonable fees and costs of such employment without the need to seek approval from the Bankruptcy Court or review by any other party in interest.

(f)      Except as provided for in the C&S Claim Objection Order with respect to the C&S Claim, to object to the Allowance of Claims or seek equitable subordination of Claims, pursuant to the terms of this Plan, and to settle any such objection to Claims without further Order of the Court or notice to creditors or the Post Confirmation Committee, other than any settlement of any claim filed by BI-LO or C&S (if the latter is prosecuted by the Liquidating Trustee instead of Lone Star), which shall be subject to the approval of the Post Confirmation Committee;

(g)      to establish reserves and open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee under this Plan;

(h)      to investigate, analyze, commence, prosecute, litigate, collect and otherwise administer the Causes of Action in the Bankruptcy Court or other court of competent jurisdiction and settle same without further order of the Court or notice to creditors or the Post Confirmation Committee, other than any settlement of any Cause of Action in excess of $1,000,000 shall be subject to the approval of the Post Confirmation Committee;

(i)      to voluntarily engage in arbitration or mediation with respect to any Causes of Action;

(j)      to represent the Estate before the Bankruptcy Court and other courts of competent jurisdiction with respect to all matters;

Case 09-00634-TOM11    Doc 1352    Filed 08/07/09    Entered 08/07/09 16:05:05    Desc
Main Document      Page 75 of 105

(k)     to seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

(l)     to pay any fees due and owing under 28 U.S.C. § 1930;

(m)     to comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

(n)     to comply with all applicable laws and regulations concerning the matters set forth herein;

(o)     to invest the Available Funds in (a) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, (b) in money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof, or (c) any other investments that may be permissible under section 345 of the Bankruptcy Code or order of the Bankruptcy Court;

(p)     to exercise such other powers as may be vested in the Liquidating Trustee pursuant to this Plan, the Confirmation Order or other Final Orders of the Bankruptcy Court; and

(q)     to execute any documents, instruments, contracts and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trustee.

(r)     to provide periodic reports to the Post Confirmation Committee at a frequency to be agreed upon by the Liquidating Trustee and the Post Confirmation Committee.

4.     **Fees and Expenses.**  The Liquidating Trustee shall be reimbursed for all out of pocket fees, costs, and expenses in acting under this Plan.  The compensation of the Liquidating Trustee shall be a fixed monthly fee to be agreed upon by the Committee and the Liquidating Trustee on or before ten (10) days prior to the Confirmation Hearing and disclosed to the Bankruptcy Court on or before the Confirmation Hearing.  Compensation of the Liquidating Trustee and the costs and expenses of the Liquidating Trustee (including, without limitation, professional fees and expenses) shall be paid from the Available Funds.  Without limitation of the foregoing, the Liquidating Trustee shall pay, without further order, notice or application to the Bankruptcy Court, the reasonable fees and expenses of the Liquidating Trustee and the Liquidating Trustee's professionals, as necessary to discharge the Liquidating Trustee's duties under this Plan. The payment of fees and expenses of the Liquidating Trustee shall be from Available Funds and be made in the ordinary course of business and shall not be subject to the prior approval of the Bankruptcy Court.

5.     **Compromising Disputed Claims, Liens, and Causes of Action.**  The Liquidating Trustee is authorized to:  (i) compromise and settle any Causes of Action, Liens, and Disputed Claims (including Personal Injury Claims and Punitive Damage Claims); and (ii) execute necessary documents, including a stipulations of settlement or release, without notice or further order of the Bankruptcy Court or notice to any party in interest, except that the consent of the Post Confirmation Committee shall be required for any settlement of the Claims of Bi-Lo or C&S (if

such Claim being objected to is prosecuted by the Liquidating Trustee) or any Cause of Action in excess of $1,000,000 or against Bi-Lo.

     **6.**     **Post Confirmation Committee.**  The Post Confirmation Committee will become effective on the Effective Date.  It will establish bylaws for its operation and meet at such times as it deems necessary.  It will consult with the Liquidating Trustee and its approval will be necessary as provided for in the Plan.  If it deems it necessary to retain professionals, including counsel, the bills for those professionals will be submitted to the Liquidating Trustee will pay the reasonable and necessary fees and expenses of those professionals from the Available Funds.  If there is a dispute with respect to payment of those fees and expenses, the Post Confirmation Committee can file an application with the Bankruptcy Court to determine the matter.

## B.     DISPOSITION OF PROPERTY BY THE LIQUIDATING TRUSTEE.

     1.     **Vesting of Assets.**  Unless otherwise dealt with under this Plan or by a prior Final Order, on the Effective Date all property of the Estate (including all Causes of Action) will remain vested in the Estate and shall continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of this Plan until distributed to Holders of Allowed Claims in accordance with the provisions of this Plan and the Confirmation Order.  From and after the Effective Date, all property of the Estate shall be free and clear of all liens, claims and interest of Holders of Claims and Interests, except as otherwise provided in this Plan.  All such property of the Estate shall be distributed in accordance with the provisions of this Plan and the Confirmation Order.

     2.     **Liquidation of Assets**.  Notwithstanding any other provision of this Plan, on the Effective Date or as soon as practicable thereafter, the Liquidating Trustee (without further motion, notice or order of the Bankruptcy Court, subject to the terms of this Plan), shall liquidate the Assets on the terms and conditions set forth in this Plan and distribute the Net Proceeds thereof in accordance with this Plan.

     3.     **Distributions**.  The Liquidating Trustee shall liquidate the Assets of the Debtor in accordance with this Plan and shall distribute the Net Proceeds thereof as follows:  (a) <u>first</u> to pay the reasonable costs and expenses of the Liquidating Trustee and his professionals (including professional fees) incurred in administering, maintaining, and preserving the Available Funds and the liquidation of the Assets of the Debtor (to the extent not otherwise paid pursuant to this Plan); and (b) <u>second</u> Pro Rata to the Holders of Allowed Claims on the terms and conditions, and in the priority, set forth in this Plan.

