**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

In re: )
)
BFW LIQUIDATION, LLC, f/k/a ) Case No. 09-00634-BGC-11
Bruno's Supermarkets, LLC, )
)
Debtor. )

**Memorandum Opinion and Order**
**Abstaining Pursuant to 28 U.S.C. § 1334(c)(1)**
<u>**and Granting Relief From the Stay to Arbitrate Claim**</u>

The matters before the Court are:

1.  The <u>Debtor's Objection to Proof of Claim Number 802 Filed by United Food and Commercial Workers Unions and Employers Pension Fund</u> filed on August 7, 2009. Docket No. 1355;

2.  The <u>Motion of the United Food and Commercial Workers Unions and Employers Pension Fund to Compel Arbitration or, Alternatively, for Relief From Automatic Stay to Pursue Arbitration of Claim</u> filed on August 26, 2009. Docket No. 1440;

3.  The <u>Official Committee of Unsecured Creditors' Objection to (I) the Motion of the United Food and Commercial Workers Unions and Employers Pension Fund to Compel Arbitration or, Alternatively, for Relief from Automatic Stay to Pursue Arbitration of Claim and (II) the Motion to Expedite Hearing on Same</u> filed on September 1, 2009. Docket No. 1486;

4.  The <u>Supplemental Objection of the Debtor to the Claims of the United Food and Commercial Workers Unions and Employers Pension Fund (Claim Nos. 802 & 947)</u> filed on September 15, 2009. Docket No. 1576;

5.  The <u>Liquidating Trustee's Memorandum of Law in Support of the Objection to the Motion of the United Food and Commercial Workers Unions and Employers Pension Fund To Compel Arbitration or, Alternatively, for Relief From Automatic Stay to Pursue Arbitration of Claim</u> filed on August 20, 2010. Docket No. 2589; and

6.  The <u>Reply Brief in Support of Motion of the United Food and Commercial Workers Unions and Employers Pension Fund to Compel Arbitration or, Alternatively, for Relief from Automatic Stay to Pursue Arbitration of Claim</u> filed on August 30, 2010. Docket No. 2598.

A hearing was held on September 2, 2010. Appearing were: Mr. John D. Elrod and Mr. James Sacca, attorneys for Mr. William Kaye, the Liquidating Trustee; and Mr. Rufus T. Dorsey, IV, the attorney for the United Food and Commercial Workers Unions and Employers Pension Fund ("Fund").

The matters were submitted on the briefs and pleadings, the record in this case, and arguments of counsel. For the reasons expressed below, the Court finds that the Fund's motion should be granted. Discretionary abstention in favor of arbitration of the Fund's claim and of the Debtor's objection is warranted. As such, the Fund should be granted relief from the stay to initiate arbitration.

## I. Facts, Procedural Posture, and Basic Contentions

During the course of this Chapter 11 case, the debtor ceased operations, sold substantially all of its property, and filed a plan providing for the disposition of the money realized. Its cessation of operations resulted in its withdrawal from the United Food and Commercial Workers Unions and Employers Pension Fund and concomitant incurrence of "withdrawal liability" for unfunded vested pension benefits.

The Fund filed a proof of claim for the liability incurred by the Debtor as a result of the Debtor's withdrawal. The Debtor objected to the claim on the grounds that the amount claimed was computed incorrectly. The Fund insists that the resulting dispute between it and the Debtor with respect to the proper amount of the claim must be resolved through arbitration. Indeed, the statutes which establish and impose liability on employers for withdrawal liability mandate that course of action. 29 U.S.C. § 1401(a)(1). The Debtor, however, contends that the intervention of bankruptcy abrogates the statutory mandate of 29 U.S.C. § 1401(a)(1) and that the bankruptcy claims process must instead be employed to resolve the dispute. The Official Committee of Unsecured Creditors ("OCUC") and Liquidating Trustee likewise oppose arbitration of the contest of claims.

## II. Law

### A. It Is Not Necessary to Decide if Arbitration Is Required by the MPPAA for Withdrawal Liability Claims in Bankruptcy

#### 1. Introduction to the MPPAA

The purpose and general structure of the Multiemployer Pension Plan Amendments to the Employee Retirement Income Security Act, 29 U.S.C. §1001 et

2

seq., of which section 1401, is a part, were succinctly described in <u>Chicago Truck Drivers v. El Paso Co.</u>, 525 F.3d 591 (7th Cir. 2008). The opinion here included:

> The MPPAA protects employees in multiemployer pension plans by requiring employers who withdraw from such plans to pay their share of "unfunded vested benefits." 29 U.S.C. § 1381(b)(1). This is known as "withdrawal liability." When an employer withdraws, the plan sponsor calculates the amount of liability and, "[a]s soon as practicable," notifies the employer of the liability and demands payment. 29 U.S.C. § 1399(b)(1). This "notice and demand" must include the amount of liability and a schedule of installment payments. When the employer receives the notice, it must begin paying according to the schedule. <u>See Robbins v. Pepsi-Cola Metro. Bottling Co.</u>, 800 F.2d 641, 642-43 (7th Cir. 1986)(per curiam). The statute places a premium on prompt payment; it is a "pay now, dispute later" scheme. <u>Id.</u> at 642. But the withdrawing employer "owes nothing" until the plan notifies it of its liability and demands payment. <u>Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.</u>, 513 U.S. 414, 423, 115 S.Ct. 981, 130 L.Ed.2d 932 (1995).

> If the employer wishes to dispute a plan sponsor's assessment of withdrawal liability, it must arbitrate the issue. <u>See</u> 29 U.S.C. § 1401(a)(1). Exceptions to the arbitration requirement are made only in the rarest cases. <u>See Central States, Se. & Sw. Areas Pension Fund v. Slotky</u>, 956 F.2d 1369, 1373 (7th Cir. 1992). Upon receipt of the notice and demand, the employer has 90 days to request an informal review by the plan of the assessment. <u>See</u> 29 U.S.C. § 1399(b)(2)(A). The employer then has roughly 120 additional days to demand arbitration. *See* 29 U.S.C. § 1401(a)(1). If an employer fails to demand arbitration, the assessment becomes "due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1).

<u>Id</u>. at 595.

## 2. The Arbitration Requirement

Section 1401(a)(1) of Title 29 provides that,"Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." <u>Id</u>. That provision would include the dispute in this case over the amount of the Fund's claim and the manner in which it was calculated, the basis of the Debtor's objection to the claim. See 29 U.S.C. § 1391(a)("Determination of amount of unfunded vested benefits allocable to employer withdrawn from plan").

3

In addition to mandating arbitration of disputes with respect to withdrawal liability, however, in 29 U.S.C. § 1451(a), the MPPAA paradoxically authorizes a plan fiduciary or employer, as well as other designated parties in interest, "adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan... [to] bring an action for appropriate legal or equitable relief, or both." Id. (parenthetical added). Moreover, subsection (c) of that statute squarely imbues district courts of the United States with exclusive jurisdiction to entertain any such actions. It reads, "The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability." Id.

The above raises the question: What happens if an action is brought to ascertain and enforce withdrawal liability in a court without arbitration first having been instituted and completed, as is the present situation? In that circumstance, courts have universally concluded that the arbitration requirement of section 1401(a)(1) is not jurisdictional, but rather constitutes an exhaustion of administrative remedies requirement.[1]  "In general, this 'long settled rule of judicial administration [mandates] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' "  Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 328 (5th Cir. 1987)(quoting Myers v. Bethlehem Corp., 303 U.S. 41, 50-51 (1938)).  "Thus, if a party commences an action in federal court without having first exhausted the mandatory arbitration process, it will be subject to a failure-to-exhaust defense."  Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Services, Inc., 469 F.3d

---

[1] Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Services, Inc., 469 F.3d 369, 375 (4th Cir. 2006); Giroux Bros. Transp., Inc. v. New England Teamsters & Trucking Industry Pension Fund, 73 F.3d 1, 4 (1st Cir. 1996); Board of Trustees of Const. Laborers' Pension Trust for Southern California v. M.M. Sundt Const. Co., 37 F.3d 1419, 1420 (9th Cir. 1994); Bowers v. Andrew Weir Shipping, Ltd., 27 F.3d 800, 807 (2nd Cir. 1994); Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 122 (4th Cir. 1991); McDonald v. Centra, Inc., 946 F.2d 1059, 1063 (4th Cir. 1991); Trustees of Colorado Pipe Industry Pension Trust v. Howard Elec. & Mechanical Inc., 909 F.2d 1379, 1385 (10th Cir. 1990); Crown Cork & Seal Co., Inc. v. Central States Southeast and Southwest Areas Pension Fund, 881 F.2d 11, 16 (3rd Cir. 1989); Robbins v. Admiral Merchants Motor Freight, Inc., 846 F.2d 1054, 1056 (7th Cir. 1988); Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 852 F.2d 156, 163 (6th Cir. 1988); Park South Hotel Corp. v. New York Hotel Trades Council, 851 F.2d 578, 582 (2nd Cir. 1988); ILGWU Nat. Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 886 (2nd Cir. 1988); Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp., 813 F.2d 760, 764 (6th Cir. 1987); Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 327-328 (5th Cir. 1987); T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2nd Cir. 1985); I.A.M. Nat. Pension Fund Ben. Plan C. v. Stockton TRI Industries, 727 F.2d 1204, 1208-1209 (D.C. Cir. 1984).

4

369, 375 (4th Cir. 2006). In short, within the context of an action to litigate withdrawal liability, it means that the dispute must be referred by the court to arbitration if the time for initiating arbitration has not expired or been tolled unless the issues sought to be resolved fall within a severely limited number of exceptions.[2]

### 3. The Goals Sought to be Achieved
### by MPPAA Section 1401(a)(1)

The goals sought to be achieved by Congress in mandating arbitration for MPPAA disputes are: (1) to have technical issues decided by persons expert in deciding those issues; (2) to conservation of judicial resources; and (3) to have those issues decided in a forum and by a procedure which it intended to be more efficient and economical for the parties involved than the courts.[3]

### a. Technical withdrawal liability
### issues should be resolved by experts who
### specialize in those issues

One goal sought to be achieved by Congress in mandating arbitration is to have issues of how and when to assess withdrawal liability, and the amount of such liability, which primarily require application of the technical provisions of the MPPAA, determined by persons who: (1) specialize in determining those issues; (2) have developed a particular expertise in doing so; and (3) are therefore necessarily more expert and adept at deciding such issues than the general judiciary. "These policies include the application of the administrative body's <u>superior expertise</u>, promotion of judicial economy, and deference to the statutory scheme Congress created." <u>T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n</u>, 756 F.2d 939, 945 (2nd Cir. 1985)(emphasis added). "By generally mandating arbitration in the first instance with review by a federal court, MPPAA has created arbitrators who are experts in applying the technical provisions of how and when to assess withdrawal liability." <u>Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra</u>, 983 F.2d 495, 506 (3rd Cir. 1992). "The primary purpose of this exhaustion doctrine is to allow an administrative agency or an arbitrator to perform functions within its <u>special competence</u>: to create a factual record, to <u>apply its expertise</u>, and to correct its own errors so as to eliminate potential controversies that would otherwise end up in federal court." <u>Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia</u>, 830 F.2d 1241, 1252 (3rd Cir. 1987)(emphasis added). "The exhaustion requirement furthers

---

[2] Those exceptions are discussed later.

[3] Is it within the province of this Court to question, second guess, or undermine those goals or substitute its judgment for that of Congress? Or is it this Court's role to consider if the statute is unambiguous, constitutional, and does not conflict with another federal statute?

many important legislative and administrative policies, such as ... to permit the agency to exercise its discretion or apply its expertise ...." Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 328 (5th Cir. 1987)(quoting Patsy v. Florida Int'l Univ., 634 F.2d 900, 903 (5th Cir. 1981)(quoting McKart v. United States, 395 U.S. 185, 193-95 (1969), rev'd and remanded on other grounds sub nom., Patsy v. Board of Regents, 457 U.S. 496 (1982)). "The purpose of the exhaustion of administrative remedies doctrine is to permit an administrative agency to apply its special expertise in interpreting relevant statutes and in developing a factual record without premature judicial intervention." Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp., 813 F.2d 760, 764 (6th Cir. 1987)(emphasis added).

### b. Judicial resources should be conserved

A second goal of the arbitration requirement of the MPPAA is to promote judicial economy. Sending matters to arbitration conserves precious and limited judicial resources. "These policies include the application of the administrative body's superior expertise, promotion of judicial economy, and deference to the statutory scheme Congress created." T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2nd Cir. 1985) (emphasis added). "Arbitration of withdrawal liability disputes ... bears a burden that would otherwise fall on the federal courts." Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1248 (3rd Cir. 1987). " '[A]rbitration promotes judicial economy and judicial restraint, both because the arbitrator's decision may dispose of the suit, and even if one party appeals the arbitrator's decision, the court will have the benefit of the arbitrator's analysis.' " Id. (quoting Robbins v. Chipman Trucking, Inc., 693 F. Supp. 628, 635 (N.D. Ill. 1986)). "The primary purpose of this exhaustion doctrine is to ... eliminate potential controversies that would otherwise end up in federal court." Id. at 1252. "Third, the exhaustion requirement fosters judicial economy both by permitting the administrative tribunal to vindicate a complaining party's rights in the course of its proceedings, thereby obviating judicial intervention, and by encouraging the tribunal to make findings of fact on which courts can later rely in their decision making." Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund, 693 F.2d 290, 293 (3rd Cir. 1982). "Our analysis begins with recognition of the fact that the exhaustion doctrine acts as a prudential rule that provides the courts 'with a method to exercise comity toward administrative agencies and to promote efficient use of judicial resources while protecting the rights of parties who have come before the court seeking relief.' " McDonald v. Centra, Inc., 946 F.2d 1059, 1063 (4th Cir. 1991)(quoting Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987), cert. denied, 488 U.S. 935 (1988). "The exhaustion requirement furthers many important legislative and administrative policies, such as ... to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene ...." Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 329 (5th Cir. 1987)(quoting Patsy v. Florida Int'l Univ., 634 F.2d 900, 903 (5th

6

Cir. 1981)(quoting <u>McKart v. United States</u>, 395 U.S. 185, 193-95 (1969), <u>rev'd and remanded on other grounds sub nom.</u>, <u>Patsy v. Board of Regents</u>, 457 U.S. 496 (1982)). "Arbitration serves several important purposes, not the least of which is the promotion of ' "judicial economy and judicial restraint." ' " <u>Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund</u>, 852 F.2d 156, 164 (6th Cir. 1988)(quoting <u>Flying Tiger Line v. Teamsters Pension Trust Fund</u>, 830 F.2d 1241, 1248 (3rd Cir. 1987)(quoting <u>Robbins v. Chipman Trucking, Inc.</u>, 693 F. Supp. 628, 635 (N.D. Ill. 1986)). "An overall goal is to promote judicial economy." <u>Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp.</u>, 813 F.2d 760, 764 (6th Cir. 1987). "Judicial economy is an important purpose of exhaustion requirements." <u>Board of Trustees of Const. Laborers' Pension Trust for Southern California v. M.M. Sundt Const. Co.</u>, 37 F.3d 1419, 1420 (9th Cir. 1994).

### c. More efficient and more economical
### forums should be considered
### for establishing withdrawal liability

A third goal of the arbitration requirement of the MPPAA is to provide pension funds with an economical and expeditious alternative to the courts for establishing withdrawal liability. "Arbitration of withdrawal liability disputes substantially reduces the expenses incurred by multiemployer plans ...." <u>Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia</u>, 830 F.2d 1241, 1248 (3rd Cir. 1987). "Congress did not intend to create a new, broad category of litigation that would force benefit plans to spend their assets on court costs and attorneys fees. Rather, it chose to require arbitration, with judicial review, to create a more efficient dispute-resolution process." <u>Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Services, Inc.</u>, 469 F.3d 369, 374 (4th Cir. 2006). "Arbitration is supposed to speed final decision and reduce the costs of getting there." <u>Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.</u>, 935 F.2d 114, 119 (7th Cir. 1991). "In enacting the MPPAA, Congress sought to channel disputes over withdrawal liability into the informal and expeditious procedure of arbitration." <u>Trustees of Colorado Pipe Industry Pension Trust v. Howard Elec. & Mechanical Inc.</u>, 909 F.2d 1379, 1385-1386 (10th Cir. 1990). "Congress presumably determined that a substantial portion of disputes could be promptly and efficiently resolved through informal procedures." <u>I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.</u>, 825 F.2d 415, 422 (D.C. Cir. 1987).

