# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | **Case No. 09-00634-TOM-11** |
| **BFW LIQUIDATION, LLC f/k/a** ) | **Chapter 11** |
| **BRUNO'S SUPERMARKETS, LLC,** ) | |
| ) | |
| **Debtor.** ) | |
| _____ ) | |
| ) | |
| **WILLIAM S. KAYE, as Liquidating** ) | |
| **Trustee of BFW Liquidation, LLC,** ) | |
| ) | |
| **v.** ) | **Contested Matter** |
| ) | |
| **QUALITY PROPERTIES, LLC,** ) | |
| ) | |
| _____ ) | |

## MEMORANDUM OPINION AND ORDER

This contested matter came before the Court on September 5, 2018, on the objection (the "Objection") of William S. Kaye, Liquidating Trustee (the "Trustee") to proof of claim no. 798 filed by Quality Properties, LLC ("Quality") against Bruno's Supermarkets, LLC n/k/a/ BFW Liquidation, LLC (the "Debtor" or "Bruno's"). Appearing before the Court were John D. Elrod, attorney for the Trustee, Harry P. Long, attorney for Quality, and Jeff Beck, Quality's owner. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This Court has considered the pleadings, arguments of counsel, the testimony of Mr. Beck, the exhibits, and the law, and finds and concludes as follows:[1]

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

# FINDINGS OF FACT

The Debtor filed its bankruptcy case under Chapter 11 of the Bankruptcy Code on February 5, 2009 (the "Petition Date"). The Debtor was a Birmingham, Alabama-based grocery store chain with stores in Alabama and the Florida panhandle. Bruno's operated stores under the Bruno's Supermarkets, FoodMax and Food World banners.

The Trustee was appointed pursuant to the Debtor's Fourth Amended Chapter 11 Plan of Liquidation (the "Plan"), which became effective on October 5, 2009. Quality is an assignee of a lease (the "Lease") under which Bruno's predecessor in interest, Bruno's Inc., was originally the tenant. The Debtor filed its Chapter 11 case after assigning its interest in the Lease to Quality. Thereafter, the Debtor rejected the Lease pursuant to the Plan, which was confirmed by the Court. Prepetition, the landlords[2] under the Lease asserted that Bruno's had breached the Lease, which Bruno's contested. In 2005, after Bruno's assignment of the Lease to Quality via that certain Assignment of the Ground Lease (the "Assignment"), the Landlords sued Bruno's in the Circuit Court of Marshall County, Alabama, and Bruno's prevailed in that litigation at summary judgment.[3] The Landlords appealed the trial court's ruling, which was ultimately affirmed by the Alabama Supreme Court after the Petition Date. As of the date of the hearing, Quality remains in possession of the leased property, and never lost possession of the leased property since the Assignment.

Prior to the Alabama Supreme Court's ruling, Quality filed Claim No. 798 in Bruno's Chapter 11 case on June 9, 2009 seeking damages "for breach of warranty of title in lease

---

[2] While the landlords have varied over time, during the bulk of the time period relevant to this contested matter, they consisted of John Hilsman Investment, LLC, Denny Family Properties, LLC, Mike McCollum, and Tracy Honea (collectively, the "Landlords").

[3] *See Hilsman, et al. v. Brunos Supermarkets, Inc., Circuit Court of Marshall County*, Alabama, Civil Action No. CV-06-200047.

assignment" (the "Claim").  Quality indicated that the amount of the Claim was "undetermined – contingent upon outcome of pre-petition lawsuit in Marshall County, Alabama Case No. CV-06- 200047."  The Alabama Supreme Court's ruling determined that no title problems existed as to the Lease.

Quality filed its own Chapter 11 bankruptcy case in 2010.[4] Quality did not list the Claim, or any other cause of action against Bruno's, in its Schedules, Statement of Financial Affairs, Chapter 11 Plan, or Disclosure Statement.