## C.     SETTLEMENT, RELEASE, SATISFACTION AND INJUNCTION.

     1.     **Full and Final Satisfaction.**  The treatment of Claims and Interests provided in this Plan shall be in full and final satisfaction and settlement of all liabilities of Claims against the Estate, or Interests in the Debtor.  Except as provided in this Plan or the Confirmation Order, the rights afforded under this Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims and liabilities against the Estate and termination of all Interests arising on or before the Effective Date, including any interest accrued after the Filing Date.

     2.     **INJUNCTION**.  EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, THE CONFIRMATION ORDER SHALL PROVIDE, AMONG OTHER THINGS, THAT FROM AND

AFTER THE EFFECTIVE DATE ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTOR ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTOR OR ITS ESTATE, OR ANY OF ITS PROPERTY ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS:  (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTOR; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN, PROVIDED HOWEVER, THAT NOTHING CONTAINED IN THIS PLAN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN OR THE CONFIRMATION ORDER.

THE CONFIRMATION ORDER SHALL FURTHER PROVIDE THAT UPON THE EFFECTIVE DATE, WITH THE EXCEPTION OF THE LIQUIDATING TRUSTEE AND HIS PROFESSIONALS, ALL PERSONS ARE PERMANENTLY ENJOINED FROM OBTAINING ANY DOCUMENTS OR OTHER MATERIALS FROM BURR & FORMAN, LLP AND NAJJAR DENABURG, P.C., CURRENT COUNSEL FOR THE DEBTOR THAT IS IN THE POSSESSION OF SUCH COUNSEL AS A RESULT OF OR ARISING IN ANY WAY OUT OF THEIR REPRESENTATION OF THE DEBTOR. , PROVIDED, HOWEVER, THAT NOTHING IN THIS PLAN SHALL STAY, ENJOIN OR IMPAIR THE PENSION FUND'S RIGHT TO OBTAIN DOCUMENTS AND OTHER MATERIAL FROM EITHER BURR & FORMAN LLP OR NAJJAR DENABURG, P.C. TO THE EXTENT THAT  SUCH DOCUMENTS OR OTHER MATERIAL REMAIN IN EITHER OF THEIR POSSESSIONS AFTER THE EFFECTIVE DATE.

HOWEVER, NOTHING IN THIS PLAN SHALL STAY, ENJOIN, OR IMPAIR THE PENSION FUND'S RIGHTS TO PURSUE LONE STAR FUND V (U.S.) L.P.; ARP CHICKAMAUGA, LLC; ARP MOONVILLE, LLC; LSF5 BI-LO INVESTMENTS, LLC; BI-LO HOLDING, LLC; BI-LO, LLC; BG CARDS, LLC; ARP BALLENTINE, LLC; ARP ISLAND, LLC; ARP MORGANTON, LLC; ARP HARTSVILLE, LLC; AND ARP WINSTON SALEM, LLC.

3.      **Term of Bankruptcy Injunction or Stays**.  All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in this section shall apply.

4.      **Released Claims; Mutual Releases.**  The Any Person or entity, including the Liquidating Trustee and the Pension Fund, retains the right to pursue any and all Causes of Action against any Persons who served as directors, officers or management employees of the Debtor on or after the Petition Date and each of their respective agents, employees, representatives, and professionals, including Alvarez & Marsal, James Grady, SSG Capital Advisors, LLC, and their employees, and the Committee and its members and professionals (collectively, with each of their

predecessors and successors in interest and their respective general and limited partners, officers, directors, employees, agents, professionals and other representatives, the "Bankruptcy Parties" or singularly, a "Bankruptcy Party") based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, relating in any way to the Debtor, the Case, this Plan, the Disclosure Statement (the foregoing referred to as the "Bankruptcy Case Actions" or singularly, a "Bankruptcy Case Action"); provided however, if ~~the Committee or the Liquidating Trustee~~any Person or entity fails to commence a Bankruptcy Case Action against a Bankruptcy Party in a court of competent jurisdiction on or before November 30, 2009 (the "Initial Release Date"), the Bankruptcy Parties (collectively, with each of their predecessors and successors in interest and their respective general and limited partners, officers, directors, employees, agents, professionals and other representatives, the "Released Parties"), for good and valuable consideration, including, but not limited to, the commitment, obligation and service of each of the aforementioned to facilitate the expeditious implementation of the liquidation contemplated by this Plan, shall automatically be deemed to be released unconditionally and forever from any and all ~~Causes~~Claims or causes of ~~Action~~action that any Person or entity would have been legally entitled to assert (in their own right, whether individually or collectively, or on behalf of the Holder of any Claim or Interest or other Person or entity), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the earlier of the Effective Date or October 15, 2009, relating in any way to the Debtor, the Case, this Plan, the Disclosure Statement (the foregoing referred to as the "Released Actions").  In the interest of clarity, the following entities are not included among the Released Parties:  Lone Star Fund V (U.S.) L.P.; ARP Chickamauga, LLC; ARP Moonville, LLC; LSF5 BI-LO Investments, LLC; BI-LO Holding, LLC; BI-LO, LLC; BG Cards, LLC; ARP Ballentine, LLC; ARP Island, LLC; ARP Morganton, LLC; ARP Hartsville, LLC; and ARP Winston Salem, LLC.

In the event that the Effective Date has not occurred by October 15, 2009, if the Committee or the Liquidating Trustee fails to commence a Bankruptcy Case Action against a Bankruptcy Party in a court of competent jurisdiction on or before 45 days after the Effective Date (the "Secondary Release Date"), the Released Parties shall be released unconditionally and forever from any and all ~~Causes~~Claims or causes of ~~Action~~action that any Person or entity would have been legally entitled to assert in their own right, whether individually or collectively, or on behalf of the Holder of any Claim or Interest or other Person or entity), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place between October 15, 2009 and the Effective Date, relating in any way to the Debtor, the Case, this Plan, the Disclosure Statement.

If the Committee or the Liquidating Trustee commences a Bankruptcy Case Action against a Bankruptcy Party in a court of competent jurisdiction on or before the Initial Release Date or Secondary Release Date as applicable, while that particular Bankruptcy Party shall not be deemed to be released, the foregoing release shall still be deemed applicable to the other Bankruptcy Parties for all other claims and causes of actions contemplated by this Section VI.C.4, and not otherwise timely prosecuted by the Committee or the Liquidating Trustee.  With respect to the Liquidating Trustee and the professionals he retains, they shall not have any liability to any Person, including but not limited to Holders of Claims, except for gross negligence or intentional misconduct arising out of the discharge of their duties under the Plan.