### 4. Exceptions to MPPAA's
### Arbitration Requirement

As mentioned above, even though Congress clearly designed arbitration, with judicial review, as the proper mechanism for dispute resolution, some exceptions to the arbitration requirement have been recognized; however, as some courts have recognized, those exceptions are narrow and only applicable in very limited, rare, and

7

extraordinary circumstances.[4] Furthermore, general, categorical pronouncements of those exceptions are incapable of universal application to all circumstances which arguably appear to fall within their general definitions since each generally described exception is itself subject to exceptions and qualifications which limits it to more narrowly defined circumstances.[5]

---

[4] Chicago Truck Drivers v. El Paso Co., 525 F.3d 591, 595 (7th Cir. 2008)(exceptions made only in "rarest cases"); Bowers v. Andrew Weir Shipping, Ltd., 27 F.3d 800, 807 (2nd Cir. 1994)(exceptions to arbitrate first requirement "narrow"); Board of Trustees of Const. Laborers' Pension Trust for Southern California v. M.M. Sundt Const. Co., 37 F.3d 1419, 1421 (9th Cir. 1994)(exceptions are "limited" and apply only in extraordinary circumstances); ILGWU Nat. Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 886 (2nd Cir. 1988)(exceptions to arbitrate first requirement "rare"); Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1252 (3rd Cir. 1987)(exceptions to arbitration "narrowly cabined" and apply only in "extraordinary circumstances"); Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 329 (5th Cir. 1987)(exceptions apply only in "extraordinary circumstances"); Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Philadelphia and Vicinity, 787 F.2d 897, 903 (3rd Cir. 1986)(arbitration can be bypassed only in "rare cases"); Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund, 693 F.2d 290, 293 (3rd Cir. 1982)("... only in extraordinary circumstances, when the complaining party satisfies one of the narrow exceptions to the doctrine, should the courts excuse exhaustion.").  Otherwise, "MPPAA's purposes would be undermined by the expense and delay that would be involved if litigation occurred prior to the Act's dispute resolution procedures." Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1249 (3rd Cir. 1987).

[5] For instance, general statements can be found which suggest that the arbitration requirement does not apply to questions of statutory construction.  McDonald v. Centra, Inc., 946 F.2d 1059, 1063 (4th Cir. 1991)(exception to the requirement that parties exhaust administrative remedies "where ... the dispute is a matter of statutory construction"); Crown Cork & Seal Co., Inc. v. Central States Southeast and Southwest Areas Pension Fund, 881 F.2d 11, 19 n.20 (3rd Cir. 1989)(exception to exhaustion where arbitration would  "clearly and unambiguously violate statutory or constitutional rights"); New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co., 848 F.2d 20, 22 (2nd Cir. 1988)("a matter need not be submitted to arbitration where the only disputes concern constitutional questions or, in some circumstances, statutory interpretation"); Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1253 (3rd Cir. 1987)(requirements of exhaustion doctrine not applicable where the question is  "solely one of statutory interpretation"); Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Philadelphia and Vicinity, 787 F.2d 897, 903 (3rd Cir. 1986)( "arbitration may be bypassed when the district court faces only questions of statutory interpretation "); T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2nd Cir. 1985)("[t]he most common exceptions are found when ... statutory interpretation is required ...."); I.A.M. Nat. Pension Fund Ben. Plan C. v. Stockton TRI Industries, 727 F.2d 1204, 1210 (D.C. Cir. 1984)(exception to arbitration recognized where issue before the district court was purely one of statutory interpretation); Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund, 693 F.2d 290, 293 (3rd Cir. 1982)(same).

8

Apparently contrary statements can be found in the same and other circuits. "Moreover, with increasing judicial awareness of the legitimacy and competency of arbitration as a viable forum for legal as well as factual matters, a number of courts have held that even questions of statutory interpretation, standing alone, are not exempt from arbitration under the MPPAA." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 123 (4th Cir. 1991). "We also agree with a growing number of circuits that questions of statutory construction, standing alone, are not exempt from arbitration under the MPPAA." Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 852 F.2d 156, 164 (6th Cir. 1988).

Moreover, analysis of the cases making those general pronouncements, as well as other cases in which the "statutory construction" argument against arbitration was made, reveals that such pronouncements have not been in fact liberally applied to all instances of statutory construction, but instead have been severely limited in application to circumstances so particularly defined that they can scarcely be found. For instance, the "statutory construction exception to arbitration" has been held to have no application to issues and disputes requiring construction of sections 1381 through 1399 of the MPPAA, 29 U.S.C. §§ 1381-1399, since section 1401(a)(1) specifically requires arbitration of "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of [title 29] ...."  29 U.S.C. § 1401(a)(1). Giroux Bros. Transp., Inc. v. New England Teamsters & Trucking Industry Pension Fund, 73 F.3d 1, 4 (1st Cir. 1996)("[A]ny dispute regarding the timeliness of the Fund's demand under § 1399(b)(1) is statutorily committed to arbitration in the first instance...." even if "it may also involve a measure of statutory interpretation."); Bowers v. Andrew Weir Shipping, Ltd., 27 F.3d 800, 807 (2nd Cir. 1994)("[C]ongress envisioned that decisions regarding statutory interpretation under § 1384 'would be made by the arbitrator in the first instance.'" (citations omitted)); Crown Cork & Seal Co., Inc. v. Central States Southeast and Southwest Areas Pension Fund, 881 F.2d 11, 18 (3rd Cir. 1989)("[I]t is now established that 'where the issue of statutory interpretation "involves only a MPPAA section that Congress explicitly reserved for arbitration," arbitration is the appropriate route for resolution of the dispute.' " (citations omitted)); Id. ("[C]ircuit precedent clearly directs that in view of Congress' plain mandate to 'arbitrate first,' even pure issues of statutory interpretation are subject to MPPAA's arbitration requirements if they involve sections 1381-1399."); Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund, 847 F.2d 113, 122 (3rd Cir. 1988)(issue under section 1391 of whether certain payments made at the time of the merger should be counted as "contributions" for the purpose of apportioning Fund's unfunded vested liabilities among its member employers must be submitted to arbitration before proceeding on claim in district court despite employers contention that it was purely a legal issue, the resolution of which required only the interpretation of a statute and no factual development); ILGWU Nat. Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 886 (2nd Cir. 1988)("[T]he issues of statutory interpretation raised by the Corporation largely involve interpretations under sections 1381 through 1399, interpretations which we believe Congress envisioned would be made by the arbitrator in the first instance.").

Hence, "whether the principal purpose of a transaction in which one company divests itself of an interest in another is to 'evade or avoid' withdrawal liability within the meaning of 29 U.S.C. § 1392(c)" is an issue that must be arbitrated.  Board of Trustees of Trucking

9

_____

Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra, 983 F.2d 495, 506 (3rd Cir. 1992); Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 875 F.2d 1285, 1288 (7th Cir. 1989). And an action involving an employer's request for information pursuant to 29 U.S.C. § 1399 and a pension fund's alleged refusal to honor that request constitutes a "dispute between an employer and the plan sponsor" for purposes of section 1401(a)(1) and is, therefore, subject to dismissal if brought prior to arbitration. Board of Trustees of Const. Laborers' Pension Trust for Southern California v. M.M. Sundt Const. Co., 37 F.3d 1419, 1421 (9th Cir. 1994).

Moreover, disputes with respect to section 1405 limitations must, by virtue of section 1401(a)(1), be arbitrated, "Because withdrawal liability determinations that are 'made under' § 1381 necessarily and explicitly include consideration of the § 1405 limitations and because § 1405 is only relevant as a step in making a withdrawal liability calculation under § 1381 ...." Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Services, Inc., 469 F.3d 369, 373 (4th Cir. 2006). Also, the issue of whether a trucking terminal was a "facility" within the meaning of § 1397(a)(2) is a mixed question of law and fact which must be decided by arbitration. Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund, 718 F.2d 628, 634 (4th Cir. 1983).

Furthermore, under 29 U.S.C. § 1401(a)(1), an employer must first exhaust the administrative remedy of arbitration before proceeding in court on a claim seeking a determination of whether certain payments made at the time of a merger should be counted as "contributions" for the purpose of apportioning a fund's unfunded vested liabilities among its member employers under section 1391(f). Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund, 847 F.2d 113, 122 (3rd Cir. 1988). In addition, arbitration of an employer's claim that a fund had wrongfully inflated its liability by including the liability of two unrelated companies was required because that issue is governed by section 1391(a), which provides that, "The amount of the unfunded vested benefits allocable to an employer that withdraws from a plan shall be determined in accordance with ... this section." 29 U.S.C. § 1391(a). Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity, 16 F.3d 1386, 1390 (3rd Cir. 1994). And a dispute under section 1385(a)(2) as to when an employer permanently ceased to have an obligation to contribute to the fund for its employees must be resolved by the arbitral process provided within the statutory scheme and is not an issue for the court to decide prior to or in lieu of arbitration. Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 814 F.2d 297, 300 (6th Cir. 1987).

Decisions which came to a different conclusion are Dorn's Transp., Inc. v. Teamsters Pension Trust Fund of Philadelphia and Vicinity, 787 F.2d 897, 903 (3rd Cir. 1986)(district court did not abuse discretion in not requiring arbitration of issues under sections 1392 and 1398 in this "rare case in which there was no need for the development of a factual record" and "there was no disputed issue of material fact."); and I.A.M. Nat. Pension Fund Ben. Plan C. v. Stockton TRI Industries, 727 F.2d 1204, 1210 (D.C. Cir. 1984)(district court did not abuse discretion in not requiring arbitration of issue of whether employer permanently ceased to have an obligation to continue under the plan under section 1383(a)(1) where there were neither questions of fact nor issues of contractual interpretation to resolve and issue was purely one of statutory interpretation). The contrarian pronouncements in Dorn and Stockton, however, have been restricted and implicitly repudiated by subsequent opinions rendered by those respective

10

Courts of Appeal and, therefore, lack continued viability. "From the unambiguous language by which Congress established the primacy of arbitration in withdrawal liability disputes and in light of our decisions interpreting those terms, it should be beyond cavil that the existence of an issue of statutory interpretation, standing alone, does not justify bypassing arbitration." I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Clinton Engines Corp., 825 F.2d 415, 418 (D.C. Cir. 1987). See also Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1253-1254 (3rd Cir. 1987)(limiting Dorn); Grand Union Co. v. Food Employers Labor Relations Ass'n, 808 F.2d 66, 70 (D.C. Cir.1987)(also limiting Stockton).

The flip side of that conclusion, i.e., that pure issues of law requiring statutory construction of sections 1381-1399 are strictly for the arbitrator, is "that an arbitrator lacks the power to decide issues that do not implicate one of the enumerated provisions." Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra, 983 F.2d 495, 506 (3rd Cir. 1992). "[T]here is no indication that Congress contemplated that § 1401(a)(1) would empower an arbitrator to make decisions outside the context of sections 1381 through 1399." T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2nd Cir. 1985)(exception to arbitration requirement warranted where issue was whether compliance with § 1415 transfer provisions is a condition precedent to the assessment of withdrawal liability).

Hence, ordinarily, "fraud and misrepresentation are not arbitrable issues under MPPAA." Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra, 983 F.2d 495, 506 (3rd Cir. 1992). In Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund, 847 F.2d 113 (3rd Cir. 1988), the employer filed suit for fraud and misrepresentation against the pension fund contending it was fraudulently induced to join and remain in the fund by the latter's concealment and failure to disclose unfunded liabilities that preceded its merger with another fund. The district court held that arbitration could provide a full and fair remedy for the employer's fraud claims. The Third Circuit Court of Appeals disagreed, stating:

> The Fund points to no evidence that a MPPAA arbitrator, schooled in the technical application of MPPAA's statutory requirements, has any expertise in resolving claims of fraud and misrepresentation. Moreover, even if an arbitrator possessed the expertise to decide Colteryahn's fraud claims, it is plain that the statute neither grants the MPPAA arbitrator such power nor, more importantly, deprives the federal courts of the power to decide such claims in the first instance. Section 1401(a)(1), the only provision that might provide a basis for denying the federal courts jurisdiction that they otherwise could exercise, provides for arbitration of disputes "concerning a determination made under sections 1381 through 1399." 29 U.S.C. § 1401(a)(1). However, sections 1381 through 1399 are technical provisions, describing how and when withdrawal liability is to be assessed. For example, § 1384 explains when a sale of an employer's assets constitutes a withdrawal from a plan. Sections 1385, 1386 and 1388 describe how to adjust an assessment for a partial withdrawal. Section 1389 provides for certain "de minimus" exceptions. Section 1391 sets forth the several accepted methods for calculating the assessment itself.

Case 09-00634-TOM11    Doc 3090    Filed 09/28/11    Entered 09/28/11 13:57:04    Desc
Main Document        Page 11 of 47

These sections provide no basis for either adjusting or eliminating an assessment based on fraud or misrepresentation, and we have been cited to no legislative history or other authority even remotely suggesting any such basis. Moreover, not one of the statutory provisions even arguably implicated by Colteryahn's fraud claim falls within sections 1381-1399.  See infra Parts III.B, III.C. Plainly, Colteryahn's dispute with the Fund does not concern any "determination made under" any of these provisions.  Rather, Colteryahn's claim that it was fraudulently induced to become and remain a contributing member of the Western Pennsylvania Fund differs significantly from the types of highly technical MPPAA issues that the statute has assigned to arbitration.  We therefore reject the district court's holding that it was without jurisdiction to hear that claim in its various forms.

Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Employers Pension Fund, 847 F.2d 113, 118-119 (3rd Cir. 1988).

In Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra, 983 F.2d 495, 506 (3rd Cir. 1992), the question raised by the pension fund was whether fraud or mistake vitiated a settlement agreement with respect to withdrawal liability which it had entered into with an alleged member of the employer's control group that was in bankruptcy, the fraud or mistake relating to the fund's lack of knowledge that the solvent employer was part of the bankrupt's controlled group.  That issue was not addressed in arbitration and the fund first raised it in court in response to the solvent employer's contention that litigation of the issue was foreclosed because it was not arbitrated as required by 1401(a)(1).  The Third Circuit Court of Appeals held that resolution of the issue by the district court was not foreclosed because it was not arbitrable in the first place, stating: "Just as fraud is not among the technical provisions describing the formulas by which to calculate withdrawal liability and the timing of payments (sections 1381-1399), the breach of contract argument that the Fund asserts does not fall into any category that MPPAA deems arbitrable."  Id.

Exception has even been made to the apparently necessary implication that an arbitrator may not decide issues which do not fall within the confines of sections 1381 through 1399.  In McDonald v. Centra, Inc., 946 F.2d 1059 (4th Cir. 1991), a corporate group invoked the statutory construction exception by arguing that, as a matter of law, the discharge in bankruptcy of the withdrawal liability of one of the members of the group operated to discharged the withdrawal liability of all members of the group, and that it should be allowed to raise the bankruptcy discharge as a defense in the collection suit brought by the pension fund even though it had failed to raise it during arbitration.  The district court refused to entertain that defense because it had not been raised in the arbitration proceeding.  In affirming the district court, the Fourth Circuit Court of Appeals did not mention the issue in the context of sections 1381 through 1399 of the MPPAA, but instead held, as to an issue which appears to fall outside that context, i.e., the effect of a bankruptcy discharge of one group member on the withdrawal liability of other group members, that arbitration of the issue was mandatory since the fund had "timely presse[d]" the arbitration requirement in the district court, and that court had not determined that arbitration would have "neither lead to the application of superior expertise nor promote[d] judicial economy."  946 F.2d at 1064 (parenthetical added).  "The control group should only be allowed to avoid arbitration if neither party timely presses the [arbitration

Case 09-00634-TOM11    Doc 3090    Filed 09/28/11    Entered 09/28/11 13:57:04    Desc
Main Document      Page 12 of 47

requirement], and the court finds that deferring a court contest while the parties repair to arbitration will neither lead to the application of superior expertise nor promote judicial economy." Id. (citations and internal quotation marks omitted).

Moreover, application of the exception for pure questions of law involving statutory construction is contraindicated if such construction requires the prerequisite development or resolution of any factual issues or even mixed questions of law and facts. "[E]ven when a dispute raises a mixed question of law and fact, the Act's statutory framework dictates that arbitration should be the initial forum for dispute resolution." Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1255 (3rd Cir. 1987). "[E]ven if the 'legal' aspects of some of the relevant inquiries outweigh the 'factual' ones, it does not follow that a preliminary determination by a MPPAA arbitrator would not be worthwhile." Crown Cork & Seal Co., Inc. v. Central States Southeast and Southwest Areas Pension Fund, 881 F.2d 11, 19 (3rd Cir. 1989). "We have made clear, however, that where there is any factual dispute, the policies of the exhaustion doctrine are clearly implicated and, barring extraordinary circumstances, arbitration of that dispute is required: '[t]he Act subjects to arbitration factual issues the resolution of which is necessary to calculate withdrawal liability.... Disputes over these issues are not subject to judicial decision.'" New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co., 848 F.2d 20, 22 (2nd Cir. 1988)(quoting T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2nd Cir. 1985)). See also ILGWU Nat. Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 886 (2nd Cir. 1988)(exception not warranted where "issues of fact - such as, what contract obligations did the Corporation agree to and how did the Corporation conduct its affairs with respect to the union and the Fund - and issues of contract interpretation pervade[d]" the employer's argument).