On April 12, 2018, the Trustee filed its Fourth Omnibus Objection to the Allowance of Certain Unsecured Claims, which included Claim No. 798.[5]  The Trustee asserted that the Claim was inconsistent with the Debtor's books and records.  Further, the Trustee asserted that if the Claim were allowed, Quality would receive a recovery to which it was not entitled.  On August 24, 2018, Quality filed a Memorandum in Support of Allowance of Quality's Proof of Claim. Quality now argues the Claim filed on June 9, 2009 includes a claim for damages from Bruno's rejection of the lease in its bankruptcy case, the subsequent litigation in Bruno's bankruptcy case, Quality's own bankruptcy case, and multiple appeals and all associated attorneys' fees.  In short, Quality's Claim seeks to recover attorneys' fees resulting from the Debtor's rejection of the lease and the litigation which ensued thereafter.  The amount of the claim as asserted at trial was $74,931.24.  The Trustee objected to Quality's Proof of Claim in its entirety.

As contended in his Brief in support of the Objection, the Trustee objects to Quality's claim on four grounds: (1) Quality's claim is untimely; (2) Quality has not asserted any damages and there was no breach; (3) the Claim is brought under 11 U.S.C. § 502(g)(1), which is not applicable

---

[4] *See In re Quality Properties, LLC*, Bankr. N.D. Ala. Case No. 10-42783-JJR1

[5] Doc. 3606.

to the circumstances in this case; and (4) Quality's Claim is barred by the doctrine of judicial estoppel.

## CONCLUSIONS OF LAW

**I.    The Claim is disallowed because Quality did not assert the Claim prior to the June 19, 2009 Bar Date.**

Proper and timely filing of a proof of claim pursuant to Title 11 is a condition precedent to the court's allowance of the claim. *See In re Malkove & Womack, Inc.*, 134 B.R. 965, 969 (N.D. Ala. 1991). Section 502(b)(9) of the Bankruptcy Code provides that:

> "(b) Except as provided in subsection (e)(2), (f), (g), (h), and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
> (9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure . . ."

11 U.S.C. § 502(b)(9).

The United States Court of Appeals for the Eleventh Circuit has ruled that courts should "carefully scrutinize post-bar date amendments to ensure that the amendment is genuine rather than an assertion of an entirely new claim." *In re Marineland Ocean Resorts, Inc.*, 242 B.R. 748, 753 (Bankr. M.D. Fla. 1999) (*citing United States v. Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985). Courts scrutinize amendments and claims because "[t]he bar date for filing proofs of claim in Chapter 11 cases is a mechanism intended by Congress to provide the debtor and its creditors with 'finality.'" *Norris Grain Co. v. United States*, 81 B.R. 103, 105 (Bankr. M.D. Fla. 1987), *aff'd*, 131 B.R. 747 (M.D. Fla. 1990), *aff'd*, 969 F.2d 1047 (11th Cir. 1992). Proof of claims filed after the bar date set by the court "disrupt the orderly discharge of a debtor and, for this

reason, late-filed claims are generally disallowed." *In re Marineland Ocean Resorts, Inc.*, 242 at 753 (*citing Biscayne 21 Condominium Ass'n. Inc. v. South Atl. Fin. Corp.*, 767 F.2d 814, 817–18 (11th Cir. 1985), *cert. denied*, 475 U.S. 1015 (1986)).

Therefore, failure to file a proof of claim before expiration of the bar date is grounds for disallowance of the claim when the claimant received actual notice of debtor's bar date. *See Conway Hosp., Inc., v. Lehman Bros. Holdings, Inc.*, 531 B.R. 339, 343 (S.D.N.Y. 2015). In *In re International Horizons*, 751 F.2d 1213, 1219 (11th Cir. 1985), the Eleventh Circuit did not allow an untimely filed claim in a Chapter 11 case because it was after the bar date and not an amendment to the original claim. Other judges in this district have held that the claims deadline set by the Court is an absolute bar date. *See In re Kennedy*, 40 B.R. 558, 560 (Bankr. N.D. Ala. 1984). Under Federal Rule of Bankruptcy Procedure 3003(c)(3), the deadline for filing proofs of claims in a Chapter 11 case may be extended by Rule 9006(b)(1) when the delay in filing the proof of claim was caused by excusable neglect. *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380, 388 (1993).