**5.** **Releases by Holders of Claims and Equity Interests.**  As of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the

Holders of Claims or Interests, and each of their respective agents, employees, professionals, and representatives, will be deemed to completely and forever release, waive, void, extinguish, and discharge the Released Parties from all Released Actions (other than the rights to enforce obligations created under this Plan, and any right or obligation of such holder under this Plan, and the securities, contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder or contemplated thereby, including, without limitation, this Plan and the Disclosure Statement).

**6.** **Injunction Related to Releases.** Except to the limited extent set forth in Section VI.C.4 of this Plan, all claimants and parties in interest, including the Committee, the Holders of any Claim or Interest, and each of their respective agents, employees, professionals, and representatives, are permanently, forever, and completely stayed, restrained, prohibited, and enjoined from directly or indirectly, derivatively or otherwise, commencing or continuing any Released Action against any Released Party, including as a defense or counterclaim; *provided, however*, that any party in interest may enforce the terms of this Plan. Nothing in this Plan shall prejudice any right, remedy, defense, claim, cross-claim, counterclaim, or third-party claim that any Person may have against any Person other than with respect to the Released Actions against the Released Parties.

7.      **Waiver.** The release set forth in this Plan does not limit, abridge, or otherwise affect the rights of the Liquidating Trustee to enforce, sue on, settle, or compromise the rights, claims and other matters retained by the Liquidating Trustee on behalf of the Estate pursuant to this Plan.

8.      **Reservation of Police and Regulatory Powers of Governmental Units.** Notwithstanding any other provision in this Plan, any discharge, release, exculpation or injunction provided in this Plan shall not preclude any action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

9.      **Insurance Claims for Personal Injury Claims.** Notwithstanding any other provision of this Plan, any discharge or injunction contained in this Plan shall not prejudice, impair or increase any right of the Personal Injury Claimholder to collect from any insurer of the Debtor or the insurer of any agent of the Debtor under any applicable property, liability or casualty insurance policy. On the Effective Date the stay shall be modified pursuant to section 362(d) of the Bankruptcy Code to the extent necessary to allow any such Holder of a personal injury or wrongful death claim to collect from any insurer of the Debtor or the insurer of any agent of the Debtor under any applicable property, liability or casualty insurance policy; provided, however, that any such claim may be liquidated and enforced only in accordance with Section III.D of this Plan. In such instance, the Personal Injury Claimholder may proceed against the Debtor in name only and is entitled to no recovery from the Debtor or its Estate.

## D.      PLAN ADMINISTRATION.

1.      **General**. From and after the Effective Date, the Liquidating Trustee shall fulfill the specific duties assigned in accordance with this Plan. The Liquidating Trustee shall execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of this Plan.

2.     **Cancellation of Equity Interests.**     On the Effective Date, all outstanding membership interests in Debtor shall be cancelled and extinguished and all certificates representing an Interest in Debtor shall become void without the need for further action.  The Holder of the Interest in Debtor shall have no rights arising from or relating to such agreements and instruments against the Debtor or its Estate except the rights provided pursuant to this Plan.

3.     **Debtor's Directors, Officers, Members and Managers.**  On the Effective Date, all officers, directors, members and managers of the Debtor shall be deemed to have resigned and shall be discharged from any further duties and responsibilities in such capacity.  From and after the Effective Date, the Liquidating Trustee shall serve as the sole officer, sole director, sole member or sole manager of the Debtor, but he shall retain and enforce Causes of Action as the representative of the Estate in his capacity as the Liquidating Trustee under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not as an officer, director, member or manager of the Debtor.  Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by this Plan to permit and authorize such sole appointment.

4.     **Debtor's Existence.**  From and after the Effective Date, the Debtor shall continue in existence for the purpose of winding up its affairs as expeditiously as possible.  Upon the Effective Date, all transactions and applicable matters provided for under this Plan shall be deemed to be authorized and approved by the Debtor without any requirement of further action by the Debtor.  On and after the Effective Date, the Debtor's remaining assets and affairs shall be administered and managed by the Liquidating Trustee in accordance with this Plan.

Upon a certification to be filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Case, the Debtor shall be deemed to be dissolved without any further action by the Debtor or the Liquidating Trustee, including the filing of any documents in any filing office in any jurisdiction where the Debtor is organized.  However, the Liquidating Trustee shall have the authority to take all necessary actions to dissolve the Debtor.  Further, upon the aforementioned certification and entry of Final Decree, the Liquidating Trustee shall be authorized, in his sole discretion, to discard or destroy any and all of the Debtor's pre-petition books and records.  Upon the Effective Date, the Debtor shall turn over its post-petition books and records to the Liquidating Trustee.

5.     **Dissolution of Committee.**  On the Effective Date, (a) the Committee shall dissolve and its members shall be released of their respective duties, responsibilities and obligations in connection with the Case or this Plan; and (b) the retention or employment of the Committee's respective professionals and agents shall be terminated, other than with respect to Filing and objecting to fee applications.

6.     **Corporate Authority.**  The Confirmation Order shall constitute full and complete corporate authority for the Debtor and the Liquidating Trustee to take all other actions that may be necessary, useful or appropriate to consummate this Plan without any further corporate or judicial authority.

## SECTION VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    PROCEDURE FOR DETERMINATION OF CLAIMS.

1.    **Objections to Claims.**   Subject to the C&S Claim Objection Order, after the Effective Date, the Liquidating Trustee shall have exclusive authority and responsibility to prosecute objections to all Claims.

2.    **Disputed Claims.**   Payments or Distributions under this Plan on Account of Disputed Claims shall be held in reserve pending the Allowance or disallowance of the Claim.   To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall promptly be returned to the Liquidating Trustee.   To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions on account of such Allowed Claim shall be made in accordance with the provisions of this Plan.   On the Distribution Date next following the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any Cash held in reserve pursuant to this Plan that would have been distributed prior to the date on which a Disputed Claim becomes an Allowed Claim shall be distributed to the Holder of such Allowed Claim, together with any other Distributions that would have been due on account of such Claim being an Allowed Claim.   The Liquidating Trustee shall reserve from any Distribution on account of Allowed Claims any amount otherwise allocable to a Claim that is a Disputed Claim pursuant to Section VII.B.8 of this Plan.