Generally speaking, an exception from arbitration exists for questions of law which must be resolved in order to ascertain whether the statutory scheme applies to a particular employer in the first place, i.e., a condition precedent to the assessment of withdrawal liability. "Because Congress in Section 1401(a) did not state in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision, federal courts have intervened to take jurisdiction prior to arbitration in the rare case where the defendant has raised a legitimate legal question of statutory interpretation which must be resolved in order to ascertain whether the statutory scheme applies to that defendant at all." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 122 (4th Cir. 1991)(citations and internal quotation marks excluded). For instance, the issue of whether an old pension fund was required to comply with 29 U.S.C. § 1415 by transferring the appropriate assets and liabilities to a new pension fund as "a condition precedent to the assessment of withdrawal liability" against an employer "is an issue of statutory interpretation," which the employer may have decided by the court instead of seeking arbitration. T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2nd Cir. 1985).

Likewise, the issue of whether someone, "is an 'employer' within the meaning of the MPPAA is properly for the courts, not an arbitrator, to determine ..." because "[a]rbitration is prescribed only for disputes 'between an employer and the plan sponsor.' " Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 261 (2nd Cir. 1990)(quoting 29 U.S.C. § 1401(a)(1)). As explained by the Eleventh Circuit Court of Appeals in Carriers Container

13

_Council, Inc. v. Mobile S.S. Ass'n Inc.-Intern. Longshoreman's Ass'n, AFL-CIO Pension Plan and Trust_, 896 F.2d 1330 (11th Cir. 1990):

> The MPPAA provides, "Any dispute between an employer and the plan sponsor of a multi-employer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C.A. § 1401. Courts have held, however, that when a party seeks a determination from a court that it was never an employer under the MPPAA the court may rule on the issue.
>
> ...
>
> In the instant case, the district court appropriately determined that CCC was an employer and that withdrawal had taken place. The issue of whether CCC was an employer was one of statutory interpretation in which an arbitrator would have no particular expertise.

896 F.2d at 1345.

"Thus, the MPPAA does not preclude judicial resolution of the threshold legal issue whether [someone] is an employer within the meaning of the statute." _Bowers v. Transportacion Maritima Mexicana, S.A._, 901 F.2d 258, 261 (2nd Cir. 1990) (parenthetical added). "[D]isputes over whether an entity has ever become an employer ... must be resolved in the courts." _Galgay v. Beaverbrook Coal Co._, 105 F.3d 137, 141 (3rd Cir. 1997). "[A]n entity which has never been an employer within the meaning of MPPAA is not subject to the arbitrator's jurisdiction, since 29 U.S.C. § 1401(a)(1) only mandates arbitration for disputes between " 'an _employer_ and the plan sponsor.' " _Id._ at 142. "Therefore, entity's employer status is a legal question to be resolved by the court." _Id._ "[An] exception to the statutory arbitration command has been found applicable only in cases where the employer claims that it did not _become_ an employer for MPPAA purposes in time to acquire withdrawal liability, or where the employer asserts that it was _never_ an MPPAA employer and thus is not subject to ERISA's dispute resolution procedures." _Teamsters Joint Council No. 83 v. Centra, Inc._, 947 F.2d 115, 122 (4th Cir. 1991) (parenthetical added). "This exception allows a company to bypass arbitration for the limited purpose of determining whether it is an 'employer' within the meaning of section 1401(a)(1)." _Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund_, 852 F.2d 156, 167 (6th Cir. 1988). "Since only an 'employer' is required to arbitrate, the district court may address this threshold question before arbitration." _Id._ "Section 1401 applies to disputes between employers and plan sponsors; since the district court was deciding _whether_ Rheem was, or ever had been, an employer, § 1401 does not apply to Rheem's action for declaratory judgment." _Rheem Mfg. Co. v. Central States Southeast and Southwest Areas Pension Fund_, 63 F.3d 703, 706 (8th Cir. 1995). "Courts that have resolved employer status questions prior to arbitration have been concerned with entities that _never_ have been employers subject to MPPAA and that, therefore, legitimately question application of MPPAA's dispute resolution procedures to them." _Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia_, 830 F.2d 1241, 1251 (3rd Cir. 1987). "Whether a corporation has acquired control of a contributing employer by the date the contributing company withdraws from a multiemployer pension fund is a legal question for a district court to decide." _Board of_

_____

Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra, 983 F.2d 495, 501 (3rd Cir. 1992).  And "... whether an individual has ever had control of a contributing company as an alter ego is a question for the courts to decide," as well. Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity, 16 F.3d 1386, 1390 (3rd Cir. 1994).

        That exception also has an exception: it does not apply in situations where the alleged employer contends that, although it was once an "employer" for purposes of the MPPAA, it was no longer such when the purported withdrawal occurred.  "[W]e have distinguished between disputes over whether an entity has ceased to be an employer within the meaning of MPPAA, which must be resolved in arbitration, and disputes over whether an entity has ever become an employer, which must be resolved in the courts."  Galgay v. Beaverbrook Coal Co., 105 F.3d 137, 141 (3rd Cir. 1997).  A dispute as to when an alleged "employer" ceased to have an obligation to contribute to a multiemployer pension fund is, "to be resolved by the arbitral process provided within the statutory scheme and are not issues for the courts prior to arbitration."  Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 814 F.2d 297, 300 (6th Cir. 1987).  "While the Defendants claim that they were no longer MPPAA employers at the time of the withdrawal, this defense needs to be raised in arbitration."  Chicago Truck Drivers v. El Paso Co., 525 F.3d 591, 598 n.1 (7th Cir. 2008).  Hence, "the question of whether a business, once a member of a control group, has relinquished its control prior to the withdrawal date... is for an arbitrator to decide."  Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra, 983 F.2d 495, 501 (3rd Cir. 1992).  Also, an alleged employer's claim, "that, by virtue of a new and separate ownership history arising from the stock repurchase in 1985, it ceased to be an MPPAA employer in time to avoid liability for [the purchasing company's] withdrawal," must be arbitrated.  Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 123 (4th Cir. 1991) (parenthetical added).  "This argument fails in light of the holding that, as long as a withdrawing entity was a part of the control group of an employer subject to the MPPAA at some point in time, and where the issues in dispute fall under the provisions explicitly designated for arbitration, the arbitration procedure must be followed."  Id.

        Another situation that formerly arose within the context of the statutory construction exception to section 1401(a)(1)'s arbitration requirement involved section 558 of the Deficit Reduction Act of 1984 (DEFRA).  Pub.L. No. 98-369, 98 Stat. 494, 899, reprinted in Historical Note accompanying 29 U.S.C.A. § 1381.  Prior to section 588's enactment, the MPPAA, although it did not become law until September 26, 1980, imposed withdrawal liability on employers who either partially or completely withdrew from a plan after April 29, 1980.  29 U.S.C. § 1461(e)(1982)(amended 1984).  Section 558 eliminated MPPAA's retroactive effect, and provided for the refund of any amount paid because of its retroactive application.  If there was no factual issues with regard to the date of withdrawal, arbitration with respect to the issue of the proper application of section 558 was not required.  Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp., 813 F.2d 760, 764 (6th Cir. 1987).  Arbitration of section 558 issues was, however, required if the date of withdrawal was in dispute.  Crown Cork & Seal Co., Inc. v. Central States Southeast and Southwest Areas Pension Fund, 881 F.2d 11, 19 (3rd Cir. 1989); Robbins v. Admiral Merchants Motor Freight, Inc., 846 F.2d 1054, 1057 (7th Cir. 1988).

15

        A few other narrow exceptions to the arbitration requirement of section 1401(a)(1) exist. If an issue as to the constitutionality <u>vel non</u> of any section is raised, that issue may be entertained and decided by the court and need not be submitted to arbitration.  <u>Trustees of Colorado Pipe Industry Pension Trust v. Howard Elec. & Mechanical Inc.</u>, 909 F.2d 1379, 1386 (10th Cir. 1990); <u>Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund</u>, 852 F.2d 156, 164-165 (6th Cir. 1988); <u>New York State Teamsters Conference Pension & Retirement Fund v. McNicholas Transp. Co.</u>, 848 F.2d 20, 22 (2nd Cir. 1988); <u>Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund</u>, 718 F.2d 628, 635 (4th Cir. 1983); <u>Shelter Framing Corp. v. Pension Ben. Guar. Corp.</u>, 705 F.2d 1502, 1509 (9th Cir. 1983); <u>Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund</u>, 693 F.2d 290, 297 (3rd Cir. 1982).

        It has also been stated as an exception to the arbitration requirement of section 1401(a)(1) that a plaintiff may skip arbitration and proceed directly to court if the arbitration process will cause the plaintiff irreparable harm.  "If forcing a plaintiff to follow a designated administrative procedure would cause the plaintiff irreparable harm, then that plaintiff may bypass those procedures and seek judicial relief directly."  <u>Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia</u>, 830 F.2d 1241, 1252-1253 (3rd Cir. 1987).  "Parties may resort to the courts without exhaustion ... when irreparable injury is likely to result absent immediate judicial review." <u>Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc.</u>, 826 F.2d 320, 329 (5th Cir. 1987) (quoting <u>Lewis v. Reagan</u>, 660 F.2d 124, 127 (5th Cir. 1981).  While the general rule is, "that courts must not entertain the merits of a dispute under the MPPAA prior to arbitration... the rule may not apply if the employer were '... making a verifiable claim of irreparable injury.'"  <u>Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund</u>, 852 F.2d 156, 164-165 (6th Cir. 1988)(quoting <u>Marvin Hayes v. Central States, Southeast and Southwest Areas Pension Fund</u>, 814 F.2d 297, 300 (6th Cir.1987).  This exception almost universally arises within the following context: a employer, without instituting arbitration, files suit to contest the withdrawal liability assessed by a pension fund contending that (a) arbitration is not required because (b) it will suffer irreparable harm if arbitration is instituted because (c) the pension fund will invariably file suit against it to compel interim payments on its withdrawal liability debt pending completion of arbitration pursuant to 29 U.S.C. §§ 1399(c)(1)(A)(I) and 1401(d).

        The Courts of Appeal have universally rejected this argument on the following basis. Because section 1401(d) is not self-enforcing, a fund must file suit in district court to compel the employer to make payments pending the conclusion of arbitration, and in that suit, the district court may, upon a showing by the employer that it will be irreparably harmed if required to make those payments, deny the relief sought by the fund, i.e., refuse to compel the employer to make the payments.  "[Employer] also argues that, if it is forced to arbitrate its claim, the plans will demand interim payments pursuant to MPPAA section 1401(d)... however, section 1401(d) is not self-enforcing... [so] [e]ven if the plans succeed in winning an arbitrator's judgment, they would still have to obtain a court order to compel payments from [employer] .... [a]t [which] point in time, [employer] could present evidence that it faced irreparable injury."  <u>Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia</u>, 830 F.2d 1241, 1253 (3rd Cir. 1987) (citations omitted)(parentheticals added).  "Further, the mere possibility of such a court decision concerning interim payments has no independent legal effect on the question whether Tiger's dispute is to be arbitrated; the possibility that a court may in the future deny a fund's request to

16

With that said, given the exceptions to the arbitration requirement of section 1401(a)(1), and the strident narrowness of the few exceptions that do exist, it is no wonder that courts have recognized arbitration for MPPAA purposes.  "Accordingly, we again emphasize the importance of the legislature's decision that arbitration, and not the courts, is the proper forum for the initial resolution of disputes [under MPPAA]." Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1249 (3rd Cir. 1987)(internal quotation marks and citations omitted).  "We are not alone in concluding that under the MPPAA arbitration reigns supreme."  Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 852 F.2d 156, 164 (6th Cir. 1988)(internal quotation marks and citations omitted).  "Courts interpreting § 1401(a)(1) have been consistent in their conclusions.  Any dispute over withdrawal liability as determined under the enumerated statutory provisions shall be arbitrated."  Robbins v. Admiral Merchants Motor Freight, Inc., 846 F.2d 1054, 1056 (7th Cir. 1988)(internal quotation marks and citations omitted).  " 'Arbitrate first' is indeed a rule Congress stated unequivocally.  Id. (internal quotation marks and citations omitted).  "[A]rbitration reigns supreme under the MPPAA."  Trustees of Colorado Pipe Industry Pension Trust v. Howard Elec. & Mechanical Inc., 909 F.2d 1379, 1385 (10th Cir. 1990)(internal quotation marks and citations omitted).  "In short, arbitration reigns supreme under the MPPAA."  I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Clinton Engines Corp., 825 F.2d 415, 422 (D.C. Cir. 1987).  " 'Arbitrate first' is indeed a rule Congress stated unequivocally: 'Any dispute between an employer and the plan sponsor ... concerning [withdrawal liability] shall be resolved through arbitration.' "  Grand Union Co. v. Food Employers Labor Relations Ass'n, 808 F.2d 66, 70 (D.C. Cir.1987)(internal quotation marks and citations omitted).

The Debtor, Liquidating Trustee, and OCUC do not argue that any of the exceptions to the arbitration requirement of section 1401(a)(1) apply in the case, which involves a dispute over the proper amount of the Fund's claim.  And the reported cases do not suggest any situation where the calculation of the amount of the withdrawal

---

compel payments, based upon an employer's demonstration of irreparable injury and the court's preliminary review of the merits, does not determine whether the underlying dispute must, by law, be arbitrated."  Id.  "[B]ecause submission of the case to arbitration does not necessarily entail the ordering of interim withdrawal liability payments, there is no basis for believing that arbitration would have any direct impact upon [employer]'s financial state."  Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 330 (5th Cir. 1987).  "[T]he possibility that a court might enjoin interim payments based on a verifiable claim of irreparable harm has no 'independent legal effect' on whether the underlying dispute must be submitted to arbitration."  Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 852 F.2d 156, 165 (6th Cir. 1988) (quoting Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1253 (3rd Cir. 1987)).

17

liability may be accomplished by the Court.[6]  Instead any dispute over the amount of withdrawal liability, which must be determined pursuant to 29 U.S.C. § 1391, must be referred to arbitration given Congress's express and unequivocal mandate in section

_____

[6] "Unlike the issue whether TMM is an employer within the meaning of the MPPAA, 'any dispute' concerning the notice or amount of withdrawal liability 'shall be resolved through arbitration.' " Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 262 (2nd Cir. 1990)(quoting 29 U.S.C. § 1401(a)(1)).  "The Act subjects to arbitration factual issues the resolution of which is necessary to calculate withdrawal liability."  T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2nd Cir. 1985).  "Disputes over these issues are not subject to judicial decision."  Id.  "Thus, arbitration is the appropriate forum if there is a dispute concerning whether the employer has completely or partially withdrawn from the pension fund, and, if so, the amount of liability."  Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund, 852 F.2d 156, 164 (6th Cir. 1988)(citations omitted). "Accordingly, if the parties cannot agree on the amount suggested by the Fund, the matter should proceed to arbitration consistent with 29 U.S.C. § 1401 as ordered by the district court." Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp., 813 F.2d 760, 767 (6th Cir. 1987).

        Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc., 935 F.2d 114 (7th Cir. 1991) involved a suit brought by a fund to compel an employer to make interim payments pending arbitration. On appeal, the employer presented the court with three reasons why it believed that the Fund's computation of its withdrawal liability was erroneous.  The court would not consider the employer's argument stating: "They are neither here nor there, and we do not discuss them. Whether the Fund has computed the withdrawal liability correctly is the question for the arbitrator.  Id. at 118.

        Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.-Intern. Longshoreman's Ass'n, AFL-CIO Pension Plan and Trust, 896 F.2d 1330 (11th Cir. 1990) involved a suit filed by a plaintiff, against whom withdrawal liability had been assessed by a pension fund, seeking a declaration that it was not in fact an "employer" subject to withdrawal liability under the MPPAA. The pension fund filed a counterclaim for an order holding the plaintiff responsible for and directing it to pay the outstanding withdrawal liability.  The action was filed prior to the plaintiff's deadline for instituting arbitration proceedings.  The district court determined that the plaintiff was in fact an "employer" and directed the parties to arbitrate the amount of the withdrawal liability.  On appeal, the Eleventh Circuit Court of Appeals affirmed the district court's determination that the plaintiff was an "employer," as well as its reference of the issue of the amount of withdrawal liability to arbitration.  "Once the court had determined that CCC was an employer within the meaning of 29 U.S.C.A. § 1381(a), the issue of whether CCC had withdrawal liability was in effect decided....  Accordingly, the district court did not err in noting that the only remaining issue was the amount of CCC's liability and remanding that issue to the arbitrator.  See Central States Pension Fund v. 888 Corp., 813 F.2d 760, 767 (6th Cir.1987) (where parties dispute the proper amount of employer's withdrawal liability, the issue should be remanded to an arbitrator)."