In the instant case, the Court set the bar date for the filing of all general unsecured claims for June 19, 2009.[6] Quality filed its initial proof of claim prior to the bar date on June 9, 2009. The Claim sought damages "for breach of warranty of title in lease assignment."[7] Quality further indicated in the Claim that the amount was "undetermined – contingent upon outcome of pre- petition lawsuit in Marshall County, Alabama Case No. CV-06-200047."

Quality now asserts that the Claim filed on June 9, 2009 is for damages resulting from Bruno's rejection of the lease, the subsequent litigation in Bruno's bankruptcy case, Quality's

---

[6] Doc. 837.
[7] The Assignment itself is attached to the Claim and has been offered by the Trustee as Exhibits 1 & 2. The Assignment contains no express or implied warranty of title. Bruno's simply conveyed "all of [its] rights in and to that certain ground lease."

bankruptcy case, and multiple appeals.[8] Quality did not formally or informally assert a claim against Bruno's estate for the damages relating to the rejection of the Lease prior to June 2018, when the current basis for the Claim was revealed in a status conference. Quality also did not amend the Claim filed June 9, 2009 to include rejection of the Lease once Judge Cohen approved rejection of the Lease. Further, Quality never filed a claim asserting a claim for attorneys' fees and made no mention of such a demand until June 2018.

Quality has not provided any evidence of excusable neglect to allow the Court to determine whether its delay in amending the Claim was warranted. Nor has Quality sought leave from the Court to file a formal written claim for the amount sought at the evidentiary hearing. Therefore, Quality failed to assert a claim relating to the rejection of the Lease, or for attorneys' fees relating thereto prior to June 19, 2009, and Quality's informally amended Claim is disallowed as untimely.

## II. The Claim is disallowed because no breach of warranty occurred.

As indicated on its face, the Claim alleges a breach of a warranty of title. That assertion is derivative of the Landlord's claims in the Marshall County litigation that Bruno's breached the Lease. However, the Alabama Supreme Court affirmed the Circuit Court of Marshall County's ruling that no breach of the Lease occurred, a point on which Quality and the Trustee are in agreement. Therefore, it follows that no breach of warranty occurred, and by extension the Claim as originally asserted should be disallowed.

Further, the Assignment contains no warranty of title that would support Quality's newly asserted claim. Additionally, the Landlords failed in their efforts to deprive Quality of the use and enjoyment of the leased property. Moreover, even if there was a warranty of title, there was

---

[8] Doc. 3656.

never any eviction by one holding paramount title which would constitute a breach. *See St. Paul Title Insurance Corp. v. Owen*, 452 So. 2d 482, 485 (Ala. 1984) ("Because the covenants of quiet enjoyment and of warranty are virtually identical in operation, whatever constitutes a breach of one covenant is a breach of the other . . . [n]either covenant is breached until there is an eviction under paramount title." (citations omitted)).

Because the Alabama Supreme Court conclusively determined that no breach of warranty occurred, the Landords' claim failed. Because the Claim expressly provides that it is based upon the outcome of the Marshall County litigation, in which it was determined that no breach of the Lease occurred, the Claim is disallowed.

### III. Section 502(g)(1) of the Bankruptcy Code is not applicable under these circumstances.

According to Quality's prehearing brief and arguments at the hearing, the legal basis for its newly modified claim is 11 U.S.C. § 502(g)(1). Section 502(g)(1) states "[a] claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition." Courts look to section 502 to determine where a debt that does not arise prior to the petition date might otherwise be treated as pre-petition debt. *In re Johnson*, 460 B.R. 328, 332 (S.D. Fla. 2011).