### B.    DISTRIBUTIONS.

1.    **Distributions on Allowed Claims.**   Except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made:   (a) at the addresses set forth on the respective proofs of Claim Filed by such Holders; (b) at the addresses set forth in any written notice of address change delivered to the Debtor, or the Liquidating Trustee, as applicable, after the date of the Filing of any related proof of claim; or (c) at the address reflected in the Schedules or the Debtor's books and records if no proof of claim has been Filed and if the Debtor or the Liquidating Trustee, as applicable, has not received written notice of a change of address, as set forth herein.   The Distributions to Holders of Allowed Claims shall be on the Initial Distribution Date and the subsequent Distribution Dates on the terms and conditions of this Plan.   Notwithstanding any other provision of the paragraph, all Distributions to Holders of Claims shall be subject to the provisions of this Plan concerning reserves for Disputed Claims.

2.    **Undeliverable Distributions.**   If a Distribution is returned as undeliverable, the Liquidating Trustee shall hold such Distribution and shall not be required to take any further action with respect to the delivery of the Distribution unless and until the earlier of (a) the date on which the Liquidating Trustee, as applicable, is notified in writing of the then current address of the holder entitled to receive the Distribution and (b) three (3) months after said Distribution, except as the Bankruptcy Court may otherwise order.   If the Liquidating Trustee is notified in writing of the then current address of the holder before three (3) months after said Distribution, the Liquidating Trustee shall make the Distribution required by this Plan to the Holder at such address.   If the Liquidating Trustee is not so notified by three (3) months after said Distribution, and the Holder of the Claim does not assert a right to the undeliverable Distribution within three (3) months after the

Distribution, the Holder shall be forever barred from asserting a Claim to such undeliverable Distribution and such future Distributions, and the undeliverable Distribution shall become available for Distribution to Holders of other Allowed Claims as provided in this Plan.

3.     **Manner of Payment.**  Distributions under this Plan may be made, at the option of the Liquidating Trustee, in Cash, by wire transfer or by check drawn on such accounts established by the Liquidating Trustee as necessary to effectuate this Plan.

4.     **Interest.**  Unless otherwise required by Final Order of the Bankruptcy Court, interest shall not accrue or be paid after the Filing Date on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Filing Date on any Claim.

5.     **Fractional Dollars; De Minimis Distributions.**

(a)     Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

(b)     Except as to the Convenience Class of Unsecured Claims, no interim Distribution will be made on account of any Allowed Claim if the amount of such Distribution is less than $25.00.  On the Final Distribution Date, the Liquidating Trustee shall (i) aggregate the amount of all Distributions that would have been made on account of an Allowed Claim in Class Three but for this *de minimis* provision and (ii) make a Distribution on account of such Allowed Claim in accordance with this Plan.

6.     **Distributions on Claims Allowed Pursuant to Section 502(h) of the Bankruptcy Code.**  Except as otherwise provided in this Plan, no Distributions shall be made on account of a Claim arising as a result of a Final Order entered in an Avoidance Action until such Claim becomes an Allowed Claim.  Any Claim that is Allowed pursuant to § 502(h) of the Bankruptcy Code prior to the Initial Distribution Date as a result of the entry of a Final Order in any Avoidance Action will be treated in accordance with the provisions of this Plan.  All Holders of such Claims that become Allowed Claims after the Initial Distribution Date will receive an initial Distribution on the Distribution Date next following the date on which their Claim becomes an Allowed Claim and shall receive subsequent Distributions, if any, in accordance with the provisions of this Plan.  Distributions under this Plan on account of anticipated Claims that may arise or become allowable as a result of the entry of a Final Order in any Avoidance Action that are not Allowed Claims as of the Initial Distribution Date may be held in reserve, at the discretion of the Liquidating Trustee, pending the allowance or disallowance of such Claims.

7.     **Compliance with Tax Requirements**.  In compliance with section 346 of the Bankruptcy Code, to the extent applicable, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making Distributions pursuant to this Plan and shall be authorized to take any and all action necessary and appropriate to comply with such requirements.  As a condition to making any Distribution under this Plan, the Liquidating Trustee may require the Holder of an Allowed Claim to provide such Holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws.  Notwithstanding any other provision of this Plan, each entity receiving a Distribution of Cash

pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.

       8.     **Reserve for Disputed Claims.**   Except as otherwise provided in this Plan, no Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim. In making any Distribution on Allowed Class 2, Class 3, or Class 5 Claims, the Liquidating Trustee shall calculate the amount of such Distribution (for purposes of making a Pro Rata calculation) as if each Disputed Claim were an Allowed Claim, unless the Bankruptcy Court enters an order specifying that the Disputed Claim should be treated as being a different amount for purposes of such calculation. The Liquidating Trustee shall reserve from Distributions a sufficient amount to make a Distribution on a Disputed Claim in the event it becomes an Allowed Claim (unless the Bankruptcy Court orders otherwise); and to the extent a Disputed Claim is disallowed pursuant to a Final Order, any reserves attributable to the disallowed portion of the Disputed Claim shall be distributed on account of Allowed Claims pursuant to the terms of this Plan.

       9.     **Setoffs**. Subject to section 553 of the Bankruptcy Code, in the event the Debtor has a Claim or Cause of Action of any nature whatsoever against a Holder of a Claim, the Liquidating Trustee may, but is not required to, set off or recoup the Debtor's Claim or Cause of Action against such Claim (and any Distributions or other rights to receive property arising out of such Claim under this Plan) unless any such Claim or Cause of Action of the Debtor is or will be released under this Plan. Neither the failure to set off nor the allowance of any Claim under this Plan shall constitute a waiver or release of any Claim or Cause of Action of the Debtor.

       10.    **Reliance on Claims Register.**   In making Distributions under this Plan, the Liquidating Trustee may rely upon the accuracy of the claims register maintained by the Bankruptcy Court or its designee as claims agent in the Case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

## C.    RESERVATION OF RIGHTS OF THE ESTATE; RETENTION AND ENFORCEMENT OF CAUSES OF ACTION.

       Unless expressly and unequivocally released in this Plan, nothing contained in this Plan shall be deemed to be a waiver or relinquishment or release of any Causes of Action that the Liquidating Trustee may choose to assert on behalf of the Estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. All Causes of Action, cross-claims, setoffs, defenses and counterclaims of the Debtor or the Estate of any kind or nature whatsoever including, without limitation, those against third parties arising before the Effective Date that have not been disposed of prior to the Effective Date shall be preserved and retained for enforcement by the Liquidating Trustee for the benefit of the Estate as set forth in this Plan, except to the extent expressly and unequivocally released or enjoined by this Plan or pursuant to a Final Order. Without limitation of the foregoing, pursuant to section 1123(b) of the Bankruptcy Code, the Liquidating Trustee, and his successors and assigns, shall retain and is solely empowered and authorized to enforce, for the benefit of the Estate: (a) the Causes of Action, including, but not limited to, those against any former or current officer, director, member, manager or agent of the Debtor or any insider or affiliate of the Debtor, as those terms as defined in the Bankruptcy Code, arising under applicable non-bankruptcy law under either federal or state law, including but not

limited to breaches of fiduciary duty; and against any professional retained by the Debtor prior to the Filing Date for malpractice or negligence or other torts, including any lawyer, law firm, accountant, accounting firm, consultant or consulting firm or investment banker or investment banking firm for services performed prior to the Filing Date and (b) all other Causes of Action and related recoveries of any nature or type whatsoever, at law or in equity, against any Person or entity. The following is a non-exhaustive list of former and current officers, directors, members managers, agents, insiders and affiliates of the Debtor against whom the Estate is reserving and retaining Causes of Action, which Causes of Action shall be enforceable by the Liquidating Trustee for the benefit of the Estate: LSF5 Bruno's Investments, LLC, Lone Star Funds V (U.S.), L.P., Hudson Advisors, LLC, Lone Star, InLine Investments, LLC, BI-LO, LLC, and all insiders and affiliates of the foregoing, as those terms are defined in the Bankruptcy Code and Brian Carney, Brian Hotarek, Brian P. Carney, Charles Lowrey, Chris Williamson, Layne LeBaron, David M. West, David Mills, Dennis Wade, John Symons, Kenneth Jones, Kent Moore, Kevin McDougall, Kyle Gayler, Marc L. Lipshy, Michael Yakovsky, Mike Crandall, Paul Floyd, Phil Barker, Ray England, Robert Zielinski, Scott Jackson, Scott North, Steve Black, Len W. Allen, Jr. and Mike Prushan. Regardless of whether a name of a Person or entity is listed among the forgoing, the Liquidating Trustee is retaining for enforcement for the benefit of the Estate any and all Causes of Action against any and all former officers, directors, members, mangers and agents of the Debtor.

Furthermore, except as specifically released or enjoined by the Plan or pursuant to a Final Order, the Liquidating Trustee is retaining for enforcement for the benefit of the Estate all Avoidance Actions, including, but not limited to, against the following Persons or entities: (a) any Person or entity who received a payment or property from the Debtor to or for their benefit on account of an antecedent debt owed by the Debtor within ninety (90) days of the Filing Date, including, but not limited to, those persons or entities identified in response to Question 3(a) on Debtor's Statement of Financial Affairs Filed with the Bankruptcy Court, (b) any insider of the Debtor, as that term is defined by the Bankruptcy Code, who received a payment or transfer of property from the Debtor to or for their benefit on account of an antecedent debt owed by the Debtor within one year of the Filing Date and (c) any Person or entity who received a transfer of property from the Debtor or from whom the Debtor assumed an obligation within two years of the Filing Date. Regardless of whether or not a Person or entity is identified as a recipient of a payment or other transfer of property from the Debtor or the transferor of obligation to the Debtor in the Debtor's Statement of Financial Affairs Filed with the Bankruptcy Court, all Avoidance Actions against any Persons or entities shall be reserved and retained for enforcement by the Liquidating Trustee, for the benefit of the Estate.

Upon the Effective Date, the Liquidating Trustee shall automatically be substituted in as the Plaintiff in any action in which the Debtor or the Committee was the Plaintiff, and as the party in interest with respect to any proof of claim filed by either the Debtor or the Committee against BI-LO.

Nothing in the Plan prejudices any party's positions with respect to jurisdictional, substantive, and procedural issues pertaining to the Causes of Action and other claims described in this paragraph.

# SECTION VIII.
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim, the resolution of any objections to the Allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation of any reimbursement of expenses of parties entitled thereto;

2. Hear and determine all applications for compensation and reimbursement of expenses of professionals under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

3. Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4. Effectuate performance of and payments under the provisions of this Plan;

5. Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Chapter 11 Case or this Plan;

6. Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

7. Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

8. Consider any modifications of this Plan and any implementing documents, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

Page 31 of 38

10.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

11.     Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

12.     Enforce all orders, judgments, injunctions , releases, exculpations, indemnifications and rulings entered in connection with the chapter 11 Case;

13.     Except as otherwise limited by this Plan, recover all assets of the Debtor and property of the Estate, wherever located;

14.     Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

15.     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

16.     Hear and determine the Causes of Action, unless the Liquidating Trustee determines, in his sole discretion, to commence an action or proceeding in another court of competent jurisdiction;

17.     Hear and determine all disputes involving the existence, nature or scope of the injunctions indemnification, exculpation and releases granted pursuant to this Plan.

18.     Hear and determine all disputes or other matters arising in connection with the interpretation, implementation or enforcement of the Asset Sales;

19.     Hear and determine all matters related to (i) the property of the Estate from and after the Confirmation Date, (ii) the winding up of the Estate and (iii) the activities of the Liquidating Trustee, including (A) challenges to or approvals of his activities, where required under this Plan (B) resignation, incapacity or removal of the Liquidating Trustee, (C) reporting by, termination of and accounting by Liquidating Trustee and (D) release of the Liquidating Trustee from his duties;

20.     Hear and determine disputes with respect to compensation of professionals;

21.     Hear and determine all disputes involving the existence, nature and/or scope of the injunctions and releases provided by this Plan including any dispute relating to any liability arising out of any termination of employment or the termination of any employee or retiree benefit provision, regardless of whether such termination occurred prior to or after the Effective Date;

22.     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provision of the Bankruptcy Code;

23.     Enforce all orders previously entered by the Bankruptcy Court; and

24.    Enter a final decree closing the Case.

**SECTION IX.**
**MISCELLANEOUS PROVISIONS**

**A.    SUBSTANTIAL CONSUMMATION.**

The Plan shall be deemed to be substantially consummated when the Liquidating Trustee makes the Final Distribution.

**B.    INSURANCE PRESERVATION.**

Any policies of insurance or indemnification escrows that may cover or apply to any Claims against any other officer, director, employee, agent or other representative of the Debtor (collectively, the "Insured Parties"), including, without limitation, any directors or officers liability insurance policy, shall be preserved and shall remain in full force and effect following entry of the Confirmation Order and nothing in this Plan, including any releases, shall diminish, impair or prejudice the rights, claims, interests or defenses of any Insured Party.

**C.    TAX INJUNCTION.**

In accordance with § 346 of the Bankruptcy Code for purposes of any state or local law imposing a tax, income will not be realized by the Debtor or by reason of forgiveness or discharge or indebtedness resulting from the Case.  As a result, each state or local taxing authority is permanently enjoined and restrained, after the Confirmation Date, from commencing, continuing or taking any act to impose, collect or recover in any manner any tax against the Debtor arising by reason of the forgiveness or discharge of any such Person under this Plan.  Notwithstanding any other provision of this Plan, each Person or entity receiving a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the payment and satisfaction of tax Claims or obligations imposed by any Governmental Unit on account of, arising out of or related to any such Distribution, including, without limitation, income and withholding taxes.

**D.    EFFECTUATING DOCUMENTS; FURTHER TRANSACTION; EXEMPTION FROM TRANSFERS TAXES.**

1.    Pursuant to section 1146(a) of the Bankruptcy Code, the creation or transfer of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, and executed in connection with the liquidation of assets shall not be subject to any stamp tax, real estate tax or similar tax and the Confirmation Order shall direct the appropriate state, commonwealth and local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

2.    On the Effective Date, all provisions of this Plan, including all releases, injunctions, agreements, instruments and other documents filed in accordance with this Plan, shall be binding and have *res judicata*, collateral estoppel, claim preclusion and issue preclusion effect upon the

Debtor, all Holders of Claims and Interests and all other entities that are affected in any manner by this Plan.  All agreements, instruments and other documents filed in connection with this Plan shall have full force and effect, and shall bind all parties thereto as of the Effective Date, whether or not such documents actually shall be executed by parties other than the Debtor or shall be issued, delivered or recorded on the Effective Date or thereafter.

**E.      NONCONSENSUAL CONFIRMATION.**

If all impaired classes do not vote in favor of this Plan, this Plan Proponent shall seek confirmation of this Plan in accordance with section 1129(b) of the Bankruptcy Code, either under the terms provided herein or upon such terms as may exist if this Plan is modified in accordance with section 1127(a) of the Bankruptcy Code.

**F.      MODIFICATION OF PLAN.**

The Plan Proponent may alter, amend or modify this Plan pursuant to section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After Confirmation Date and prior to the substantial consummation of this Plan, as defined in section 1101(2) of the Bankruptcy Code, this Plan Proponent may, pursuant to section 1127(b) of the Bankruptcy Code, institute proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of this Plan; so long as such proceedings do not adversely affect the treatment of Holders of Claims or provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002 or order of the Bankruptcy Court.

**G.      PLAN SUPPLEMENT(S).**

Exhibits to this Plan not attached hereto shall be filed in one or more Plan Supplements by the Exhibit Filing Date.  Any Plan Supplement (and amendments thereto) filed this Plan Proponent shall be deemed an integral part of this Plan and shall be incorporated by reference as if fully set forth herein.  Substantially contemporaneously with its Filing, any Plan Supplement may be viewed at the office of the clerk of the Court or its designee during normal business hours, by visiting the Court's website at ecf.alnb.uscourts.gov (PACER account required) or by visiting http://www.kccllc.net/brunos.  Holders of Claims and/or Interests may obtain a copy of any Plan Supplement upon written request to the Debtor.  The documents contained in any Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  To the extent any Exhibit is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of this Plan shall control.

**H.      NOTICE.**

Except as specifically provided otherwise in the order approving the Disclosure Statement, any notice, pleading, objection or other document required by this Plan or the Confirmation Order, shall be sent by overnight delivery service, facsimile transmission or hand delivery and deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed and addressed as follows:

1.      If to the Debtor:

            Robert B. Rubin
            Derek F. Meek
            Marc P. Solomon
            BURR & FORMAN LLP
            420 North 20th Street, Suite 3400
            Birmingham, Alabama 35203
            Facsimile:      (205) 458-5100

2.      If to the Liquidating Trustee:

        As set forth in the Confirmation Order.

3.      If to the Bankruptcy Administrator:

            J. Thomas Corbett
            Office of the Bankruptcy Administrator
            United States Bankruptcy Court
            1800 5th Avenue North
            Suite 132
            Birmingham, AL 35203

4.      If to the Committee:

            James R. Sacca, Esq.
            John D. Elrod, Esq.
            Greenberg Traurig LLP
            The Forum
            3290 Northside Parkway, Suite 400
            Atlanta, GA 30327
            Facsimile: (678) 553-2686

## I.      SEVERABILITY; CONFLICT OF TERMS; SUCCESSORS AND ASSIGNS.

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, then the Bankruptcy Court, at the request of this Plan Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each been and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**J.     CONFLICT OF TERMS.**

To the extent the Disclosure Statement and this Plan are inconsistent, the terms of this Plan shall control.

**K.     SUCCESSORS AND ASSIGNS.**

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assignee of such Person.

**L.     PAYMENT OF BANKRUPTCY ADMINISTRATOR FEES.**

All fees payable through the Effective Date due the Bankruptcy Administrator shall be paid on the Effective Date by the Liquidating Trustee on behalf of the Debtor.  The Liquidating Trustee shall pay quarterly fees to the Bankruptcy Administrator until the Case is closed or converted and/or the entry of final decrees.  The Bankruptcy Administrator shall not be required to file a request or proof of claim for payment of its quarterly fees, which shall be paid by the Liquidating Trustee on behalf of Debtor.

**M.     TAX REPORTING AND COMPLIANCE.**

The Liquidating Trustee is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

Respectfully submitted,

/s/ Marc P. Solomon
Robert B. Rubin
Derek F. Meek
Marc P. Solomon

**BURR & FORMAN LLP**
420 North 20th Street, Suite 3400
Birmingham, Alabama 35283-0719
Phone:           (205) 251-3000
Facsimile:       (205) 458-5100

*Attorneys for Debtor*

BFW Liquidation, LLC (f/k/a Bruno's Supermarkets, LLC)

By: /s/ James Grady
Its: Chief Restructuring Officer

Case 09-00634-TOM11   Doc 1352   Filed 08/07/09   Entered 08/07/09 16:05:05   Desc
Main Document      Page 92 of 105

Document comparison done by DeltaView on Friday, August 07, 2009 2:49:06 PM

| Input: | |
|---|---|
| Document 1 | PowerDocs://DOCS/1761080/7 |
| Document 2 | PowerDocs://DOCS/1761080/8 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 19 |
| Deletions | 29 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 48 |

## Exhibit B

## CLOSING STORES

1763886 v67

| Location # | Banner | Name | City | State | Zip | Selling Sq Feet |
|---|---|---|---|---|---|---|
| 2 | Food World | Bessemer, AL | Bessemer | AL | 35020 | 49,140 |
| 5 | Bruno's Food & Pharm | Montgomery, AL | Montgomery | AL | 36104 | 32,004 |
| 28 | Food Wond | Montgomery, AL | Montgomery | AL | 36104 | 40,600 |
| 36 | Food World | Wetumpka, AL | Wetumpka | AL | 35092 | 32,095 |
| 82 | Bruno's Food & Pharm | Birmingham, AL | Birmingham | AL | 35203 | 37,920 |
| 115 | Food World | Adamsville, AL | Adamsville | AL | 35005 | 32,004 |
| 125 | Bruno's 5upercenter | Homewood, AL | Homewood | AL | 35209 | 35,464 |
| 144 | Food World | Fairhope, AL | Fairhope | AL | 36532 | 29,994 |
| 254 | Food World | Millbrook, AL | Millbrook | AL | 36504 | *30A14* |
| 255 | Bruno's | Auburn, AL | Auburn | AL | 36830 | 37,380 |

1762363 v1

# **Exhibit C**

## **GOING CONCERN STORES AND GOB STORES**

1763886 v67

# STORES SOLD AS GOING CONCERNS

| Store # | Banner | City | State |
|---|---|---|---|
| 15 | Food World | Cullman | AL |
| 27 | Food World | Tuscaloosa | AL |
| 30 | Food World | Mary Esther | FL |
| 49 | Food World | Rainbow City | AL |
| 51 | Bruno's | Hoover | AL |
| 53 | Food World | Pelham | AL |
| 54 | Food World | Homewood | AL |
| 58 | Food World | Hueytown | AL |
| 61 | Food World | Mobile | AL |
| 70 | Bruno's | Alabaster | AL |
| 84 | Bruno's | Tuscaloosa | AL |
| 114 | Food World | Mobile | AL |
| 124 | Food World | Gadsden | AL |
| 141 | Food World | Pensacola | FL |
| 142 | Food World | Pensacola | FL |
| 145 | Food World | Trussville | AL |
| 213 | Food World | Milton | FL |
| 223 | Food World | Pensacola | FL |
| 234 | Food World | Tuscaloosa | AL |
| 247 | Food World | Tuscaloosa | AL |
| 304 | Bruno's | Fairhope | AL |
| 306 | Bruno's | Gulf Shores | AL |

| | | | |
|---|---|---|---|
| 309 | Bruno's | Spanish Fort | AL |
| 310 | Bruno's | Mobile | AL |
| 323 | Bruno's | Mobile | AL |
| 330 | Food World | Mobile | AL |
| 334 | Food World | Mobile | AL |
| 337 | Food World | Saraland | AL |
| 339 | Food World | Theodore | AL |
| 362 | Food World | Pensacola | FL |
| 369 | Food World | Niceville | FL |

## STORES LIQUIDATED

| | | | |
|---|---|---|---|
| 2 | Bruno's | Bessemer | AL |
| 4 | Bruno's | Birmingham | AL |
| 8 | Bruno's | Birmingham | AL |
| 9 | Bruno's | Hoover | AL |
| 19 | Food Max | Northport | AL |
| 21 | Food World | Gardendale | AL |
| 35 | Food World | Gadsden | AL |
| 50 | Food World | Pell City | AL |
| 68 | Food World | Sylacauga | AL |
| 72 | Food World | Birmingham | AL |
| 122 | Food World | Dora | AL |
| 137 | Food World | Demopolis | AL |
| 222 | Food World | Monroeville | AL |

| | | | |
|---|---|---|---|
| 225 | Food World | Jasper | AL |
| 231 | Bruno's | Montgomery | AL |
| 240 | Food Max | Oxford | AL |
| 245 | Food World | Prattville | AL |
| 248 | Bruno's | Birmingham | AL |
| 252 | Bruno's | Birmingham | AL |
| 253 | Food World | McCalla | AL |
| 307 | Bruno's | Orange Beach | AL |
| 327 | Bruno's | Mobile | AL |
| 371 | Bruno's | Destin | FL |
| 374 | Bruno's | Gulf Breeze | FL |
| 595 | Bruno's | Montgomery | AL |
| 586 | Food World | Moody | AL |

**Exhibit D**

**PHARMACY ASSETS SALES**

| STORE NAME | BRUNO'S STORE # | BRUNO'S ADDRESS | CITY | ST | ZIP | Actual Payment Received - Script | | Actual Payment Received - Inventory |
|---|---|---|---|---|---|---|---|---|
| **CVS** | | | | | | | | |
| Food World | 50 | 613 Martin Street North | Pell City | AL | 35125 | $ | 597,267 | $ 209,464 |
| Food World | 137 | 521 Highway 80 East | Demopolis | AL | 36732 | $ | 559,858 | $ 298,670 |
| Bruno's | 248 | 335 Summit Blvd. | Birmingham | AL | 35243 | $ | 274,448 | $ 258,692 |
| Bruno's | 4 | 100 Inverness Corners | Birmingham | AL | 35242 | $ | 449,778 | $ 271,584 |
| Bruno's | 8 | 1533 Montclair Road | Birmingham | AL | 35210 | $ | 443,690 | $ 140,483 |
| Bruno's | 9 | 1561 Montgomery Highway | Hoover | AL | 35216 | $ | 814 | $ 164,941 |
| Food World | 586 | 1005 Crossroads Plaza Drive | Moody | AL | 35004 | $ | 496,269 | $ 224,067 |
| | | | | | | **$** | **2,822,124** | **$ 1,567,901** |
| | | | | | | | | |
| | | | | | | | | |
| **Walgreen's** | | | | | | | | |
| Food Max | 19 | 5510 McFarland Blvd W. | Northport | AL | 35476 | $ | 523,000 | $ 202,630 |
| Food World | 68 | 1301 West Ft. Williams | Sylacauga | AL | 35150 | $ | 1,050,352 | $ 306,381 |
| Food World | 122 | 2221 Hwy 78 Midway Plaza | Dora | AL | 335062 | $ | 528,000 | $ 171,882 |
| Bruno's | 252 | 2250 Hwy 150 | Birmingham | AL | 35244 | $ | 250,000 | $ 119,736 |
| | | | | | | **$** | **2,351,352** | **$ 800,629** |
| | | | | | | | | |
| **Fred's** | | | | | | | | |
| Food World | 222 | 512 Pike Street | Monroeville | AL | 36460 | | **$50,000** | **$205,393** |
| | | | | | | | | |
| | | | | | | | | |
| **Target** | | | | | | | | |
| Food World | 240 | 828 Quintard Ave | Oxford | AL | 36203 | $ | 585,000 | $ 275,271 |
| Food World | 253 | 4750 Eastern Valley Rd | McCalla | AL | 35111 | $ | 1,015,000 | $ 240,499 |
| | | | | | | **$** | **1,600,000** | **$ 515,770** |

$    6,823,476   $    3,089,693

*(1) Walgreens purchase prices inclusive of 2 months' occupancy expenses.*

**Total Actual Rec'd**

$    9,913,169

## Exhibit E

## LIABILITIES OF DEBTOR

1763886 v67

# BFW Liquidation, LLC
## Claims by Class

| Classes of Claims | Estimated Amount [1] |
|---|---|
| Priority Tax Claims | 7,971,116 |
| Priority Non-Tax Claims | 1,394,783 |
| Class 1 - Secured Claims | 2,350 |
| Class 2 - Convenience Class of Unsecured Claims Against Debtor | 40,940 |
| Class 3 - General Unsecured Claims Against Debtor | 20,204,091 [2][3] |
| Class 4 - Interests | - |
| Class 5 - Punitive Damage Claims | - |
| **Total** | **29,613,280** |

| **Unclassifed Claims** | |
|---|---|
| Administrative Expense Claims: [4] | |
| Section 503(b)(9) Claims | 6,602,057 |
| Management Incentive Plan | 180,000 |
| Subtotal Administrative Expense Claims | 6,782,057 |
| PACA Claims | 399,733 |
| PASA Claims | 155,998 |
| **Total Unclassified Claims** | **7,337,788** |

[1] These amounts are estimates based upon the Debtor's Schedules of Assets and Liabilites.  The actual Allowed Claims in certain classes, particularly Allowed General Unsecured Claims, could differ substantially from the estimates depending on the resolution of Disputed Claims.  Any such differences could have a material impact on the recoveries of the affected classes.

[2]  Class 3 does NOT include Administrative Section 503(b)(9) claims.

[3] These amounts do not reflect proofs of claim filed in the case including, but not limited to, claims for damages based upon the rejection of executory contracts.

[4] Not included in the estimation of administrative expense claims are Professional Fees, Accounts Payable being paid in the ordinary course of the Debtor's business, and administrative expense claims from certain of the Debtor's landlords for amounts owing pursuant to 11 U.S.C. § 365(d)(3).

# Exhibit F

## UNENCUMBERED ASSETS

1763886 v67

**BFW Liquidation, LLC**
**Estimated Unencumbered Assets (in thousands)**

| | | |
|---|---|---|
| **Projected Bank Cash Balance (as of September 5, 2009)[1]** | $ | 8,793 |
| [1] Excludes PACA and Utilities Deposits Accounts | | |

**REMAINING UNENCUMBERED ASSETS**

| | |
|---|---|
| Estimated Other Proceeds: | |
|    Real Property | 1,000 |
|    Accounts Receivable | 600 |
|    Lease Cure Escrow Deposit (from C&S Proceeds) | - |
|    Utilities Deposits ($1.2m of $2.8m in cash flow above) | 1,627 |
|    PACA Deposit Escrow | 560 |
|    Regions Cash Collateral Deposit | 100 |
|    Professional Retainers | 445 |
| | 4,332 |
| **Estimated Total Unencumbered Assets** | $    13,125 |

**NOTES:**

1. This exhibit does not include potential causes of action, including avoidance actions, that accrue to the Debtor under the Bankruptcy Code.

2. Also excluded from this Exhibit is any non-Accounts Receivable based Claim that the Debtor may have against any third party, and any deposit currently being held by the Debtor's insurers.

3. The "Projected Bank Cash Balance" is an estimate of the amount of cash that shall be held by the Debtor as of September 5, 2009 after payment of administrative expenses.

4. Additionally, administrative expenses will continue to accrue after September 5, 2009. Furthermore, there is an AP lag for professional fees of approximately $630,000 and amounts owing to third parties of approximately $192,000 that is not reflected in the Projected Cash Balance.