18

1401(a)(1) that all disputes involving sections 1381 through 1399 of the MPPAA must be arbitrated.

### 5. 29 U.S.C. § 1401(a)(1) vs. 11 U.S.C. § 502(b), et al.

In contrast, the Debtor, Liquidating Trustee, and OCUC do insist that the employer's bankruptcy changes that requirement.  They argue that the arbitration requirement of the MPPAA collides head long and irreconcilably conflicts with the procedure specified for resolving claims filed in bankruptcy cases, and that the former must necessarily yield to the latter.  Indeed 11 U.S.C. § 502(b) provides that if a claim is filed in a bankruptcy case, and an objection to the claim is filed, the bankruptcy court "... shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount...." Id. Moreover, the Supreme Court, "has long recognized that a chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period, and that provision for summary disposition, without regard to usual modes of trial attended by some necessary delay, is one of the means chosen by Congress to effectuate that purpose."  Katchen v. Landy, 382 U.S. 323, 328-329 (1966)(internal quotation marks and citations omitted).  "It is equally clear that the expressly granted power to 'allow,' 'disallow' and 'reconsider' claims, [now embodied in 11 U.S.C. § 502], which is of basic importance in the administration of a bankruptcy estate, is to be exercised in summary proceedings and not by the slower and more expensive processes of a plenary suit."  Id. at 329 (internal quotation marks and citations omitted)(parenthetical added).  "This power to allow or to disallow claims includes full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based. This is essential to the performance of the duties imposed upon [the bankruptcy court]." Id.  (internal quotation marks and citations omitted)(parenthetical added).  "The trustee is enjoined to examine all claims and to present his objections ... and when objections are made, the court is duty bound to pass on them."  Id.  (internal quotation marks and citations omitted).

Indeed, there appears to be a conflict between 29 U.S.C. § 1401(a)(1), which requires disputes over the existence and amount of withdrawal liability to be determined in arbitration proceedings and 11 U.S.C. § 502, which requires the bankruptcy court to hear objections to claims, ostensibly including claims for withdrawal liability filed in a bankruptcy case.[7]

_____

[7] A bankruptcy court derives its power from:

(1)  28 U.S.C.A. § 1334(b), which provides the district courts with original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to bankruptcy by way of;

### 6.  Electric Machinery and McMahon:
### the Federal Arbitration Act cases

What then is the proper test for ascertaining Congressional intent when the command of one federal statute directly conflicts with the command of another?  The Eleventh Circuit Court of Appeals addressed a very similar situation involving conflict between the bankruptcy code and another federal statute mandating arbitration in other situations.  In The Whiting-Turner Contracting Co. v. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises, Inc.), 479 F.3d 791 (11th Cir. 2007), a subcontractor in Chapter 11 filed an adversary proceeding to compel turnover of money that it was allegedly owed by its general contractor.  The general contractor moved to compel arbitration pursuant to an arbitration agreement between the parties.  The bankruptcy court denied the motion based on conclusions that: (a) the general contractor was holding the money in constructive trust for the debtor; (b) it had jurisdiction over the res of the constructive trust; and (c) the determination of the amount of the res of the constructive trust was a "core" proceeding.  The district court affirmed that decision.

The Eleventh Circuit reversed.  In doing so, it recognized the clear conflict between the Bankruptcy Code, which empowered the bankruptcy court to hear and decide the issues in the case, and the Federal Arbitration Act ("FAA") which provides that arbitration agreements, "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The court determined that, "The FAA establishes a federal policy favoring arbitration," 479 F.3d at 795, so that a cause of action that arises from another federal statute must be submitted to arbitration if the parties to the action are privy to an agreement which requires disputes between them to be settled through arbitration, "unless Congress has clearly expressed an intention to preclude arbitration of the statutory claim ...."  Id.  And the court said that the burden is on the party opposing arbitration, and demanding that the claim be decided by the court, to prove, "'that Congress intended to preclude a waiver of judicial remedies for [the particular claim] at issue.'"  Id. (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987)).

The court employed a three factor test, first promulgated by the United States Supreme Court in McMahon, to determine whether Congress intended to create an

_____

(2)  28 U.S.C.A. § 157(a), which authorizes the district court to refer all bankruptcy cases, as well as all proceedings arising under title 11, or arising in or related to a bankruptcy case to the bankruptcy judge; and

(3)  28 U.S.C.A. § 157(b)(1), which empowers the bankruptcy judge to hear and determine all core proceedings arising in bankruptcy cases; which expressly includes the allowance or disallowance of claims against the estate.  28 U.S.C.A. § 157(2)(B).

exception to the FAA in the Bankruptcy Code. Those factors are: (1) the text of the statute; (2) the statute's legislative history; and (3) whether there exists an inherent conflict between arbitration and the underlying purposes of the statute. In addition, consideration of those factors must not be colored by any bias against arbitration or preference for judicial determination of issues. The court added, "In applying the McMahon factors, questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Id. at 796 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)(internal quotation marks and citations omitted).

In applying the McMahon factors to the Bankruptcy Code, the court did not find any, "evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code." Id. It therefore proceeded to address the question of, "whether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code." Id.

The bankruptcy court had determined that it was not required to refer the issues involved in the turnover proceeding to arbitration for resolution because the turnover proceeding was, "a core proceeding over which the bankruptcy court had exclusive jurisdiction." Id. The Court of Appeals disagreed and held that regardless of the fact that the bankruptcy court had jurisdiction, even exclusive jurisdiction, over the turnover proceeding, and even if it had been a "core" proceeding, it was still subject to arbitration because the plaintiff had failed to prove, and the bankruptcy court had failed to, "assess whether enforcing the parties' arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." Id. at 799. "Furthermore, even if we were to find that EME's claim against Whiting-Turner constitutes a core proceeding, we find that EME did not sustain its burden under McMahon to demonstrate that Congress intended to limit or prohibit waiver of a judicial forum for the type of claim that EME brought against Whiting-Turner." Id. at 798. "Only if the bankruptcy court actually makes a sufficient finding that enforcing an arbitration agreement would inherently conflict with the Bankruptcy Code does it have the discretion to deny enforcement of the arbitration agreement." Id. at 799. "Therefore, even if this dispute is in fact core, it is still subject to arbitration." Id. (emphasis added).

The Debtor, Liquidating Trustee, and OCUC argue that Electric Machinery is inapplicable because it deals with the FAA and arbitration agreements rather than the MPPAA and statutory mandated arbitration. They also say that no test is required to resolve the conflict between section 1401(a)(1) of the MPPAA and section 502 of the Bankruptcy Code because section 1401(a)(1) has no application to bankruptcy cases and section 502 provides the sole method for liquidating claims in bankruptcy.

It is unnecessary, however, in this case to decide whether arbitration of the Fund's claim, and the Debtor's objection to allowance of that claim, is mandated by McMahon and Electric Machinery, or whether, under the present circumstances, the test enunciated in those cases must be applied to determine whether arbitration of those matters is required or not, or whether MPPAA section 1401(a)(1) trumps

21

Bankruptcy Code section 502(b), or <u>vice versa</u>.  The reason is –  interests of justice plainly indicate that abstention in favor of arbitration is warranted in this case pursuant to 28 U.S.C. § 1334(c)(1).[8]

## B.  INTERESTS OF JUSTICE INDICATE THAT THE FUND'S CLAIM AND THE DEBTOR'S OBJECTION TO IT SHOULD BE ARBITRATED

### 1. Claims allowance is a perfect subject for arbitration

Abstention in this case will serve to accomplish easily and conveniently both the goals and purposes of section 1401(a) of the MPPAA and the goals and purposes of 11 U.S.C. § 502.  In fact, the claims allowance process is the perfect "core" candidate for arbitration.  Arbitration is more or less designed to be a summary proceeding as is the claims allowance process in bankruptcy.  The goal of both is to determine if anything is owed and, if so how much.  In other words, to liquidate the claim.

### 2. A core proceeding is not an impediment because liquidation of claims has historically been permitted to be accomplished in other forums, and in this case, no one has proven that arbitration of the core matter will not in fact offend, disrupt, delay, or impede progression of the bankruptcy case

The Liquidating Trustee, OCUC, and Debtor argue that arbitration will offend, disrupt, or impede the bankruptcy process or case <u>ipso facto</u> because the claims allowance process is a core proceeding.  This Court disagrees. Just because something has been referred to the bankruptcy court to be decided, or the bankruptcy court has been empowered to decide a particular issue, or has been given the duty of liquidating, allowing (or disallowing) claims does not limit the means by which the court may accomplish that objective.  As explained by the Supreme Court in <u>Nathanson v. NLRB</u>, 344 U.S. 25 (1952):

> The bankruptcy court normally supervises the liquidation of claims.  But the rule is not inexorable.  A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation. And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its

---

[8] "Sound judicial policy counsels against deciding complicated legal issues where a clear, principled alternative basis for reaching the same result exists."  <u>TI Federal Credit Union v. DelBonis</u>, 72 F.3d 921, 927 (1st Cir. 1995).

22

hand pending an administrative decision....   It is the Board, not the referee in bankruptcy nor the court, that has been entrusted by Congress with authority to determine what measures will remedy unfair labor practices.

Id. at 30.

Section 1334(c)(1), 28 U.S.C. § 1334(c)(1), provides the means of exercising that sound discretion.  It includes, "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Id.

Furthermore, this Court rejects the argument that a core matter should not be arbitrated simply because it is a core proceeding.  If arbitration of the core matter will not in fact offend, disrupt, delay, or impede progression of the bankruptcy case or administration of the bankruptcy estate then there is no reason for it not to be arbitrated.  Only where arbitration of a claim: (1) will take inordinately longer than the claims allowance process; or (2) will cost the estate inordinately more money than the claims allowance process; or (3) does not involve determinations that a more specialized tribunal can, because of its experience and expertise, make more efficiently and possibly more accurately, will there be a problem.  There is no evidence of these factors in this case.

### 3.  Abstention is warranted because withdrawal liability arbitrators are more qualified to decide MPPAA issues than bankruptcy courts because of superior training, expertise, and experience

Possibly the most important factor to this Court is that the Supreme Court, the Fifth Circuit Court of Appeals, the Federal Circuit Court of Appeals, the Tenth Circuit Court of Appeals, and the Temporary Emergency Court of Appeals have concluded that bankruptcy courts should defer to more specialized tribunals if possible when faced with matters within the expertise of the latter because the latter are more qualified to decide technical issues within the realm of their expertise than are nonspecialized courts which have relatively little or no experience with such issues, i.e., a specialized tribunal is more likely to make the right decisions and accurately mete out a just result. Nathanson v. N.L.R.B., 344 U.S. 25 (1952); Order of Railway Conductors v. Pitney, 326 U.S. 561 (1946); Smith v. Hoboken Railroad Co., 328 U.S. 123 (1946); Gary Aircraft Corp. v. United States (In re Gary Aircraft Corp.), 698 F.2d 775 (5th Cir. 1983); Quality Tooling, Inc. v. United States, 47 F.3d 1569 (Fed. Cir. 1995); United States v. Bagley (In re Murdock Mach. and Engineering Co. of Utah), 990 F.2d 567 (10th Cir. 1993); Kellogg v. United States Department of Energy (In re Compton Corp.), 889 F.2d 1104

Case 09-00634-TOM11    Doc 3090    Filed 09/28/11    Entered 09/28/11 13:57:04    Desc
Main Document      Page 23 of 47

(Em. App. 1989).[9]

In Gary Aircraft Corp., the government filed claims in the bankruptcy case of a debtor based on a contract between the government and the debtor to overhaul airplane engines, and the debtor objected to allowance of those claims. The contract contained a clause that required any dispute arising under the same: first, to be addressed by the contracting officer; second, if either party was displeased with the officer's decision, the case would be heard by the Armed Services Board of Contract Appeals ("ASBCA"); and third, if either party was displeased with the ASBCA's decision, it could take the case to the Court of Claims under the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1976).

The ASBCA was established by statute (41 U.S.C. § 7105(a)(1)), "to decide any appeal from a decision of a contracting officer of the Department of Defense, the Department of the Army, the Department of the Navy, the Department of the Air Force, or the National Aeronautics and Space Administration relative to a contract made by that department or agency." 41 U.S.C. § 7105(e)(1)(A). The matter had proceeded through the contracting officer stage and was set to be heard by the ASBCA when the debtor filed bankruptcy. The government moved to have the matter referred to the ASBCA for resolution. The bankruptcy court denied that request, conducted an extensive hearing on the claims contest, and denied the government's claims. The district court affirmed the bankruptcy court but was reversed by the Fifth Circuit Court of Appeals, which held, "that the bankruptcy court improperly exercised its jurisdiction in liquidating the contract claims and that it should have deferred jurisdiction for the purpose of liquidation to the Armed Services Board of Contract Appeals." 698 F.2d at 776.

In reaching that decision, the court in Gary relied exclusively on its conclusion that bankruptcy courts should defer disputes involving specialized claims which commonly require resolution of technical and complex issues, and are, absent bankruptcy, by virtue of Congressional fiat, required or intended to be decided by tribunals specifically created to decide those issues, to those specialized tribunals because they are more qualified, by virtue of superior expertise and experience, than bankruptcy courts to resolve the same.

In support of that conclusion, the court in Gary opined that the three Supreme Court cases referred to above, namely Nathanson, Order of Railway Conductors, and Smith, represent, "three occasions the Supreme Court has held that bankruptcy jurisdiction should yield to the expertise of an administrative tribunal." Id. at 781. Moreover, it concluded that those cases, "represent a judgment that in a particular class of disputes, judgments committed by Congress to the exclusive expertise of an

---

[9]The same could be said for specialized matters that should be heard by a bankruptcy court.

administrative body, the broad principles of bankruptcy would consistently lead to one particular decision, i.e., the bankruptcy court should defer," Id. at 783, and, if the mechanisms of dispute resolution are not Congressionally mandated (albeit Congressionally created and authorized), "... at least can stand for the general proposition that a bankruptcy court should defer a complicated, technical dispute to a specialized forum." Id.

In Quality Tooling, Inc. v. United States, 47 F.3d 1569 (Fed. Cir. 1995), the court was called on, "to reconcile the jurisdiction of the United States Court of Federal Claims over contract disputes to which the Federal Government is party with the power of the United States District Court, sitting in bankruptcy, to bring all matters affecting the bankrupt's estate into one proceeding." 47 F.3d at 1570-1571. With respect to the matter in dispute, "Congress gave concurrent jurisdiction to both the District Court, under the Bankruptcy Act of 1978 ... and the Court of Federal Claims, under the Contract Disputes Act." Id. In that case, the United States Army contracted with Quality Tooling for the manufacture of parts for a missile system. The Army terminated the contract for alleged default by Quality. Quality brought suit against the government in the Court of Federal Claims pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 609, which purports to make the Court of Federal Claims the exclusive trial court for hearing disputes over government contracts of the nature involved. While the suit was pending, Quality filed a Chapter 11 bankruptcy petition. Quality's contract claim eventually ended up in the district court, sitting in bankruptcy. The government then moved to transfer the dispute back to the Court of Federal Claims. The district court denied the motion on the grounds that it was not required to relinquish jurisdiction over the dispute to the Court of Federal Claims.

The Federal Circuit Court of Appeals reversed on the grounds that the proper question was not whether the district court was required to defer the matter to the Court of Federal Claims, but instead was whether the district court should have exercised its discretion to defer the matter to the Court of Federal Claims. Because the district court's, "memorandum opinion was concerned with whether or not the court could refuse the Government's motion to transfer the case, and gave scant attention to why the court has chosen to refuse the motion," id. at 1580-1581, the case was remanded for the district court to determine whether it should defer to the Court of Federal Claims in light of the precepts enunciated by the Federal Circuit in its decision. "Consequently, we vacate the trial court's denial of the Government's motion to transfer, and remand the case to the District Court for a ruling on whether that court, in light of this opinion, sees fit to retain jurisdiction over Quality's government contract claims." Id. at 1581.

The Quality court concluded that the bankruptcy court, or, as in that case, the district court presiding over a bankruptcy dispute, has the discretion to either hear and decide a dispute over a claim or defer it to a more specialized tribunal that was designed and intended to decide such disputes. "We hold, as did the Tenth Circuit [in United States v. Bagley (In re Murdock Mach. and Engineering Co. of Utah), 990 F.2d 567 (10th Cir. 1993)], that the matter of deferral is committed to the discretion of the

25

district court, which is reviewable for abuse." Id. at 1580 (parenthetical added). However, the exercise of that discretion must be tempered by the caveat, "that 'a bankruptcy court should defer a complicated, technical dispute to a specialized forum.' " Id. (Quoting Gary Aircraft, 698 F.2d at 783). "Government contract law is a specialized, even arcane, field.  In many cases, bankruptcy courts should stay their proceedings while the contractual issues are resolved by the Court of Federal Claims, which is accustomed to the intricacies of government contracts." Id.  The court directed that deference is "preferable," and would be contraindicated only if it, "would cause substantial losses to the creditors of the bankrupt estate" or impede the bankruptcy goal of "providing fair and expeditious relief to creditors." Id.  "It is likely that, by and large, [deference] is preferable.  There may be times, however, when transfer of a relatively straightforward contract claim would cause substantial losses to the creditors of the bankrupt estate, while resolution of the claim would do no harm to the fabric of government contracting law." Id. (parenthetical added).  "If the interest expressed by the Bankruptcy Act in providing fair and expeditious relief to creditors is greater than the interest expressed by the CDA in resolving government contract claims in familiar, and expert, fora, then the district court may, in its discretion, retain jurisdiction over the contract claims." Id.

　　　United States v. Bagley (In re Murdock Mach. and Engineering Co. of Utah), 990 F.2d 567 (10th Cir. 1993) involved a contract between Murdock and the Navy for construction of anti-submarine rocket launchers that was terminated by the Navy for default.  After the contract was terminated, Murdock filed bankruptcy.  The government filed proofs of claims based on Murdock's alleged contract default in the bankruptcy case.  Murdock possessed a cause of action against the government for the Navy's wrongful termination of the contract.  The bankruptcy trustee filed a complaint with the Armed Services Board of Contract Appeals ("ASBCA") based on that cause of action. After trial, the ASBCA ruled that the Navy rightfully terminated the contract and denied the trustee's claims for relief.  The trustee appealed the case to the Federal Circuit, which reversed the ASBCA and remanded the case to the ASBCA for a calculation of the damages owed by the government to Murdock.  Before the ASBCA could rule, the trustee requested the bankruptcy court to disallow the government's claim based on the Federal Circuit's decision.  The government asked the bankruptcy court to abstain from ruling given the pendency of exactly the same issue before the ASBCA.  The bankruptcy court refused on the grounds that it had jurisdiction over the claims and that proper circumstances for deferral to the ASBCA were not present, and, based on the Federal Circuit's ruling, denied the government's claims but left the issue of what damages were owed by the government to the bankruptcy estate for determination by the ASBCA.  The district court affirmed.

　　　The Court of Appeals described the issues on appeal as, "whether the district court erred in not deferring to the Armed Services Board of Contract Appeals (ASBCA) for resolution of claims disputes relating to government contracts that apparently comprise the only asset and unresolved liabilities of Murdock in this long-standing

26

bankruptcy case, and, if deferral was unnecessary, whether the court erroneously denied the government's claims against the bankruptcy estate." 990 F.2d at 568.

While recognizing that a bankruptcy court has the discretion to either resolve a contest of claim or defer litigation of the issues of liability on and amount of a claim to another tribunal, it concluded that such exercise of discretion must be guided by the precept that when a specialized tribunal exists which is designed to resolve, and intended for the purpose of resolving certain types of claims, then a bankruptcy court should usually defer resolution of those claims to those specialized tribunals. "[W]hen jurisdiction over disputed claims is placed by law in a specialized tribunal, we expect that the litigation over the trustee's claims to recovery will be conducted in that forum." Id. at 570. "[W]hen a forum such as the ASBCA exists, which has special expertise applicable to determination of particular claims a creditor has against the bankruptcy estate, the bankruptcy court usually should defer to that forum." Id. at 572. Ultimately, for reasons not relevant to the issues involved herein, the court determined that under the peculiar circumstances of that case, resolution of the issue of whether the bankruptcy court abused its discretion in not deferring the question of the debtor's liability vel non on the claim to the ASBCA was unnecessary.

In Kellogg v. United States Department of Energy (In re Compton Corp.), 889 F.2d 1104 (Em. App. 1989), Compton, a crude oil reseller during the period in which mandatory petroleum price and allocation regulations were in effect, filed Chapter 7 bankruptcy. The Department of Energy (DOE) subsequently issued a proposed remedial order (PRO) requiring Compton to pay $9,000,000, more or less, for alleged crude sale overcharges in violation of certain federal regulations and filed a proof of claim in the bankruptcy case based on that PRO. The trustee filed an objection to the PRO, thereby initiating formal administrative proceedings before the Office of Hearings and Appeals (OHA), as well as a motion in the bankruptcy court to subordinate the DOE's claim and a motion to stay the OHA proceeding. The bankruptcy court granted both motions, and the district court reversed. The trustee appealed. The Temporary Emergency Court of Appeals dismissed the appeal on the grounds that the district court order was not a final, appealable order because it did not finally determine the amount of the DOE's claim. In so holding, it directed the bankruptcy court, on remand from the district court, to defer liquidation of the DOE's claim to the OHA, citing as authority for that directive Nathanson and Gary. "On remand from the district court, an administrative hearing before the OHA is necessary to determine the DOE's claim. Although the bankruptcy court will maintain jurisdiction over the liquidation procedure, it must defer to the OHA for liquidation of the DOE's claim." 889 F.2d at 1107.

The Gary, Quality, Murdock, and Compton cases all relied on Nathanson v. N. L. R. B., 344 U.S. 25 (1952), in which the Supreme Court affirmed the district court's order directing the bankruptcy referee to defer determination of the amount of a claim filed by the National Labor Relations Board for back pay lost by employees on account of an unfair labor practice of the bankrupt to that Board in accordance with the National Labor Relations Act. The Court stated:

27

The trustee claims that the liquidation of the back pay award should not have been referred to the Board. Section 10(c) of the National Labor Relations Act authorizes the Board, once an unfair labor practice has been found, to require, inter alia, the person who committed it to 'take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act.' The fixing of the back pay is one of the functions confided solely to the Board. At the time an order of the Board is enforced the amount of back pay is often not computed. Once an enforcement order issues the Board must work out the details of the back pay that is due and the reinstatement of employees that has been directed. This may be done by negotiation; or it may have to be done in a proceeding before the Board. The computation of the amount due may not be a simple matter. It may require, in addition to the projection of earnings which the employee would have enjoyed had he not been discharged and the computation of actual interim earnings, the determination whether the employee wilfully incurred losses, whether the back pay period should be terminated because of offers of reinstatement or the withdrawal of the employee from the labor market, whether the employee received equivalent employment, and the like. See Phelps Dodge Corp. v. National Labor Relations Board, supra, 313 U.S. at page 190 et seq., 61 S.Ct. at page 850 et seq. Congress made the relation of remedy to policy an administrative matter, subject to limited judicial review, and chose the Board as its agent for the purpose.

The bankruptcy court normally supervises the liquidation of claims. See Gardner v. State of New Jersey, 329 U.S. 565, 573, 67 S.Ct. 467, 471, 91 L.Ed. 504. But the rule is not inexorable. A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation. See Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876. And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision. That was our ruling in Smith v. Hoboken R. R. Warehouse & S.S. Connecting Co., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 and Thompson v. Texas Mexican R. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132, where we directed the reorganization court to await administrative rulings by the Interstate Commerce Commission before adjudicating the controversies before it. Like considerations are relevant here. It is the Board, not the referee in bankruptcy nor the court, that has been entrusted by Congress with authority to determine what measures will remedy the unfair labor practices. We think wise administration therefore demands that the bankruptcy court accommodate itself to the administrative process and refer to the Board the liquidation of the claim, giving the Board a reasonable time for its administrative determination.

28

344 U.S. at 29-30.

Paraphrasing the above, in the present case, the fixing of withdrawal liability "is one of the functions confided solely to the [arbitrator]."  344 U.S. at 29 (parenthetical added).  And, "it is the [arbitrator], not the [bankruptcy court], that has been entrusted by Congress with authority to determine [withdrawal liability]."  Id. at 30 (parentheticals added).  "And [since] the matter in controversy has been entrusted by Congress to an administrative [process for determining and imposing withdrawal liability], the bankruptcy court normally should stay its hand pending [the] decision [of the arbitrator charged with the responsibility of carrying out that process]."  Id. (parentheticals added).  "[W]ise administration therefore [indicates] that the bankruptcy court [should exercise its discretion to] accommodate itself to the [arbitration] process and refer to [arbitration] the liquidation of the claim, giving the [arbitrator] a reasonable time for its administrative determination."  Id. (parentheticals added).

In other words, since Congress wished for withdrawal liability claims to be decided by arbitration, and that wish may be readily accommodated by deferring resolution of the Fund's withdrawal liability claim to arbitration, and there is no evidence or indication in the record that so doing will adversely impact administration of the bankruptcy estate in this case, then this Court should, in accordance with Nathanson, Gary, Quality, Murdock, and Compton, exercise its discretion to abstain from determining and liquidating the Fund's withdrawal liability claim so that such determination and liquidation of said claim may be addressed and accomplished by arbitration.

### 4.  The doctrine of "primary jurisdiction" provides at least analogous support for abstention in this case

Such a determination is also consistent with the more universal doctrine of primary jurisdiction.  "[P]rimary jurisdiction ... is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.  It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling."  Reiter v. Cooper, 507 U.S. 258, 268 (1993)(emphasis added).  The Fifth Circuit Court of Appeals explains how the doctrine operates:

The judge-made doctrine of primary jurisdiction comes into play when a court and an administrative agency have concurrent jurisdiction over the same matter, and no statutory provision coordinates the work of the court and of the agency. The doctrine operates, when applicable, to postpone judicial consideration of a case to administrative determination of important questions involved by an agency with special competence in the area.  It does not defeat the court's jurisdiction over the case, but coordinates the work of the court and the agency by permitting the agency

29

to rule first and giving the court the benefit of the agency's views, see 3 K. Davis Administrative Law Treatise § 19.01 (1958).

Mercury Motor Exp., Inc. v. Brinke, 475 F.2d 1086, 1091-1092 (5th Cir. 1973).

"'[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation.'" Boyes v. Shell Oil Products Co., 199 F.3d 1260, 1266 (11th Cir. 2000)(quoting County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1310 (2nd Cir. 1990)(emphasis added). "[R]ecently the expert and specialized knowledge of agencies involved has been particularly stressed [as the reason for the doctrine]." Mercury Motor Exp., Inc. v. Brinke, 475 F.2d at 1092. "Similarly, primary jurisdiction reference is favored when the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar." Id. "It is a discretionary tool of the courts, a flexible concept to integrate the regulatory functions of agencies into the judicial decision making process by having agencies pass in the first instance on technical questions of fact uniquely within the agency's expertise and experience, or in cases whose referral is necessary to secure uniformity and consistency in the regulation of business, such as issues requiring the exercise of administrative discretion." Columbia Gas Transmission Corp. v. Allied Chemical Corp., 652 F.2d 503, 519 n.14(5th Cir. 1981) (emphasis added) (in action for damages for violation of Natural Gas Act, district court judgment with regard to payback of diversions occurring prior to December 1, 1978, would be remanded to the district court with instructions to refer the question to the Federal Energy Regulatory Commission under the doctrine of primary jurisdiction).

"This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined." Watts v. Missouri-Kansas-Texas R. Co., 383 F.2d 571, 582 (5th Cir. 1967)(in class action by holders of subordinated income debentures of railroad company against railroad company to recover interest, district court was required to refer questions concerning accounting procedures used by railroad to Interstate Commerce Commission pursuant to primary jurisdiction doctrine)(quoting Far East Conference v. United States, 342 U.S. 570, 574 (1952)). "It is undoubtedly an implied aspect of the statutory purpose that a specialized administrative tribunal has been created to deal with problems in a certain area; statutes setting up agencies may be assumed to focus the solution of the problem in terms of the development of special competence." Id. at 583 (quoting Jaffe, Primary Jurisdiction, 77 Harvard L. Rev. 1037, 1041 (1964)).

Since the courts treat the MPPAA arbitration process as an exhaustion of administrative remedies requirement, it stands to reason that the doctrine of primary jurisdiction, applicable to matters cognizant before administrative agencies, at least provides substantial analogous support for the proposition that withdrawal claims in bankruptcy should be referred to arbitration when practical because of the special competence and expertise of MPPAA arbitrators in resolving issues presented by those claims.

**5.  Referring the present matter to arbitration will also serve the important policy of conserving judicial resources**

**a.  Conserving judicial resources is a primary goal of 29 U.S.C. § 1401(a)(1) and 28 U.S.C. § 1334(c)(1)**

Conserving judicial resources is one of the primary goals sought to be achieved by both section 1401(a)(1) of the MPPAA, as indicated by the cases cited before herein, and section 1334(c)(1) of title 28, as indicated by the following cited cases. Collins & Aikman Litigation Trust v. Detkowski (In re Collins & Aikman Corp.), 2009 WL 1469630, *1 (E.D. Mich. 2009); Beane v. United States (In re Beane), 404 B.R. 942, 948-949 (M.D. Fla. 2008); Estate of KDC, Inc. ex rel. McNeilly v. Kraklow, 368 B.R. 769, 784 (W.D. Wis. 2007); Master-Halco, Inc. v. D'Angelo, 351 B.R. 267, 772 (D. Conn. 2006); In re Compact Disc Minimum Advertised Price Antitrust Litigation, 456 F. Supp. 2d 131, 161 (D. Me. 2006); In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 511 F. Supp. 2d 742, 765 (S.D. Tex. 2005); In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 314 B.R. 354, 359 (S.D. Tex. 2004); In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 341 F. Supp. 2d 386, 412 (S.D.N.Y. 2004), rev'd on other grounds, 488 F.3d 112 (2nd Cir. 2007); Rahl v. Bande, 316 B.R. 127, 135 (S.D.N.Y. 2004); Transamerica Financial Life Ins. Co. v. Merrill Lynch & Co., Inc., 302 B.R. 620, 629 (N.D. Iowa 2003); In re WorldCom, Inc. Securities Litigation, 293 B.R. 308, 332 (S.D.N.Y. 2003); In re Adelphia Communications Corp. Securities and Derivative Litigation, 2003 WL 23018802, *3 (S.D.N.Y. 2003); Clegg v. Bristol-Myers Squibb Co., 285 B.R. 23, 37 (M.D. Fla. 2002); Abner v. Mate Creek Loading, Inc. (In re Mid-Atlantic Resources Corp.), 283 B.R. 176, 191 (S.D. W. Va. 2002); Retirement Systems of Alabama v. Merrill Lynch & Co., 209 F. Supp. 2d 1257, 1269-1270 (M.D. Ala. 2002); Blanton v. IMN Financial Corp., 260 B.R. 257, 265 (M.D.N.C. 2001); Mann v. Waste Management of Ohio, Inc., 253 B.R. 211, 215 (N.D. Ohio 2000); Medical Laboratory Consultants v. American Broadcasting Companies, Inc. (In re Medical Laboratory Management Consultants), 931 F. Supp. 1487, 1493 (D. Ariz. 1996); Gibbons v. Stemcor U.S.A., Inc. (In re B.S. Livingston & Co., Inc.), 186 B.R. 841, 862 (D.N.J. 1995); Marine Iron & Shipbuilding Co. v. City of Duluth (In re Marine Iron & Shipbuilding Co.), 104 B.R. 976, 988 (D. Minn. 1989); Western Helicopters, Inc. v. Hiller Aviation, Inc., 97 B.R. 1, 6 (E.D. Cal. 1988); Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.), 452 B.R. 64, 84 (Bankr. S.D.N.Y. 2011); Abraham Petroleum Corp. v. Hassan & Sons Corp. (In re Abraham Petroleum Corp.), 447 B.R. 412, 418 (Bankr. D.C.P.R. 2011); L. Ardan Development Corp. v. Touhey (In re Newell), 424 B.R. 730, 737 (Bankr. E.D.N.C. 2010); Lewis v. Lewis (In re Lewis), 423 B.R. 742, 754 (Bankr. W.D. Mich. 2010); Gradco Corp. v. Blankenship (In re Blankenship), 408 B.R. 854, 861 (Bankr. N.D. Ala. 2009); New Jersey Lawyers' Fund for Client Protection v. Fornaro (In re Fornaro), 402 B.R. 104, 108 (Bankr. D.N.J. 2009); Schwab v. Beneficial Consumer Discount Co. (In re Bowler), 397 B.R. 737, 739 (Bankr. M.D. Pa. 2008);

31

Smith v. McLeskey (In re Bay Vista of Virginia, Inc.), 394 B.R. 820, 845 (Bankr. E.D. Va. 2008); Domenico v. Hooser (In re Domenico, 2008 WL 5157751, *2 (Bankr. D.N.M. 2008); Official Unsecured Creditors' Committee v. Cohen (In re Hearthside Baking Co., Inc.), 391 B.R. 807, 818 (Bankr. N.D. Ill. 2008); Raven II Holdings, LLC v. Quest Title Co. (In re W.S.F.-World Sports Fans, LLC), 367 B.R. 786, 791 (Bankr. D.N.M. 2007); Federalpha Steel LLC Creditors' Trust v. Federal Pipe & Steel Corp. (In re Federalpha Steel LLC), 341 B.R. 872, 883 (Bankr. N.D. Ill. 2006); In re Aerovias Nacionales De Colombia S.A. Avianca, 345 B.R. 120, 124 (Bankr. S.D.N.Y. 2006); Oakwood Acceptance Corp. v. Tsinigini (In re Oakwood Acceptance Corp.), 308 B.R. 81, 88 (Bankr. D.N.M. 2004); Armstrong v. Trans–Service Logistics, Inc. (In re Trans-Service Logistics, Inc.), 304 B.R. 809, 814 (Bankr. S.D. Ohio. 2004); Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc. (In re Mid-Atlantic Handling Systems, LLC), 304 B.R. 111, 130-131 (Bankr. D.N.J. 2003); Kepley Broscious, PLC v. Ahearn (In re Ahearn), 318 B.R. 638, 644 (Bankr. E.D. Va. 2003); Frelin v. Oakwood Homes Corp., 292 B.R. 369, 385-386 (Bankr. E.D. Ark. 2003); In re Strano, 248 B.R. 493, 504 (Bankr. D.N.J. 2000); Farmers Bank and Capital Trust Co. v. Travel Professionals Intern. of Scott County, Inc. (In re Travel Professionals Intern. of Scott County, Inc.), 213 B.R. 669, 672 (Bankr. E.D. Ky. 1997); St. Vincent's Hospital v. Norrell (In re Norrell), 198 B.R. 987, 997 (Bankr. N.D. Ala. 1996); Royal v. Daihatsu (In re Royal), 197 B.R. 341 (Bankr. N.D. Ala. 1996); Roddam v. Metro Loans, Inc. (In re Roddam), 193 B.R. 971, 975-976 (Bankr. N.D. Ala. 1996); Samson v. Prokopf (In re Smith), 185 B.R. 285, 297 (Bankr. S.D. Ill. 1995); In re 72nd Street Realty Associates, 185 B.R. 460, 475 (Bankr. S.D.N.Y. 1995); Clayter v. Larkin (In re Clayter), 174 B.R. 134, 143 (Bankr. D. Kan. 1994); Ven–Mar of Indian River, Inc. v. Hancock (In re Ven-Mar Intern., Inc.), 166 B.R. 191, 193 (Bankr. S.D. Fla. 1994); Milford Group, Inc. v. Northeastern Bank of Pennsylvania (In re Milford Group, Inc.), 164 B.R. 892, 898 (Bankr. M.D. Pa. 1993); Brown v. Davis (In re Davis), 172 B.R. 696, 700 (Bankr. S.D. Ga. 1993); Hackeling v. Rael Automatic Sprinkler Co. (In re Luis Elec. Contracting Corp.), 165 B.R. 358, 368 (Bankr. E.D.N.Y. 1992); In re Owen-Johnson, 115 B.R. 254, 257-258 (Bankr. S.D. Cal. 1990); Hillsborough Holdings Corp. v. Celotex Corp. (In re Hillsborough Holdings Corp.), 123 B.R. 1004, 1013 (Bankr. M.D. Fla. 1990); In re Huddleston, 107 B.R. 102, 103-104 (Bankr. E.D. La. 1989); Levovitz v. Verrazano Holding Corp. (In re Verrazano Holding Corp.), 86 B.R. 755, 763-764 (Bankr. E.D.N.Y. 1988); In re World Financial Services Center, Inc., 81 B.R. 33, 39 (Bankr. S.D. Cal. 1987); Earle Industries, Inc. v. Circuit Engineering, Inc. (In re Earle Industries, Inc.), 72 B.R. 131, 134 (Bankr. E.D. Pa. 1987); Stubbs v. Ralston Purina Co. (In re Southern of Rocky Mount, Inc.), 36 B.R. 175, 178 (Bankr. E.D.N.C. 1983); In re Peckinpaugh, 24 B.R. 99, 100 (Bankr. N.D. Ohio. 1982); American Druggists' Insurance Co. v. CPM-Builders, Inc. (In re International House of Pancakes, Inc.), 22 B.R. 926, 929 (Bankr. N.D. Ill. 1982); Diego v. Zamost (In re Zamost), 7 B.R. 859, 862-863 (Bankr. S.D. Cal. 1980).

Case 09-00634-TOM11    Doc 3090    Filed 09/28/11    Entered 09/28/11 13:57:04    Desc
Main Document    Page 32 of 47

## b.  Judicial economy is a factor in
## resolving other bankruptcy issues

In addition, judicial economy is an important consideration in the resolution of other jurisdictional and procedural issues which arise in bankruptcy cases.  Nelson v. Welch (In re Repository Technologies, Inc.), 601 F.3d 710, 724 (7th Cir. 2010)(deciding whether to exercise supplemental jurisdiction); Vacation Village, Inc. v. Clark County, Nev., 497 F.3d 902, 914 (9th Cir. 2007)(withdrawal of reference); Internal Revenue Service v. Luongo (In re Luongo), 259 F.3d 323 (5th Cir.  2001)(deciding whether to abstain from determining tax liability pursuant to 11 U.S.C. § 505(a)(1)); Chapman v. Currie Motors, Inc., 65 F.3d 78, 80-81 (7th Cir. 1995)(determining proper disposition of adversary proceeding that is not yet concluded when the bankruptcy case has come to an end); Security Farms v. International Broth. of Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1008 (9th Cir. 1997)(withdrawal of reference); Benedor Corp. v. Conejo Enterprises, Inc. (In re Conejo Enterprises, Inc.), 96 F.3d 346, 353 (9th Cir. 1996)(deciding whether to allow creditor relief from the stay to pursue state court contract action); Quality Tooling, Inc. v. United States, 47 F.3d 1569, 1578 (Fed. Cir. 1995)(deciding whether debtor government contractor's breach-of-contract claims against federal government should be heard by district court or by Court of Federal Claims); Porges v. Gruntal & Co. (In re Porges), 44 F.3d 159, 162-163 (2nd Cir. 1995)(deciding whether to dismiss adversary proceeding following dismissal of underlying bankruptcy case or to continue to exercise jurisdiction over and litigate claims involved in the adversary proceeding); In re Querner, 7 F.3d 1199, 1202 (5th Cir. 1993)(deciding whether bankruptcy court should retain jurisdiction over related matters after the underlying bankruptcy case is closed); Miller Resources, Inc. v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 787 (11th Cir. 1990)(in discerning the scope of 28 U.S.C. § 1334(b));  Smith v. Commercial Banking Corp. (In re Smith), 866 F.2d 576, 580 (3rd Cir. 1989)(in determining whether bankruptcy court properly retained jurisdiction over related claims after termination of bankruptcy proceeding); In re Peanut Corp. of America, 407 B.R. 862, 865 (W.D. Va. 2009)(withdrawal of reference); Adams v. Insurance Co. of North America, 426 F. Supp. 2d 356, 381 (S.D.W. Va. 2006) (remand); Board of Trustees of Teachers' Retirement System of State of Illinois v. Worldcom, Inc., 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002)(stay of proceedings pending transfer decision by Judicial Panel on Multidistrict Litigation); In re Asbestos Litigation, 271 B.R. 118, 125 (S.D.W. Va. 2001)(remand pursuant to 28 U.S.C. § 1452(b)); Segal v. Trans World Airlines, Inc., 63 F. Supp. 2d 373, 381 (S.D.N.Y. 1999)(denying Rule 60(b) motion to vacate the order of a bankruptcy court of another judicial district); Hickox v. Leeward Isles Resorts, Ltd., 224 B.R. 533, 539 (S.D.N.Y. 1998)(referral of related proceedings by district court to bankruptcy court); Shapiro v. United States (In re Shapiro), 188 B.R. 140, 150 (Bankr. E.D. Pa. 1995)(section 505 abstention); Durso Supermarkets, Inc. v. D'urso (In re Durso Supermarkets, Inc.), 170 B.R. 211, 214 (S.D.N.Y. 1994)(withdrawal of reference); Scherer v. Carroll, 150 B.R. 549, 552 (D. Vt. 1993)("In the interests of judicial economy, it is no longer appropriate for a Bankruptcy Court to recommend findings of fact and conclusions of law to the District Court on [issues of remand and abstention]."); Da Silva v. American Sav., 145 B.R. 9, 12 (S.D.

33

Tex. 1992)(remand); Baxter Healthcare Corp. v. Hemex Liquidation Trust, 132 B.R. 863, 867-868 (N.D. Ill. 1991)(remand); Sullivan v. Maryland Casualty Co. (In re Ramex Intern., Inc.), 91 B.R. 313 (E.D. Pa. 1988)(withdrawal of reference); Global Intern. Airways Corp. v. Pan American World Airways, Inc. (In re Global Intern. Airways Corp.), 75 B.R. 804, 808 (W.D. Mo. 1987)(withdrawal of reference); Wood v. Wood (In re Wood), 84 B.R. 432, 434 (S.D. Miss. 1988)(district court could adjudicate abstention issues on behalf of bankruptcy court where judicial economy would best be served); Earl Realty, Inc. v. Leonetti (In re Leonetti), 28 B.R. 1003, 1008 (E.D. Pa. 1983)(in the interests of judicial economy, district court would treat notice of appeal from interlocutory order of the bankruptcy court as an application for leave to appeal); Legal Xtranet, Inc. v. AT&T Management Services, L.P. (In re Legal Xtranet, Inc.), 2011 WL 2038599, *4 (Bankr. W.D. Tex. 2011)("related to" jurisdiction is broadly conferred so as to avoid the inefficiencies of piecemeal adjudication and promote judicial economy); Goins v. Department of Treasury Internal Service (In re Goins), 437 B.R. 372, 375 (Bankr. E.D. Mo. 2010)(deciding whether to abstain from determining tax liability pursuant to 11 U.S.C. § 505(a)(1)); Cooper v. BB Syndication Services, Inc. (In re 222 South Caldwell Street, Ltd. Partnership), 409 B.R. 770, 786 (Bankr. W.D.N.C. 2009)(deciding whether to exercise pendent jurisdiction); Latin American Roller Co. v. Cooperativa De Seguros Multiples De Puerto Rico (In re Latin American Roller Co.), 412 B.R. 15, 23 (Bankr. D.C.P.R. 2009)(withdrawal of reference); In re Gilliam, 428 B.R. 656, 660 (Bankr. D.S.C. 2008)(section 505 abstention); Dees v. United States (In re Dees), 369 B.R. 676, 678 (Bankr. N.D. Fla. 2007)(section 505 abstention); Kopp v. United States (In re Kopp), 355 B.R. 296, 300 (Bankr. N.D. Okla. 2006)(section 505 abstention); C & B, L.L.C. v. Grubbs Emergency Services, Inc. (In re Grubbs Const. Co.), 305 B.R. 476, 483 (Bankr. W.D. Ark. 2003)(remand); St. Vincent's Hospital v. Norrell (In re Norrell), 198 B.R. 987, 997 (Bankr. N.D. Ala. 1996)(remand); Royal v. Daihatsu (In re Royal), 197 B.R. 341, 349 (Bankr. N.D. Ala. 1996)(remand); Roddam v. Metro Loans, Inc. (In re Roddam), 193 B.R. 971, 975-976 (Bankr. N.D. Ala. 1996)(remand); 19 Court Street Associates, LLC v. Resolution Trust Corp. (In re 19 Court Street Associates, LLC), 190 B.R. 983, 1000 (Bankr. S.D.N.Y. 1996)(judicial economy part of policy behind claims and issue preclusion doctrines); Boyajian v. DeLuca (In re Remington Development Group, Inc.), 180 B.R. 365, 374 (Bankr. D.R.I. 1995)(judicial economy has a strong influence on decisions relating to how and where matters are brought to trial); Thomas v. Chrysler Credit Corp. (In re Ozier), 132 B.R. 595, 597 (Bankr. E.D. Ark. 1991)(referral to district court); Petrolia Corp. v. Elam (In re Petrolia Corp.), 79 B.R. 686, 694 (Bankr. E.D. Mich. 1987)(determining whether to exercise ancillary jurisdiction).

### c. Judicial economy is also a factor in non-bankruptcy abstention

Furthermore, judicial economy is likewise a cornerstone consideration in non-bankruptcy abstention situations. Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 237 (1984)(abstention pursuant to Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)); National City Mortg. Co. v. Stephen, 647 F.3d 78, 83 (3rd Cir.

34

2011)(**abstention** under <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800(1976) where the presence of concurrent state proceedings may indicate that a district court should **abstain** from the contemporaneous exercise of concurrent jurisdiction); <u>Interface Partners Intern. Ltd. v. Hananel</u>, 575 F.3d 97, 106 (1st Cir. 2009)(international abstention in favor of parallel proceeding pending in foreign court); <u>Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299, 309 (3rd Cir. 2009)(<u>Colorado River</u> abstention); <u>Belize Telecom, Ltd. v. Government of Belize</u>, 528 F.3d 1298, 1305 (11th Cir. 2008)(international abstention in favor of parallel proceeding pending in foreign court); <u>Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.</u>, 466 F.3d 88, 94 (2nd Cir. 2006)(international abstention in favor of parallel proceeding pending in foreign court); <u>Tyrer v. City of South Beloit, Ill.</u>, 456 F.3d 744, 756 (7th Cir. 2006)(<u>Colorado River</u> abstention); <u>Chase Brexton Health Services, Inc. v. Maryland</u>, 411 F.3d 457, 463 (4th Cir. 2005)(<u>Colorado River</u> abstention); <u>Clark v. Lacy</u>, 376 F.3d 682, 688 (7th Cir. 2004)(<u>Colorado River</u> abstention); <u>Moorer v. Demopolis Waterworks and Sewer Bd.</u>, 374 F.3d 994, 997 (11th Cir. 2004)(<u>Colorado River</u> abstention); <u>Dow Agrosciences LLC v. Bates</u>, 332 F.3d 323, 327 (5th Cir. 2003) (abstention from hearing declaratory judgment action), <u>rev'd on other grounds</u>, 544 U.S. 431 (2005); <u>Holder v. Holder</u>, 305 F.3d 854, 867 (9th Cir. 2002)(<u>Colorado River</u> abstention); <u>Vulcan Chemical Technologies, Inc. v. Barker</u>, 297 F.3d 332, 341 (4th Cir. 2002)(<u>Colorado River</u> abstention); <u>AAR Intern., Inc. v. Nimelias Enterprises S.A.</u>, 250 F.3d 510, 517 (7th Cir. 2001)(<u>Colorado River</u> abstention); <u>Woodford v. Community Action Agency of Greene County, Inc.</u>, 239 F.3d 517, 522 (2nd Cir. 2001)(<u>Colorado River</u> abstention); <u>Black Sea Inv., Ltd. v. United Heritage Corp.</u>, 204 F.3d 647, 650 (5th Cir. 2000)(<u>Colorado River</u> abstention); <u>Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.</u>, 180 F.3d 896, 898 (7th Cir. 1999)(international abstention in favor of parallel proceeding pending in foreign court); <u>Murphy v. Uncle Ben's, Inc.</u>, 168 F.3d 734, 738 (5th Cir. 1999)(<u>Colorado River</u> abstention); <u>United States v. Hill</u>, 167 F.3d 1055 (6th Cir. 1999)(considerations of **judicial economy** involved in abstention from hearing appeal pursuant to <u>Railroad Comm'n of Texas v. Pullman</u>, 312 U.S. 496 (1941)); <u>Rienhardt v. Kelly</u>, 164 F.3d 1296, 1303 (9th Cir. 1999)(<u>Colorado River</u> abstention); <u>Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.</u>, 149 F.3d 371, 373 (5th Cir. 1998)(abstention from hearing declaratory judgment action); <u>Dittmer v. County of Suffolk</u>, 146 F.3d 113, 117 (2nd Cir. 1998)(<u>Colorado River</u> abstention); <u>Ryan v. Johnson</u>, 115 F.3d 193, 195 (3rd Cir. 1997)(<u>Colorado River</u> abstention); <u>Burnett v. Physician's Online, Inc.</u>, 99 F.3d 72, 76 (2nd Cir. 1996)(<u>Colorado River</u> abstention); <u>Starzenski v. City of Elkhart</u>, 87 F.3d 872, 878 (7th Cir. 1996)(<u>Colorado River</u> abstention); <u>Fulton Cogeneration Associates v. Niagara Mohawk Power Corp.</u>, 84 F.3d 91, 96 (2nd Cir. 1996)(<u>Colorado River</u> abstention); <u>In re Joint Eastern and Southern Dist. Asbestos Litigation</u>, 78 F.3d 764, 775 (2nd Cir. 1996)(abstention from hearing declaratory judgment action); <u>Allen v. Board of Educ., Unified School Dist. 436</u>, 68 F.3d 401, 403 (9th Cir. 1995)(<u>Colorado River</u> abstention); <u>Pittsburg & Midway Coal Min. Co. v. Watchman</u>, 52 F.3d 1531, 1538 (9th Cir. 1995)(abstention pursuant to tribal **abstention** doctrine); <u>Wolfson v. Mutual Ben. Life Ins. Co.</u>, 51 F.3d 141, 145 (8th Cir. 1995)(<u>Colorado River</u> abstention); <u>O'Neill v. United States</u>, 50 F.3d 677, 688 (9th Cir.

1995)(abstention in favor of another federal district court); Turner Entertainment Co. v. Degeto Film GmbH, 25 F.3d 1512, 1518 (11th Cir. 1994)(international abstention); Snap-on Tools Corp. v. Mason, 18 F.3d 1261, 1264 (5th Cir. 1994)(Colorado River abstention); Grode v. Mutual Fire, Marine and Inland Ins. Co., 8 F.3d 953, 958 (3rd Cir. 1993)(determining propriety of abstention pursuant to Colorado River, Younger, Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959), Railroad Commissioner v. Pullman Co., 312 U.S. 496 (1941), and Burford v. Sun Oil Co., 319 U.S. 315 (1943)); Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc., 996 F.2d 774, 778-779 (5th Cir. 1993)(abstention from hearing declaratory judgment action); El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 497 (1st Cir. 1992)(abstention from hearing declaratory judgment action); American Disposal Services, Inc. v. O'Brien, 839 F.2d 84, 87 (2nd Cir. 1988)(Colorado River abstention); Allen v. Louisiana State Bd. of Dentistry, 835 F.2d 100, 104 (5th Cir. 1988)(Colorado River abstention); Airlines Reporting Corp. v. Barry, 825 F.2d 1220, 1225 (8th Cir. 1987)(determining propriety of abstention pursuant to Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987)); Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 327 (2nd Cir. 1986)(Colorado River abstention); Crawley v. Hamilton County Com'rs, 744 F.2d 28, 30 (6th Cir. 1984)(Colorado River abstention); United States v. Adair, 723 F.2d 1394, 1404 (9th Cir. 1983)(Colorado River abstention); Muir v. Alabama Educational Television Commission, 656 F.2d 1012, 1015 n.1 (5th Cir. 1981)(abstention to administrative agency); Central Ave. News, Inc. v. City of Minot, N. D., 651 F.2d 565, 567 (8th Cir. 1981)(Younger abstention); First Federal Sav. and Loan Ass'n of Boston v. Greenwald, 591 F.2d 417, 425 (1st Cir. 1979)(abstention from hearing declaratory judgment action); State of Nebraska, ex rel. Wagner v. J.A. Jones Construction Co. (In re Amwest Sur. Ins. Co.), 245 F. Supp. 2d 1038, 1048 (D. Neb. 2002)(Colorado River and Burford abstention); Rowland v. Novus Financial Corp., 949 F. Supp. 1447, 1456-1457 (D. Haw. 1996)(Colorado River and Younger abstention); Todd v. Richmond, 853 F. Supp. 1309, 1315 (D. Kan. 1994)(Burford abstention).

### d. Judicial economy factors in other areas of federal jurisprudence

And finally, judicial economy is an important consideration in many other areas of jurisdictional and procedural federal jurisprudence, and a basic objective sought to be achieved by many statutory enactments. Ashcroft v. al-Kidd, ___ U.S. ___, 131 S. Ct. 2074, 2080 (2011)(courts should think carefully before expending scarce **judicial resources** to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case); Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 780 (2011)(**judicial resources** are diminished and misspent where in reviewing petitions for writ of habeas corpus there is judicial disregard for the sound and established principles that inform its proper issuance); Puckett v. United States, ---- U.S. ----, 129 S.Ct. 1423, 1429 (2009)("plain error" rule, Fed. R. Crim. P. 51(b), strikes careful balance between **judicial efficiency** and redress of injustice); Will v. Hallock, 546 U.S. 345, 349-350 (2006)(28 U.S.C. § 1291, which

36

gives Courts of Appeals jurisdiction over all final decisions of district courts that are not directly appealable to the Supreme Court, is meant to further **judicial efficiency)**; Arizona v. California, 530 U.S. 392, 412-413 (2000)(where no **judicial resources** have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar sua sponte); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 586 (1999)(concerns of **judicial economy** effect district court's decision on whether to consider personal jurisdiction issues or motion to remand a removed action first); City of Chicago v. International College of Surgeons, 522 U.S. 156, 173 (1997)(when deciding whether to exercise supplemental jurisdiction, federal court should consider and weigh in each case, and at every stage of litigation, the values of **judicial economy**, convenience, fairness, and comity); Stutson v. U.S., 516 U.S. 193, 197 (1996)(judicial **efficiency** and finality are important values so Supreme Court's power to grant petition for certiorari, vacate judgment below, and remand case for further consideration should not be exercised for mere convenience); Stone v. I.N.S., 514 U.S. 386, 398-399 (1995)(considerations of administrative and **judicial efficiency** and fairness to alien supported conclusion that Congress intended to depart from conventional tolling rule in deportation matters); Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 230 (1993)(Supreme Court will review sufficiency of the evidence when issue is properly before it and benefits of providing guidance concerning proper application of legal standard and avoiding systematic costs associated with further proceedings justify required expenditure of **judicial resources)**; McCarthy v. Madigan, 503 U.S. 140, 144-145 (1992)(the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts serves the twin purposes of protecting administrative agency authority and promoting **judicial efficiency**); Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818-819 (1988)(Courts of Appeals, in cases involving controverted transfers from one district court to another, should seek quick resolution of underlying jurisdictional disputes by adhering strictly to principles of law of the case in situations in which the jurisdiction of the transferee court is plausible, in order to avoid squandering private and public resources and "wasting" the Supreme Court's calendar by keeping it occupied with the resolution of fact-specific jurisdictional disputes that lack national importance); Bankers Life and Cas. Co. v. Crenshaw, 486 U.S. 71, 81-82 (1988)(Mississippi statute which required unsuccessful appellants from money judgment to pay additional assessment of 15% of judgment was reasonably tailored to achieve state's legitimate objectives of discouraging frivolous appeals, compensating appellees for intangible costs of litigation, and conserving **judicial resources**); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988)(federal court should consider and weigh in each case, and at every stage of litigation, values of **judicial economy**, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over case brought in that court involving pendent state-law claims); Granberry v. Greer, 481 U.S. 129, 134-135 (1987)(when faced with habeas corpus petition, if case presents issues of unresolved question of fact or state law comity and **judicial efficiency** may make it appropriate for appellate court to insist on complete exhaustion even though state has not raised issue of exhaustion until the appellate level); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777-778 (1984)(New Hampshire

37

has substantial interest in cooperating with other states, through "single publication rule," to provide forum for efficiently litigating all issues and damage claims arising out of libel in unitary proceeding, thus reducing potential serious drain of libel cases on **judicial resources**); Allen v. McCurry, 449 U.S. 90, 94 (1980)(res judicata and collateral estoppel conserve judicial resources); Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979)(collateral estoppel, like res judicata, promotes **judicial economy** by preventing needless litigation; offensive collateral estoppel does not promote **judicial economy**); Wooley v. Maynard, 430 U.S. 705, 709-710 (1977)(ordinarily principles of **judicial economy** preclude federal courts from exercising equitable jurisdiction to enjoin ongoing state prosecutions except that when genuine threat of prosecution exists litigant is entitled to resort to federal forum to seek redress for alleged deprivation of federal rights); Aldinger v. Howard, 427 U.S. 1, 18 (1976)(with respect to issue of "pendent party" jurisdiction, where grant of jurisdiction to a federal court is exclusive the argument of judicial economy and convenience can be coupled with the additional argument that only in a federal court may all of the claims be tried together); United States v. Nixon, 418 U.S. 683, 690-691 (1974)(finality requirement of 28 U.S.C. § 1291 relating to appeals to Courts of Appeals from final decisions of district courts ordinarily promotes judicial efficiency and hastens the ultimate termination of litigation); F. D. Rich Co., Inc. v. United States for Use of Indus. Lumber Co., Inc., 417 U.S. 116, 125-126 (1974)(where considerations of **judicial economy** and convenience supported venue in court where all of supplier's claims could be adjudicated in single proceeding, supplier was entitled to bring suit in California under Miller Act, 40 U.S.C.A. § 270b(b) and to include therein claim for money due for shipment which was diverted to South Carolina); Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 435-436 (1974)(statute providing that upon removal of case to federal court all injunctions previously issued shall remain in full force and effect until dissolved or modified by district court, 28 U.S.C.A. § 1450, promotes **judicial economy** by providing that proceedings had in state court shall have force and effect in federal court, so that pleadings filed in state court need not be duplicated in federal court); Allen v. State Bd. of Elections, 393 U.S. 544, 554 (1969)(where facts in declaratory judgment action for determination of constitutionality of Virginia Election Laws were undisputed, Supreme Court would, in interests of **judicial economy**, determine the applicability of the provisions of the law, even though some specific sections were not argued before trial court); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966)(justification for pendent jurisdiction lies in considerations of **judicial economy**, convenience and fairness to litigants); Consolo v. Federal Maritime Commission, 383 U.S. 607, 617 n.14 (1966)(considerations of **judicial economy** and fairness to all parties lie behind doctrine of ancillary jurisdiction and doctrine that intervenor of right may assert cross-claim without independent jurisdictional grounds); Magenau v. Aetna Freight Lines, Inc., 360 U.S. 273, 279 (1959)(in wrongful death action against motor carrier, disputed issues which had not been submitted to jury were so interrelated with ultimate issues of liability and damages that a limited hearing would not be in interests of fairness and **efficiency** in **judicial** administration, and therefore Supreme Court would

38

order that new trial be had on whole case); Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)(wise judicial administration, giving regard to conservation of **judicial resources** and comprehensive disposition of litigation, does not counsel rigid mechanical solution of complicated problems created by Federal Declaratory Judgments Act for coordinate courts); United States v. Lopez, ___ F.3d ___, 2011 WL 3570298, *8 (11th Cir. 2011)(joint trials play a vital role in the criminal justice system and serve important interests such as conserving scarce judicial resources); United States v. Hill, 643 F.3d 807, 828 (11th Cir. 2011)(in determining whether a joint trial is appropriate in criminal case district court must balance prejudice defendant may suffer against public's interest in judicial economy and efficiency); United States v. Hill, 643 F.3d 807, 829 (11th Cir. 2011)(district court in joint criminal trial was justified in interest of efficiency and judicial economy in refusing to give jury curative instruction every time irrelevant evidence was offered where court gave jury a closing instruction that it must consider the evidence separately as to each defendant with respect to each charge); United States v. Siegelman, 640 F.3d 1159, 1188 (11th Cir. 2011)(purpose of rule that a motion for recusal based upon appearance of partiality must be timely made when facts upon which it relies are known is to conserve judicial resources and prevent litigant from waiting until an adverse decision has been handed down before moving to disqualify the judge); Shurick v. Boeing Co., 623 F.3d 1114, 1116 n.2 (11th Cir. 2010)(even though Fed. R. Civ. P 8(c) classifies claim preclusion as affirmative defense, dismissal by court sua sponte on res judicata grounds is permissible in interest of judicial economy where both actions were brought before the same court); Estate of Amergi ex rel. Amergi v. Palestinian Authority, 611 F.3d 1350, 1366 (11th Cir. 2010)(in determining whether to hear a supplemental claim or admit a supplemental party pursuant to 28 U.S.C. § 1367(c), despite power of court to hear such a claim, courts may also consider additional factors including judicial economy); United States v. Jones, 601 F.3d 1247, 1257 (11th Cir. 2010)(where result of balancing test under Speedy Trial Act (18 U.S.C. § 3162(a)(2)) for determining whether to dismiss with or without prejudice is so clear that remand constitutes unnecessary expenditure of judicial resources Court of Appeals should decide issue rather than remand); Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008)(local rule requiring respondent to summary judgment motion to file response to movant's statement of undisputed facts setting forth specific citations to evidence supporting respondent's version of the facts, and providing that in the absence of such specific citations court would deem each of the movant's facts as admitted was valid in that it served to conserve judicial resources); United States v. Campos-Diaz, 472 F.3d 1278, 1280 (11th Cir. 2006)(implementation of fast-track programs for immigration offenses in certain districts did not violate equal protection rights of defendant convicted of illegal reentry after deportation in district which did not employ fast-track program because program was rationally related to legitimate interest of government in conserving prosecutorial and **judicial resources);** Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1170 (11th Cir. 2006)(Court of Appeals has power to consider evidence that parties did not submit in district court when doing so is in the interests of justice and judicial economy); United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006)(in determining whether the defendant has

39

met his burden to show a fair and just reason for withdrawing guilty plea, court should consider whether judicial resources would be conserved).

See also Oliver v. Ralphs Grocery Co., __ F.3d ___, 2011 WL 3607014, *6 (9th Cir. 2011)(considerations of **judicial economy** involved in determining propriety of dismissing pendent state law claims after all federal claims have been dismissed); Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007)(considerations of **judicial economy** involved in determining propriety of dismissal based upon forum non conveniens); Khodara Environmental, Inc. v. Blakey, 376 F.3d 187, 196 (3rd Cir. 2004)(considerations of **judicial economy** involved in applying ripeness doctrine).

### 6. The Fund will suffer unnecessary hardship if arbitration is not permitted

The Fund's withdrawal claim against the Debtor is intertwined with claims it has asserted elsewhere against two other corporate entities, namely "BI-LO" and "Lone Star," who it contends are part of the Debtor's "controlled group," and are consequently jointly and severally liable with the Debtor, and vice versa, for the withdrawal liability which forms the basis of the claim it has filed in this case.  If arbitration is not permitted in this case, the Fund will be forced to litigate its claims against those entities in one or more separate proceedings in addition to having to proceed in this Court against the Debtor.  If arbitration is permitted via abstention, the Fund will be able to litigate all of its claims against the Debtor, BI-LO, and Lone Star in one arbitration proceeding by virtue of an agreement it has reached with the latter two entities.  The opportunity presents itself, therefore, to not only save substantial judicial resources in this court, and to have technical withdrawal liability issues decided by an expert arbitrator, and to honor Congressional intent to have withdrawal liability issues arbitrated, and to provide the parties with an economic and efficient forum and process to resolve their dispute, but also to prevent the Fund from suffering undue hardship.

### 7. Cases which require arbitration of bankruptcy claims support the conclusion that abstention is warranted

In In re Hawley Coal Mining Corp, 5 EBC (BNA) 2680 (S.D.W.V., Dec. 7, 1984), the court concluded that 29 U.S.C. § 1401(a)(1) requires the allowance vel non and liquidation of withdrawal liability claims filed by a pension plan in a bankruptcy case to be determined by an arbitrator, not by the bankruptcy court.  "[P]ursuant to 29 U.S.C. § 1401, the withdrawal liability must be determined by an arbitrator, not by the Bankruptcy Court or this Court...."  Id. at 2681.  "Inasmuch as there is no statutory or common law authority exempting a debtor in bankruptcy from the arbitration process made mandatory by Section 1401, the Court concludes that the Trustees and the debtor coal companies must arbitrate the issue of the debtor coal companies' withdrawal liability under 29 U.S.C. §§ 1301-1451."  Id.

40

Moreover, in In re The Mason and Dixon Lines, Inc., Case No. B-84-00377C-11 (Bankr. M.D.N.C., filed April 9, 1987), the Honorable Rufus W. Reynolds also held that objections filed to withdrawal liability claims must be submitted to arbitration for resolution, stating:

> Notwithstanding the decisions of the bankruptcy Courts in In re T.D.M.A., 66 B.R. 992 (Bankr. E.D. Pa. 1986). and In re Amalgamated Foods. Inc., 41 B.R.616 (Bankr. C.D. Cal. 1984), cited in the response of Central Transport and GLS LeasCo ... [and] the other case law authority set forth in the response, the Court believes that the applicable law is 29 U.S.C. § 1401(a) of MEPPAA.  MEPPAA and the prevailing case law require arbitration of objections to withdrawal liability claims filed in bankruptcy proceedings. Therefore, the Court concludes. as a matter of law. that all disputes of withdrawal liability must be arbitrated pursuant to 29 U.S.C. § 1401(a)(1).

In re The Mason and Dixon Lines, Inc., Case No. B-84-00377C-11, page 5 (Bankr. M.D.N.C., filed April 9, 1987).

Those courts concluded that MPPAA section 1401(a)(1) effectively overrides section 502 of the Bankruptcy Code and mandates that disputes over withdrawal claims filed in bankruptcy cases be referred to arbitration.  It stands to reason they would likewise conclude a fortiori that Congress's desire and intent to have withdrawal liability disputes resolved by arbitration, in order to accomplish the laudable objectives which the MPPAA arbitration requirement was designed to achieve, warrants abstention pursuant to 28 U.S.C. § 1334(c)(1), especially in circumstances where no harm will come to other creditors and administration of the bankruptcy estate would not be disrupted.

### 8.  The Debtor, OCUC, and the Liquidating Trustee disagree

In support of their contentions, the Debtor, OCUC, and Liquidating Trustee have cited cases in which bankruptcy courts have indeed refused to send claims for withdrawal liability to arbitration for liquidation, namely In re Interco Incorporated, 137 B.R. 993 (Bankr. E.D. Mo. 1992); In re T.D.M.A., Inc., 66 B.R. 992 (Bankr. E.D. Pa. 1986); In re Amalgamated Foods, Inc., 41 B.R. 616 (Bankr. C.D. Cal. 1984); and In re Cott Corp., 26 B.R. 332  (Bankr. D. Conn. 1982).  The Court finds those cases to be unpersuasive.

### a.  Interco

Unlike the present case, In re Interco Incorporated, 137 B.R. 993 (Bankr. E.D. Mo. 1992) involved a viable, ongoing reorganization with an operating debtor-in-possession.  The issue in that case was, "whether deferral of [liquidation of the

41

withdrawal claim] to arbitration would unduly delay administration of these bankruptcy cases." Id. at 997 (parenthetical added). Unlike the Debtor, Liquidating Trustee, and OCUC in this case, the debtor-in-possession in Interco presented evidence in the form of testimony of an expert in MPPAA arbitrations who testified that the average time expended on arbitrations in comparable cases was 1.8 years and, then, after the arbitration is completed, if either party appealed, it would require an additional 1 to 2 years. The pension fund presented no evidence to contradict that testimony. The court concluded that a, "lengthy arbitration proceeding [would] adversely affect [the] [d]ebtors' ability to formulate and implement a plan of reorganization and would run the risk of frustrating the entire reorganization case," and, "that permitting estimation of the Fund's claim would prevent piecemeal litigation which would seriously threaten or jeopardize a debtor's ability to reorganize." Id. at 998 (internal quotations marks and citations omitted) (parentheticals added).

In this case, the Debtor no longer exists and no reorganization will take place. There will be no need, therefore, to employ the extra-expedient procedure of estimating the Fund's withdrawal liability claim pursuant to 11 U.S.C. § 502(c) in order to facilitate the Debtor's ability to formulate and implement a plan of reorganization or to avoid the risk of frustrating the reorganization case. Claims estimation is simply not an issue. Consequently, the Interco court's assessment that, "Neither the provisions of ERISA, nor the established case law mandates that the bankruptcy court defer to arbitration the estimation of Debtors' partial withdrawal liability for the purpose of allowance under Section 502," is not relevant to the present case. Id. at 997 (emphasis added).

Furthermore, unlike in Interco, there is no evidence here: (1) of how long arbitration of the Fund's withdrawal liability claim might take; (2) that suggests that arbitration will take longer than liquidation of the claim through the normal claims process; or (3) that suggests that sending the claim to arbitration will adversely affect the Debtor's ability to formulate and implement a plan a fortiori since a simple plan has already been filed requiring only liquidation of remaining assets and distribution of net proceeds to creditor's holding allowed claims.

Moreover, Interco relies in part on three FAA cases ("Other bankruptcy courts have similarly permitted debtors to utilize bankruptcy procedures rather than submit to arbitration. See, e.g., In re Glen Eagle Square, Inc., 1991 WL 71782 (Bankr. E.D. Pa., May 1, 1991); In re J.T. Moran Financial Corp., 118 B.R. 233, 235–236 (Bankr. S.D.N.Y. 1990); In re Chas. P. Young Co., 111 B.R. 410 (Bankr. S.D.N.Y. 1990)."). The parties in this case opposing arbitration suggest McMahon and Electric Machinery are not controlling because they are FAA cases, but that Interco is controlling even though it relies on FAA cases to support its decision.

### b. T.D.M.A., Amalgamated, and Cott

The parties opposing arbitration in this case also cite In re T.D.M.A., Inc., 66 B.R. 992 (Bankr. E.D. Pa. 1986); In re Amalgamated Foods, Inc., 41 B.R. 616 (Bankr. C.D.

42

Cal. 1984), and <u>In re Cott Corp.</u>, 26 B.R. 332 (Bankr. D. Conn. 1982). While these cases are factually closer to the present situation, they are also unpersuasive. All three of those decisions involved liquidating chapter 11 cases; however, all three were decided prior to <u>McMahon</u>, so that the judges in those cases did not have the benefit of the emphatic endorsement of the federal policy favoring arbitration found in that case or its revelation of the proper test to employ when two ostensibly exclusive federal statues come into direct conflict with one another.

By way of background, the courts in <u>T.D.M.A.</u> and <u>Amalgamated</u> would disagree with this Court's analysis by recognizing that the bankruptcy claims process is preeminently more expeditious and economical than the arbitration process otherwise mandated for the resolution of MPPAA withdrawal liability disputes. Or if not more expeditious and economical then at least as expeditious and economical, placing the burden on the proponent of arbitration to prove otherwise. "A concern that is pervasive throughout the Bankruptcy Code is that of a speedy resolution of the bankruptcy proceedings." <u>T.D.M.A.</u>, 66 B.R. at 996. " 'The economic fragility of the bankrupt's estate, the excess of creditors' demands over debtor's assets, and the goal of rehabilitating the debtor all argue for expeditious resolution of the bankruptcy proceeding.' " <u>Id.</u> (quoting <u>Zimmerman</u>, 712 F.2d at 58). "[T]he bankruptcy claims process is designed to be expeditious." <u>Id.</u> at 997. "I agree with [the debtor-in-possession] that the bankruptcy claims process is designed to be expeditious. And indeed, the Pension Fund nowhere asserts that it will receive <u>slower</u> resolution in the Bankruptcy Court." <u>Amalgamated</u>, 41 B.R. at 617 (parenthetical added). "All of this speaks of a procedure designed to facilitate the expeditious disposition of the assets of the estate." <u>Id.</u> at 618. "In the same vein, the capacity for quick disposition of claims is part and parcel of the bankruptcy process." <u>Id.</u> "[L]egislative policy ... found in Bankruptcy Code Section 502(c) ... providing that the Court may estimate any contingent or unliquidated claim which would unduly delay the closing of the estate .... clearly voices a policy of speedy disposition .... [which] ... legislative policy seems to me to control." <u>Id.</u> (parenthetical added).

This Court believes the better view is that Congress formulated the MPPAA arbitration provisions to be the preeminent method for resolving withdrawal liability disputes because it believed them to constitute the most expeditious and economical method for resolving those disputes. To accentuate that point, the authorities and quotations previously cited herein bear repetition: "Arbitration of withdrawal liability disputes substantially reduces the expenses incurred by multiemployer plans ...." <u>Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia</u>, 830 F.2d 1241, 1248 (3rd Cir. 1987). "Congress did not intend to create a new, broad category of litigation that would force benefit plans to spend their assets on court costs and attorneys fees. Rather, it chose to require arbitration, with judicial review, to create a more efficient dispute-resolution process." <u>Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Services, Inc.</u>, 469 F.3d 369, 374 (4th Cir. 2006). "Arbitration is supposed to speed final decision and reduce the costs of getting there." <u>Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v.</u>

43

Central Transport, Inc., 935 F.2d 114, 119 (7th Cir. 1991). "In enacting the MPPAA, Congress sought to channel disputes over withdrawal liability into the informal and expeditious procedure of arbitration." Trustees of Colorado Pipe Industry Pension Trust v. Howard Elec. & Mechanical Inc., 909 F.2d 1379, 1385-1386 (10th Cir. 1990). "Congress presumably determined that a substantial portion of disputes could be promptly and efficiently resolved through informal procedures." I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Clinton Engines Corp., 825 F.2d 415, 422 (D.C. Cir. 1987).

This Court believes that the policy behind the MPPAA arbitration process that withdrawal liability issues should be decided by experts who specialize in resolving such issues rather than judges at large who realistically may only face them every now and then is controlling. As emphasized above herein, Congress intended for technical MPPAA withdrawal liability issues to be decided by persons intimately versed in the techniques required to do so. "These policies include the application of the administrative body's superior expertise, promotion of judicial economy, and deference to the statutory scheme Congress created." T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, of Local 1730 Intern. Longshoremen's Ass'n, 756 F.2d 939, 945 (2nd Cir. 1985)(emphasis added). "By generally mandating arbitration in the first instance with review by a federal court, MPPAA has created arbitrators who are experts in applying the technical provisions of how and when to assess withdrawal liability." Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Incorporated - Pension Fund v. Centra, 983 F.2d 495, 506 (3rd Cir. 1992). "The primary purpose of this exhaustion doctrine is to allow an administrative agency or an arbitrator to perform functions within its special competence: to create a factual record, to apply its expertise, and to correct its own errors so as to eliminate potential controversies that would otherwise end up in federal court." Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia, 830 F.2d 1241, 1252 (3rd Cir. 1987)(emphasis added). "The exhaustion requirement furthers many important legislative and administrative policies, such as ... to permit the agency to exercise its discretion or apply its expertise ...." Central States Southeast and Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 328 (5th Cir. 1987)(quoting Patsy v. Florida Int'l Univ., 634 F.2d 900, 903 (5th Cir. 1981)(quoting McKart v. United States, 395 U.S. 185, 193-95 (1969), rev'd and remanded on other grounds sub nom., Patsy v. Board of Regents, 457 U.S. 496 (1982)). "The purpose of the exhaustion of administrative remedies doctrine is to permit an administrative agency to apply its special expertise in interpreting relevant statutes and in developing a factual record without premature judicial intervention." Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp., 813 F.2d 760, 764 (6th Cir. 1987)(emphasis added).

### c. The Liquidating Trustee's "4 against 1" Argument

The Liquidating Trustee argues that if this Court requires arbitration of the pension fund's withdrawal liability claim it will be the only court to have ever done so in a bankruptcy case. The implication, of course, is that if this Court rules different than the four cases of Interco, T.D.M.A., Amalgamated, and Cott, which the Liquidating

44

Trustee and OCUC have cited for the proposition that arbitration of withdrawal liability claims filed in bankruptcy cases is neither required nor desirable, this Court will necessarily be wrong because of the numerical superiority of the opposing authorities. This Court cannot agree.

First, this Court disagrees with the basic premise of the Liquidating Trustee's and OCUC's 4-against-1 argument, that this Court would be the only court to yet require arbitration of a withdrawal liability claim filed in a bankruptcy case. As indicated before the courts in In re Hawley Coal Mining Corp, 5 EBC (BNA) 2680 (S.D.W.V., Dec. 7, 1984) and In re The Mason and Dixon Lines, Inc., Case No. B-84-00377C-11 (Bankr. M.D.N.C., filed April 9, 1987) ruled that MPPAA section 1401(a) overrides 11 U.S.C. § 502 and requires arbitration of disputes regarding withdrawal liability claims in bankruptcy where the disputes fall within the penumbra of issues (sections 1381 through 1399 of title 29) that 1401(a) requires to be arbitrated.

Second, the Liquidating Trustee and OCUC cannot know whether any other courts have referred withdrawal liability claims filed in bankruptcy cases to arbitration for liquidation because all decisions of bankruptcy courts are not reported.

Third, this Court is not bound by or required to follow the four cases cited by the Liquidating Trustee and OCUC.

### III. CONCLUSION

In this case, neither the Debtor, nor the OCUC, nor the Liquidating Trustee has offered any evidence that having the present matter arbitrated will impede or delay the administration of the estate in this case or result in prejudice to other creditors. On the other hand, the Fund will suffer hardship if its not allowed to arbitrate its claim against the Debtor in the same proceeding involving its claims against BI-LO and Lone Star. It will be required to participate in multiple proceedings involving the same withdrawal liability with concomitant additional expense and expenditure of time, effort, and resources.

Furthermore, arbitration, by whatever avenue mandated, i.e., agreement or statute, does not conflict with the policy or purpose of the Bankruptcy Code as a whole or 11 U.S.C. § 502 in particular. Nothing in either the Bankruptcy Code, or section 502, or the statutes granting and defining bankruptcy jurisdiction, or the Congressional history behind any of those statutes, indicates that claims may not be liquidated, or that objections to claims may not be resolved, by arbitration or before tribunals other than the bankruptcy court, or that arbitration in particular is a forbidden or undesirable methodology for resolving claim disputes.

To the contrary, Nathanson, Gary, Quality Tooling, Inc., Murdock Mach., Compton Corp., Hawley Coal, and Mason and Dixon, all cited and discussed herein, provide ample authority for the contrary conclusion, which is that claims may be

45

liquidated, and objections to claims may be resolved, before tribunals other than the bankruptcy court, including in arbitration proceedings.  And the teaching of Electric Machinery is that disputes in bankruptcy, including core proceedings, can, under proper circumstances, be resolved through arbitration.

In fact, the claims administration process is comparable to arbitration. Both provide parties with an efficient, summary, relatively quick and inexpensive procedure for resolving disputes.  So neither the Debtor nor the Fund should suffer any more delay, expense, or inconvenience than they would if the matter was retained for resolution by this Court.

Moreover, withdrawal liability claims, absent prejudice to other creditors or substantial interference with bankruptcy administration, should be determined by the arbitrators to whom Congress has assigned that job because they are better equipped to do the job in the accurate, efficient, and relatively inexpensive manner expected by virtue of superior experience, training, and expertise.  The job of this Court then, having learned that intent of the legislative branch, is to rule in accordance with the same unless other considerations, such as prejudice to other creditors or substantial interference with bankruptcy administration, which may not have been considered by that body when drafting the MPPAA, indicate that "interests of justice" dictate a different result.  None of those other considerations are present in this case.

And finally, as fully documented above, judicial economy is a primary and overarching consideration in procedural and jurisdictional federal jurisprudence including abstention.  Abstaining in this case will free up substantial judicial time and resources which can be fruitfully applied to the Court's other work by not only eliminating the necessity of managing and presiding over the present contested matter, as well as the many ancillary and preliminary proceedings which invariably precede the trial of such matters, but also obviating the necessity of getting up to speed on the methodology of resolving withdrawal liability disputes.

The foregoing conclusions abundantly support the Court's ultimate conclusion in this matter, which is that it should, in the interest of justice, abstain from hearing the Debtor's objection to the Fund's claim so that the same may be resolved through arbitration.

## IV.  ORDER

In accordance with the foregoing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1.      The Motion of the United Food and Commercial Workers Unions and Employers Pension Fund to Compel Arbitration or, Alternatively, for Relief From Automatic Stay to Pursue Arbitration of Claim filed on August 26,

46

2009, Docket 1440, is **GRANTED**. Liquidation of the Fund's withdrawal liability claim and litigation of the Debtor's objection to that claim shall be accomplished in an arbitration proceeding;

3.      Relief from the stay is **GRANTED** to permit the Fund to institute, prosecute, and participate in an arbitration proceeding, except to the extent that the Fund's claim, as determined by the arbitrator, shall only be enforceable or collectible by way of claim against the estate in this case and not by way of any action filed against the Debtor in another court. Any such action against the Debtor in another court by the Fund remains barred and enjoined by the stay in this case;

4.      The Official Committee of Unsecured Creditors' Objection to (I) the Motion of the United Food and Commercial Workers Unions and Employers Pension Fund to Compel Arbitration or, Alternatively, for Relief from Automatic Stay to Pursue Arbitration of Claim and (II) the Motion to Expedite Hearing on Same, Docket No. 1486, is **OVERRULED**, except that the hearing was expedited;

5.      The Court abstains pursuant to 28 U.S.C. § 1334(c)(1) from hearing the Debtor's Objection to Proof of Claim Number 802 Filed by United Food and Commercial Workers Unions and Employers Pension Fund, Docket No. 1355 and the Supplemental Objection of the Debtor to the Claims of the United Food and Commercial Workers Unions and Employers Pension Fund (Claim Nos. 802 & 947) filed on September 15, 2009. Docket No. 1576.

Done this 28th day of September, 2011.


                                        /s/Benjamin Cohen
                                        BENJAMIN COHEN
                                        United States Bankruptcy Judge



BGC:sm

Case 09-00634-TOM11    Doc 3090    Filed 09/28/11    Entered 09/28/11 13:57:04    Desc
Main Document       Page 47 of 47