While Quality has not formally asserted a claim on these grounds, if it had, the section would be inapplicable because the purpose of the section is to fix the claim of the non-debtor party to an unexpired lease, rather than a lease assignment, as of the petition date. A lease

assignment falls outside the scope of section 502(g)(1) because it is not executory in nature.[9] Additionally, Section 502(g)(1) does not contemplate the allowance of post-petition attorneys' fees through multiple appeals in state and federal court.

Quality also relies on *In re Kupfer*, 852 F.3d 853 (9th Cir. 2016) to support its claim. In *Kupfer*, the landlord received an arbitration award for a fixed sum after a lease was terminated prepetition by the debtor. The creditors filed a proof of claim for the arbitration award and the debtors argued that the award was subject to the cap contained in 11 U.S.C. § 502(b)(6), including all attorney fees and arbitration fees, not just the portions of the award which would represent past and future rent. *Kupfer*, 852 F.3d at 855. The court held that the prepetition award was not subject to the cap and that "[i]n some circumstances, attorney fees and arbitration fees can be categorized as damages resulting from termination." *Id.* at 855.

In the instant case, Quality did not receive a prepetition award. In addition, Quality did not make a claim under a lease or an executory contract. Quality is the assignee of the Lease and it not party to the original lease. Therefore, Quality's reliance on this statement by the Ninth Circuit in *Kupfer* is misplaced.

### IV. Quality's Claim is barred by judicial estoppel.

Judicial estoppel is an equitable doctrine "intended to protect courts against parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment." *Slater v. United States Steel Corporation*, 871 F.3d 1174, 1176 (11th Cir. 2017). The Eleventh Circuit stated that "a district court may apply judicial estoppel when a two-part test is satisfied: the plaintiff (1) took a position under oath in the bankruptcy proceeding that was

---

[9] For a contract to be executory, each party must have performance remaining thereunder. *See, e.g., In re Murexco Petroleum, In*c., 15 F.3d 60 (5th Cir. 1994). Here, neither party had performance remaining: Bruno's had no performance remaining as it had already done its part in assigning the lease, and Quality did not have an obligation to Bruno's to make payments on a go forward basis.

inconsistent with the plaintiff's pursuit of the civil lawsuit and (2) intended to make a mockery of the judicial system." *Slater*, 871 F.3d at 1180. Similarly, the Third Circuit has ruled that judicial estoppel rests on the idea that "a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan Operation G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). Under the above-mentioned test, a court should consider the actions of the plaintiff and the motive of the plaintiff. *Slater*, 871 F.3d at 1181. A court should consider the totality of facts and circumstances of a case to determine whether a party has requisite intent to make a mockery of the judicial system. *Id*. at 1189.

Here, Quality is effectively the plaintiff in the proceeding, and did not disclose the Claim as an asset in its own Chapter 11 Plan and Disclosure Statement and corresponding Schedules.[10] Quality took an inconsistent position in another judicial proceeding, namely its own bankruptcy case, when it failed to disclose the existence of the Claim against Bruno's estate in its Schedules and Disclosure Statement.[11] Quality was represented by multiple, experienced attorneys during its bankruptcy proceedings, but no mention of the Claim (or Quality's newly formulated claim) was made even though Quality and its counsel were clearly aware of the existence of potential claims against the Bruno's estate, as evidenced by the filing of the Claim in this case. When cross- examined by the Trustee's counsel about the reason for Quality's failure to list the Claim in its Schedules and Disclosure Statement, Mr. Beck had no plausible explanation for the omission of the Claim from these filings. Any recovery on the Claim now would unjustly reward Quality despite Quality's failure to disclose it to its creditors. Therefore, Quality is estopped from asserting the Claim in the later proceeding.

---

[10] Doc. 638.
[11] *See* Trustee's Exhibits 6 & 9.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED, ADJUDGED** and **DECREED** that the Trustee's Objection to Claim is **SUSTAINED** and the Claim of Quality is **DISALLOWED** in its entirety.

Dated: November 2, 2018

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge